**ORIGINAL**

FILED

CO JAN 28  AM 10: 48
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2

3   Name _____ TAYLOR,  RONALD  E. _____

4        (Last)              (First)              (Initial)

5   Prisoner Number _____ H-14836 _____

6   Institutional Address _____ 1 MAIN STREET, S.Q.S.P. _____

7        _____ SAN QUENTIN, CALIFORNIA  94974 _____

8   ====================================================

9           **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
10

    RONALD EVANS TAYLOR
11  _____
    (Enter the full name of plaintiff in this action.)

12              vs.                          Case No.
                                             (To be provided by the clerk of court)
13  ROBERT L. AYERS JR., et al.
                                             **COMPLAINT UNDER THE**
14  _____      **CIVIL RIGHTS ACT,**
                                             **42 U.S.C §§ 1983**
15  _____

16  _____
    (Enter the full name of the defendant(s) in this action))
17  _____

18  *[All questions on this complaint form must be answered in order for your action to proceed..]*

19  I.   Exhaustion of Administrative Remedies

20       [**Note:** You must exhaust your administrative remedies before your claim can go

21       forward. The court will dismiss any unexhausted claims.]

22       A.   Place of present confinement  SAN QUENTIN STATE PRISON

23       B.   Is there a grievance procedure in this institution?

24               YES (X)       NO ( )

25       C.   Did you present the facts in your complaint for review through the grievance

26            procedure?

27               YES(X)       NO ( )

28       D.   If your answer is YES, list the appeal number and the date and result of the

COMPLAINT                          - 1 -

**CV 08   00647**

**MMC**

1    appeal at each level of review.  If you did not pursue a certain level of appeal,

2    explain why.

3       1. Informal appeal _____

4       _____

5       _____ 2. First

6       formal level_____

7       _____

8       _____

9       3. Second formal level_____

10      _____

11      _____ 4 Third

12      formal level _____

13      _____

14      _____

15   E.   Is the last level to which you appealed the highest level of appeal available to

16        you?

17             YES ( )     NO ( )

18   F.   If you did not present your claim for review through the grievance procedure,

19   explain why._____

20   _____

21   _____

22   II.   Parties

23   A.   Write your name and your present address.  Do the same for additional plaintiffs,

24        if any.

25   RONALD E. TAYLOR #H 14836

     2 N 20 L, S.Q.S.P.

26

     SAN QUENTIN, CALIFORNIA    94974

27

28   B.   Write the full name of each defendant, his or her official position, and his or her

     COMPLAINT                              - 2 -

1    place of employment.

2    B-1. DEFENDANT C.M. LOVE, IS A CORRECTIONAL OFFICER OF THE

3    CALIFORNIA DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTION-

4    ED IN THIS COMPLAINT WAS ASSIGNED TO SAN QUENTIN STATE PRISON.

5    DEFENDANT C.M. LOVE IS SUED INDIVIDUALLY AND IN HER OFFICIAL

6    CAPACITY. DEFENDANT LOVE ACTED UNDER COLOR OF STATE LAW.

(defendants continued on page 3-a)

7    Statement of Claim

8    State here as briefly as possible the facts of your case. Be sure to describe how each

9    defendant is involved and to include dates, when possible. Do not give any legal arguments or

10    cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

11    separate numbered paragraph.

12    **CLAIM ONE.** ON MAY 12, 2006, MY PERSONAL PROPERTY WAS CONFIS-

13    CATED IN VIOLATION OF **DUE PROCESS.**

14    DUE PROCESS VIOLATIONS INCLUDED, BUT WERE NOT LIMITED TO:

15    CONFISCATION OF PROPERTY WITHOUT ISSUANCE OF RECEIPT.

16    CONFISCATION OF PROPERTY WITHOUT LOGGING SAID CONFISCATION IN

17    UNIT CELL SEARCH LOG.

18    FAILURE TO RESPOND TO INMATE APPEAL WITHIN MANDATED TIME CON-

19    STRAINTS.

20    THE ABOVE **DUE PROCESS** VIOLATIONS WERE PERPETRATED UNDER

21    COLOR OF AUTHORITY AND IN VIOLATION OF THE CALIFORNIA CODE OF

22    REGULATIONS-TITLE 15.

23    (claims continued on page 3a 1)

24

25    IV.    Relief

26    Your complaint cannot go forward unless you request specific relief. State briefly exactly

27    what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

28    (A) A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN

COMPLAINT                  - 3 -

B 2. DEFENDANT ROBERT L. AYERS JR., IS THE WARDEN OF SAN QUENTIN STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION OF SAN QUENTIN STATE PRISON AND FOR THE WELFARE OF ALL THE INMATES OF THAT PRISON.

DEFENDANT AYERS JR. IS SUED INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT AYERS JR. ACTED UNDER COLOR OF AUTHORITY/STATE LAW.

B 3. DEFENDANT R.L. WINGO, IS A CORRECTIONAL OFFICER OF THE DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF SERGEANT AND WAS ASSIGNED TO SAN QUENTIN STATE PRISON.

DEFENDANT WINGO IS SUED INDIVIDUALLY AND IN HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT WINGO ACTED UNDER COLOR OF AUTHORITY/STATE LAW.

B 4. DEFENDANT M. CRAMER IS A LIEUTENANT AT SAN QUENTIN STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION OF VISITING AND THE MAIL ROOM OF SAN QUENTIN PRISON.

DEFENDANT M. CRAMER IS SUED INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT CRAMER ACTED UNDER COLOR OF AUTHORITY.

DEFENDANT N. GRANNIS IS THE CHIEF OF INMATE APPEALS FOR THE DEPARTMENT OF CORRECTIONS. DEFENDANT GRANNIS IS LEGALLY RESPONSIBLE FOR COORDINATING APPEALS/GRIEVANCES FROM PRISONERS IN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND MAKING SURE THAT THOSE APPEALS ARE PROCESSED IN ACCORDANCE WITH THE MANDATES OF THE CALIFORNIA CODE OF REGULATIONS TITLE 15 AND THE DEPARTMENT OPERATIONS MANUAL (D.O.M.) **(DUE PROCESS)**.

DEFENDANT A. SHELDON IS THE APPEALS COORDINATOR FOR SAN QUENTIN STATE PRISON AND IS LEGALLY RESPONSIBLE FOR PROCESSING INMATE APPEALS IN HARMONY WITH THE CALIFORNIA CODE OF REGULATIONS AND THE DEPARTMENT OPERATIONS MANUAL.

DEFENDANTS GRANNIS AND SHELDON ARE SUED INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES. AT ALL TIMES MENTIONED IN THIS COMPLAINT DEFENDANTS GRANNIS AND SHELDON ACTED UNDER COLOR OF AUTHORITY.

CLAIMS, continued

EXHIBIT 'A', IS A COPY OF THE APPEAL PLAINTIFF FILED IN RESPONSE TO DEFENDANT LOVE CONFISCATING HIS PROPERTY (HOT POT) ON MAY 12, 2006.

THE CALIFORNIA CODE OF REGULATIONS TITLE 15, (HEREINAFTER REFERRED TO AS CCR) SECTION 3287, MAKES IT CLEAR THAT ANY CONFISCATION SHALL BE ACCOMPANIED BY A WRITTEN RECEIPT, JUSTIFICATION AND RECORDING OF SAID CONFISCATION, AS WELL OF THE DISPOSITION OF ANY CONFISCATED PROPERTY.

THE **CCR, SECTION 3084.6**, CLEARLY STATES THAT "INFORMAL LEVEL APPEALS **SHALL BE** ANSWERED WITHIN **10 WORKING DAYS"**. DEFENDANT LOVE DID NOT SUPPLY PLAINTIFF WITH A RECEIPT UNTIL JUNE 27, 2006; THIRTY FIVE (35) WORKING DAYS AFTER RECEIVING PLAINTIFF'S APPEAL. (SEE EXHIBIT 'A') DEFENDANT LOVE'S RESPONSE WAS NOT ONLY OVER A MONTH LATE; THE RESPONSE STATES THAT MY PROPERTY WAS "DISPOSED OF PER INSTITUTIONAL PROCEDURE". THERE IS NO 'INSTITUTIONAL PROCEDURE' WRITTEN, FOR DISPOSAL OF INMATE PROPERTY.

AFTER SUBMITTING THIS APPEAL TO THE APPEALS COORDINATOR'S OFFICE, FOR FORMAL LEVEL PROCESSING, PLAINTIFF NEVER RECEIVED THE APPEAL BACK, NOR ANY FURTHER RESPONSE.

AS CAN BE SEEN FROM THE APPEAL (EXHIBIT 'A'), NEITHER OF THE ABOVE MANDATES WERE ADHERED TO BY DEFENDANT LOVE; WHICH CLEARLY AMOUNTS TO A VIOLATION OF STATE AND FEDERAL **DUE PROCESS**.

C L A I M   T W O

IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, DEFENDANT AYERS REFUSES TO ALLOW PLAINTIFF TO CONSUMMATE HIS MARRIAGE.

ON MARCH 27, 2006, PLAINTIFF FILED AN APPEAL (**EXHIBIT 'B'**) REGARDING THE FACT THAT HE REQUESTED "TO BE ALLOWED OVERNIGHT FAMILY VISITING", JUST LIKE OTHER PRISONERS WHO ARE RESPONSIBLE FOR THE LOSS OF LIFE ARE.

PLAINTIFF WAS MARRIED HERE AT SAN QUENTIN STATE PRISON ON DECEMBER 2, 2005. IT IS A FACT THAT A MARRIAGE NOT CONSUMMATED IS NOT A VALID MARRIAGE. THEREFORE, IF PLAINTIFF IS NOT ALLOWED TO CONSUMMATE HIS MARRIAGE, THE MARRIAGE IS NOT VALID AND PLAINTIFF'S COSTS OF THE MARRIAGE; LICENSE, ETC., SHOULD BE REFUNDED.

PLAINTIFF WAS TOLD THAT HE WAS NOT ALLOWED TO PARTICIPATE IN THE OVERNIGHT FAMILY VISITING PROGRAM, DUE TO THE FACT THAT HE IS A LIFER. WELL, PLAINTIFF IS A LIFER DUE TO THE FACT THAT HE (REGRETFULLY) TOOK ANOTHER MAN'S LIFE. HOWEVER, THERE ARE OTHER, SIMILARLY SITUATED PRISONERS, WHO ARE ALLOWED TO HAVE OVERNIGHT FAMILY VISITS, EVEN THOUGH THOSE PRISONERS WERE ALSO CONVICTED OF TAKING HUMAN LIFE . (SEE EXHIBIT 'B')

IT IS THE PLAINTIFF'S CONTENTION THEREFORE, THAT HE SHOULD ALSO BE ALLOWED TO PARTICIPATE IN THE OVERNIGHT FAMILY VISITING PROGRAM AS WELL AS CONSUMMATION OF HIS MARRIAGE.

FOR DEFENDANT AYERS TO FORBID PLAINTIFF FROM PARTICIPATING IN THE FAMILY VISITING PROGRAM IS IN DIRECT VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION.

**C L A I M   T H R E E**

IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DEFENDANT AYERS HAS REGULATORS INSTALLED ON THE TOILETS OF MAINLINE LIFER INMATES IN NORTH BLOCK, BUT NOT ON THE TOILETS OF SHORT TIME INMATES IN H UNIT, RECEPTION CENTER INMATES IN WEST BLOCK, NOR THE RECEPTION CENTER INMATES IN SOUTH BLOCK OR THE GYM.

SAID TOILET REGULATORS ARE A DANGER TO THE HEALTH OF INMATES HOUSED IN NORTH BLOCK DUE TO THE FACT THAT THEY DO NOT ALLOW A CLEAN FLUSH, BECAUSE THERE IS, AT THE MOST, A THREE (3) SECOND FLUSH, WHICH ALWAYS LEAVES DEFECATED FECAL MATTER IN THE PLAINTIFF'S TOILET.

ADDITIONALLY, IF A PRISONER FLUSHES HIS TOILET FOUR TIMES IN ONE SITTING, THE TOILET LOCKS UP AND WILL NOT FLUSH ANYMORE FOR AN HOUR. WHICH IS DETRIMENTAL TO THE HEALTH OF PLAINTIFF AS WELL AS ALL NORTH BLOCK PRISONERS.

IT IS NOTEWORTHY AT THIS JUNCTURE THAT PLAINTIFF IS DENIED AN ADEQUATE DIET TO SUPPORT A HEALTHY BODY AS IT IS. BUT NOW, THE FACT THAT THE DEFENDANTS INSIST THAT PLAINTIFF, HIS CELL MATE AND THE REST OF THE NORTH BLOCK POPULATION (WHO ARE ALL DOUBLE CELLED), TO ENDURE SAID TOILET REGULATING DEVICES, CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT; IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION. PLAINTIFF HERE MAKES THE POINT OF THE DOUBLE CELLING AN ISSUE BECAUSE THESE TOILET REGULATING DEVICES ARE TOLERABLE FOR A PRISONER WHO IS SINGLE CELLED.

E X H I B I T    ' C ' , IS A COPY OF THE DIRECTOR'S LEVEL DECISION REGARDING THE REGULATING DEVICE AT ISSUE.

P L E A S E   T A K E   J U D I C I A L   N O T I C E OF THE FACT THAT ON THE FACE SHEET OF THE "DIRECTOR'S DECISION", UNDER ' A . F I N D I N G S : ' DEFENDANT GRANNIS HAD THE AUDACITY TO STATE THAT, "OFTEN INMATE TOILETS ARE BEING FLUSHED REPEATEDLY FOR REASONS OTHER THAN FOR REMOVAL OF BODILY FLUIDS, SUCH AS TO FLOOD CELLS. THEREFORE, IN THE INTEREST TO WATER CONSERVATION AND TO LIMIT INMATE MISCONDUCT, INMATE TOILETS HAVE BEEN MODIFIED TO PREVENT MULTIPLE FLUSHES IN RAPID SUCCESSION".

IT SHOULD BE NOTED THAT NORTH BLOCK HOUSES 826 PRISONERS; APPROXIMATELY 600 OF WHICH ARE LIFERS. NO ONE IN NORTH BLOCK (WHERE PLAINTIFF RESIDES) FLOODS THEIR CELLS, PERIOD!

WEST BLOCK HOUSES 900 INMATES; APPROXIMATELY 200 OR MORE OF THEM MALICIOUSLY FLOOD THEIR CELLS ON A REGULAR, DAILY BASIS; WITH IMPUNITY. YET, THERE ARE NO TOILET REGULATING DEVICES AT ALL ON ANY OF THE TOILETS IN WEST BLOCK. CLEARLY, AN EQUAL PROTECTION CLAUSE VIOLATION. (14th AMENDMENT)

SOUTH BLOCK HOUSES APPROXIMATELY 1500 INMATES, IN FOUR DIFFERENT

SECTIONS: **ALPINE SECTION; BADGER SECTION; CARSON SECTION; & DONNER SECTION.**

A L P I N E    S E C T I O N  HOUSES 494 PROTECTIVE CUSTODY INMATES, IN

TWO MAN CELLS (CHILD MOLESTERS AND INFORMANTS). ALPINE SECTION INMATES

ARE FAMOUS FOR FLOODING THE UNIT ON A REGULAR BASIS, JUST FOR FUN, BY

PLUGGING UP THEIR TOILETS AND CONTINUOUSLY FLUSHING THEM. YET, THERE ARE

**NO TOILET REGULATING DEVICES** ATTACHED TO ANY OF THE TOILETS IN ALPINE

SECTION.

B A D G E R   S E C T I O N  HOUSES 494 INMATES, IN TWO MAN CELLS. BADGER

SECTION HAS ALWAYS HAD NUMEROUS INMATE INITIATED INCIDENTS OF INTENTIONAL

FLOODING OF THE UNIT. YET, THERE ARE **NO TOILET REGULATING DEVICES** ATTACHED

TO ANY OF THE TOILETS IN BADGER SECTION.

C A R S O N    S E C T I O N  HOUSES APPROXIMATELY 233 INMATES; ALL ON

SINGLE CELL STATUS. **CARSON SECTION HAS NUMEROUS, REGULAR INCIDENTS OF**

INTENTIONAL **FLOODING,** BY THE INMATES. **YET,** THERE ARE **NO TOILET REGULATING**

**DEVICES** ON ANY OF THE TOILETS IN CARSON SECTION.

D O N N E R   S E C T I O N  HOUSES BETWEEN 214 AND 494 INMATES, IN CELLS.

DONNER SECTION INMATES ARE WELL KNOWN FOR NUMEROUS INCIDENTS OF INMATES

INTENTIONALLY FLOODING THE CELLS/UNIT. **YET,** THERE ARE **NO TOILET REGULATING**

**DEVICES** ON ANY OF THE TOILETS IN DONNER SECTION.

EVEN THOUGH THERE ARE TO THIS DAY, NUMEROUS, REGULAR INCIDENTS OF

INMATES MALICIOUSLY FLOODING THE UNITS/CELLS/TIERS IN SOUTH BLOCK; THERE

ARE **NO TOILET REGULATING DEVICES IN SOUTH BLOCK (APPROX. 1500 INMATES)**

THE GYM HOUSES APPROXIMATELY 360 INMATES, BUT THERE ARE NO TOILET

REGULATING DEVICES ON ANY OF THE TOILETS IN THE GYM.

H UNIT HOUSES APPROXIMATELY 894 INMATES, BUT THERE ARE NO TOILET

REGULATING DEVICES ON ANY OF THE TOILETS IN H UNIT.

ANOTHER **CRUEL AND UNUSUAL** ASPECT OF THE TOILET REGULATING DEVICES THAT HAVE BEEN FORCED ONTO THE PLAINTIFF AS WELL AS THE REST OF THE PROGRAMMING LIFER POPULATION OF SAN QUENTIN, IS THAT WHENEVER THE POWER IN THE INSTITUTION GOES OUT, THE PLAINTIFF CANNOT FLUSH HIS TOILET AT ALL.

ON NUMEROUS OCCASIONS, SAN QUENTIN HAS BEEN WITHOUT ELECTRICAL POWER; SOMETIMES ALL DAY LONG. DURING THOSE TIMES, THE TOILETS IN NORTH BLOCK CANNOT FLUSH AT ALL.

PLAINTIFF ASKS THE COURT TO PLEASE CONSIDER THE CRUEL INHUMANITY OF HAVING 826 PRISONERS LOCKED IN CELLS ALL DAY, TWO MEN TO A 4X7X10 FOOT CELL, IN A WINDOWLESS BUILDING; WITHOUT THE ABILITY TO FLUSH ANY TOILETS.

IT SHOULD ALSO BE NOTED THAT IN NORTH BLOCK, THERE ARE SIGNS WARNING THE **NON PRISONERS** THAT THEY MUST WEAR PROTECTIVE BREATHING APPARATUS WHEN ENTERING THE PIPE CHASE AREAS OF NORTH BLOCK. YET PLAINTIFF NOR ANY OF THE OTHER 825 PRISONERS HOUSED IN NORTH BLOCK (MANY OF US FOR LIFE) ARE ISSUED ANY TYPE OF PROTECTIVE GEAR, WHILE WE ARE BREATHING THE DUSTY FILTH ON A DAILY BASIS.

SUBSEQUENTLY, SHORTLY AFTER THE **CRUEL AND UNUSUAL** TOILET REGULATING DEVICES WERE INSTALLED THERE WAS A SERIOUS OUTBREAK OF THE **NOROVIRUS**. BECAUSE NORTH BLOCK PRISONERS COULD NOT FLUSH THEIR TOILETS PROPERLY, THE VIRUS SPREAD LIKE WILDFIRE, RESULTING IN A TWO WEEK LONG LOCK DOWN/QUARANTINE. IN FACT, SINCE THE INSTALLATION OF SAID "DEVICES", ALL VIRUSES HAVE INCREASED AND SPREAD THROUGHOUT THE NORTH BLOCK MUCH FASTER THAN THEY DID BEFORE INSTALLATION OF THE DEVICES, DUE TO THE VARIOUS BACTERIA, BLOOD AND FECAL MATTER THAT IS ALWAYS PRESENT IN THE 413 CELLS/TOILETS. THIS ADDITIONAL DEGRADATION AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S HEALTH NEEDS IS BASED ON THE INABILITY TO EVER GET A CLEAN FLUSH IN THE 2 TO 3 SECOND FLUSHES AND THE LIMITED NUMBER OF FLUSHES ALLOWED BY THE REGULATING DEVICE.

C L A I M   F O U R

IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION, DEFENDANT M. CRAMER NOT ONLY WRONGFULLY TERMINATED
PLAINTIFF'S APPROVED VISIT WITH PLAINTIFF'S NIECE, DEFENDANT CRAMER UNLAWFULLY
BARRED PLAINTIFF'S BROTHER FROM VISITING PLAINTIFF, WITHOUT **DUE PROCESS** OF
LAW, IN VIOLATION OF **CALIFORNIA CODE OF REGULATIONS TITLE 15, SECTIONS: 3004,
3084, 3170, 3176, 3176.1** AND **3391.** DEFENDANT M. CRAMER's ACTIONS IN THIS
CASE, AS IN MANY OTHER INSTANCES WHICH WILL BE DEMONSTRATED TO THE COURT,
ALSO CONSTITUTE UNLAWFUL R E T A L I A T I O N, FOR PLAINTIFF'S PETITIONS
TO THE PRISON GOVERNMENT FOR REDRESS OF HIS GRIEVANCES.

P L E A S E   T A K E   J U D I C I A L   N O T I C E THAT PLAINTIFF
CAN, WITHOUT A DOUBT, POSITIVELY PROVE THAT HE HAS BEEN PERSONALLY SINGLED
OUT AND TARGETED FOR PETTY, ONGOING, REGULAR, CONSISTENT, UNLAWFUL ACTS OF
RETALIATION BY LIEUTENANT M. CRAMER AND HIS COHORTS; MASSONE, SALAIS AND
THOMSON; IF THIS HONORABLE COURT WILL ALLOW DISCOVERY, INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS FROM DEFENDANT CRAMER AND SAID COHORTS.

**EXHIBIT 'D',** IS A COPY OF THE DIRECTOR'S LEVEL REVIEW/DECISION, IN
REGARDS TO THIS CLAIM. ALL OF THE PERTINENT FACTS ARE STATED IN PLAINTIFF'S
APPEAL.

DEFENDANT M. CRAMER HAS VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS AND
HAS USED CRUEL AND UNUSUAL PUNISHMENT ON PLAINTIFF AND PLAINTIFF'S FAMILY,
SIMPLY BECAUSE PLAINTIFF EXERCISES HIS RIGHTS TO FILE LAWFUL APPEALS REGARDING
THE MANY, MANY INDISCRETIONS AND ILLEGALITIES OF DEFENDANT CRAMER AND HIS
COHORTS ON THE VISITING AND MAIL ROOM STAFF.

3 a 6

1  VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF

2  THE UNITED STATES.

3  II. A PRELIMINARY AND PERMANENT INJUNCTION WHICH (a) PROHIBITS

4  THE DEFENDANTS, THEIR SUCCESSORS IN OFFICE, AGENTS AND EMPLOY-

5  EES AND ALL OTHER PERSONS IN ACTIVE CONCERT AND PARTICIPATION

6  WITH THEM FROM HARASSING, THREATENING, PUNISHING OR RETALIATING

(continued on page 4-a)

7  I declare under penalty of perjury that the foregoing is true and correct.

8

9  Signed this ___3rd___ day of __JANUARY__, 20_)08_

10

11  *Ronald E. Taylor*

12  (Plaintiff's signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                    - 4 -

IN ANY WAY AGAINST PLAINTIFF BECAUSE HE FILED THIS ACTION OR AGAINST ANY OTHER PRISONER BECAUSE THAT PRISONER SUBMITTED AFFIDAVITS IN THIS CASE ON BEHALF OF THE PLAINTIFF.

**(b)** PROHIBITS DEFENDANT ROBERT L. AYERS JR., et al., FROM TRANSFERRING PLAINTIFF TO ANY OTHER INSTITUTION WITHOUT PLAINTIFF'S EXPRESS CONSENT, DURING THE PENDENCY OF THIS ACTION.

(c) REQUIRES DEFENDANT AYERS JR. TO REMOVE FROM PLAINTIFF'S PRISON FILES AND RECORDS ANY REFERENCES TO ANY EVENTS DESCRIBED HEREIN OR TO THE FACT THAT PLAINTIFF FILED THIS SUIT, AND PROHIBITS BOARD OF PAROLE HEARINGS MEMBERS FROM CONSIDERING ANY SUCH REFERENCES IN ANY WAY WHEN THEY FIX PLAINTIFF'S TERMS OR DECIDE WHETHER PLAINTIFF SHOULD BE RELEASED ON  PAROLE.

(d) REQUIRES DEFENDANTS TO ALLOW PLAINTIFF AND OTHER PRISONERS: 1) TO ENGAGE IN ANY ORAL OR WRITTEN COMMUNICATION WHICH IS REASONABLY RELATED TO THE CONDUCT OF THIS SUIT, INCLUDING THE PREPARATION OF AFFIDAVITS ON BEHALF OF PLAINTIFF; AND 2) TO ALLOW PLAINTIFF TO PREPARE LEGAL PAPERS AND DO ANYTHING ELSE, CONSISTENT WITH PRISON SECURITY, WHICH IS REASONABLY CONNECTED WITH THE CONDUCT OF THIS SUIT.

I I I .

COMPENSATORY DAMAGES IN THE AMOUNT OF $300.00, FROM DEFENDANTS C.M. LOVE; DEFENDANT R.L. WINGO AND DEFENDANT M. CRAMER; AND EACH OF THEM, TO PLAINTIFF.

I V . PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT C.M. LOVE, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT R.L. WINGO, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $200,000.00, FROM DEFENDANT M. CRAMER, TO PLAINTIFF.

4 a

**V .** A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.

**V I .** PLAINTIFF'S COSTS OF THIS SUIT.

**V I I .** SUCH OTHER AND FURTHER RELIEF AS THIS COURT DEEMS JUST, PROPER AND EQUITABLE.


## V E R I F I C A T I O N

I, RONALD EVANS TAYLOR, HEREBY DECLARE UNDER PENALTY OF PERJURY/LAW, THAT:

1. I AM THE PLAINTIFF HEREIN.

2. I HAVE WRITTEN AND READ THE FOREGOING COMPLAINT AND KNOW THE CONTENTS THEREOF AND THAT THE SAME ARE TRUE OF MY OWN KNOWLEDGE.

DATED: JANUARY 3, 2008

RESPECTFULLY SUBMITTED,

----------------------------
RONALD E. TAYLOR, #H 14836
2 N 20 L, S.Q.S.P.
SAN QUENTIN, CALIFORNIA
94974
**IN PROPRIA PERSONAM**

**4 a 1**

**E X H I B I T   " A "**

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. _____ | 1. _____ | 5 |
| 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| TAYLOR | H-14836 | WEST BLOCK CLERK | 3-n-5-L |

A. Describe Problem: ON FRIDAY MAY 12, 2006, THE ENTIRE INMATE POPULATION WAS FORCED TO GO TO THE YARD, FOR APPROXIMATELY 6 HOURS, WHILE A SPURIOUS SEARCH WAS CONDUCTED OF NORTH BLOCK. EVEN THOUGH THE STATED REASON FOR SAID SEARCH WAS THE LOSS OF SOME PLIERS OR WIRE CUTTERS BY STAFF; MY HOT POT; WHICH I PURCHASED AT THE CANTEEN AT SOLANO IN 1996; WAS TAKEN FROM MY CELL. I ASKED THE ENTIRE NORTH BLOCK STAFF, WHETHER OR NOT THEY KNEW WHO SEARCHED MY CELL, WITH NEGATIVE RESULTS. WHOEVER TOOK MY PROPERTY DID NOT LEAVE A RECEIPT, NOR WAS SAID SEARCH OR CONFISCATION NOTED IN THE CELL SEARCH LOGS OF NORTH BLOCK.

If you need more space, attach one additional sheet.                    (SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested:    I AM SIMPLY REQUESTING THE IMMEDIATE RETURN OF MY HOT POT AND THAT THE CUSTOMARY SAN QUENTIN RETALIATORY ACTIONS ARE NOT INITIATED AGAINST ME, FOR FILING THIS APPEAL.

Inmate/Parolee Signature: _Ronald E. Taylor_    MAY 1 6 REC'D    Date Submitted: ___5-12-06___

C. INFORMAL LEVEL (Date Received: 5/17/06 )

Staff Response: Hot pot that was confiscated was said to be altered and was disposed of per institutional procedure. Property Card was checked and showed no proof of having hot pot in property, therefore the return of your hot pot is Denied. (property reciept included)

Staff Signature: _____    Date Returned to Inmate: 6/27/06

D. FORMAL LEVEL
If you are dissatisfied, explain below; attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE, BECAUSE (A) IT IS OVER THIRTY DAYS PAST DUE—CCR 3084.6(1); (B) ITEMS PURCHASED IN THE CANTEEN ARE NOT PLACED ON 'PROPERTY CARD'; (C) MY HOT POT WAS NOT ALTERED; (D) THE RECEIPT WAS WITHHELD FOR OVER A MONTH AND A HALF, IN VIOLATION OF CCR 3287.(4) AS WELL AS THE ATTACHED WARDEN'S MEMO. I AM HEREBY REQUESTING FORMAL REVIEW.

Signature: _Ronald E. Taylor_    Date Submitted: ___6-27-06___

Note: Property/Funds appeals must be accompanied by a completed                    CDC Appeal Number
Board of Control form BC-1E, Inmate Claim

16.4

## SUPPLEMENTAL PAGE - 1

___ THE CALIFORNIA CODE OF REGULATIONS - TITLE 15, SECTION: <u>3287 (2),</u> <u>CLEARLY STATES; IN PERTINENT PART: "CELL INSPECTIONS WILL NOT BE USED TO</u> <u>HARASS AN INMATE..."</u>

THE CALIFORNIA CODE OF REGULATIONS -TITLE 15, section: <u>3287 (4),</u> <u>CLEARLY STATES: "THE INMATE WILL BE GIVEN A WRITTEN NOTICE FOR ANY ITEM(s)</u> <u>OF PERSONAL AND AUTHORIZED STATE-ISSUED PROPERTY REMOVED FROM HIS OR HER</u> <u>QUARTERS DURING AN INSPECTION AND THE DISPOSITION MADE OF SUCH PROPERTY.</u> <u>THE NOTICE WILL ALSO LIST ANY CONTRABAND PICKED UP OR ANY BREACH OF SECURITY</u> <u>NOTED DURING THE INSPECTION, AND THE FOLLOW-UP ACTION INTENDED BY THE INSPECT-</u> <u>ING OFFICER".</u>

THE CALIFORNIA CODE OF REGULATIONS - TITLE 15, SECTION 3287 (d), CLEARLY STATES: <u>A WRITTEN RECORD SHALL BE MAINTAINED OF THE DISPOSITION OF CONTRABAND</u> <u>AND STOLEN OR MISSING PROPERTY CONFISCATED AS THE RESULT OF CELL, PROPERTY, OR</u> <u>BODY INSPECTIONS".</u>

MY HOT POT WAS NOT CONTRABAND AND IT WAS OBVIOUSLY NOT A SET OF PLIERS OR WIRE CUTTERS. THEREFORE, THERE WAS ABSOLUTELY <u>NO JUSTIFICATION</u> FOR TAKING IT OUT OF MY CELL. I PURCHASED MY HOT POT FROM THE SOLANO PRISON CANTEEN IN NOVEMBER OF 1996. I BROUGHT IT WITH ME UPON MY ARRIVAL TO SAN QUENTIN PRISON ON JANUARY 26, 2000 AND HAVE HAD IT THROUGH NUMEROUS CELL SEARCHES, WITH NO PREVIOUS PROBLEMS.

THE OFFICER WHO TOOK MY HOT POT IS IN DIRECT VIOLATION OF SECTIONS: <u>3004(a), 3287, & 3391</u> OF THE <u>CALIFORNIA CODE OF REGULATIONS - TITLE 15.</u>

(END OF STATEMENTS , AS OF 5-15-06)

Ronald E. Taylor
# H-14836
3N5-L

SQWB#120/2001
September 18, 2001



# TO: ALL SAN QUENTIN STAFF

## RE: ISSUANCE OF PROPERTY RECEIPTS TO INMATES DURING SEARCHES

It has been brought to my attention that while staff are conducting searches of inmates in their assigned work areas or cells, there have been issues concerning confiscated items. Staff should be aware they are to issue a receipt for all inmate items confiscated from inmates. This will be done regardless if it is personal or state property.

The property receipts serve many purposes to the institution, such as helping in the resolution of appeal issues.

Your cooperation in this matter is expected and appreciated.

J.S. WOODFORD
Warden

**E X H I B I T   ' B '**

STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**

CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | 5Q | 1. 06-724 | 4 |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| TAYLOR | H-14836 | WEST BLOCK CLERK | 3-N-5-L |

A. Describe Problem: THIS IS AN APPEAL OF THE CALIFORNIA CODE OF REGULATIONS-TITLE 15; SECTION: 3177. THE AFOREMENTIONED REGULATION VIOLATES THE 'EQUAL PROTECTION' CLAUSE OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION. IN EXAMPLE.. INMATES CONVICTED OF MANSLAUGHTER ARE ELIGIBLE FOR (OVERNIGHT) FAMILY VISITING, WHILE INMATES CONVICTED OF 2ND DEGREE MURDER ARE NOT. I SUBMIT THAT THERE IS SUCH A FINE LINE BETWEEN THE CRIME OF VOLUNTARY MANSLAUGHTER AND MY SECOND-DE-GREE MURDER; THAT MY RIGHT TO "EQUAL PROTECTION" OF THE LAW IS VIOLATED.

  I BASE THE AFOREMENTIONED ON THE FACT THAT DEAD IS DEAD. TO CLARIFY;

If you need more space, attach one additional sheet.                    (SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested: I AM SIMPLY REQUESTING TO BE ALLOWED THE PRIVILEGE OF (OVERNIGHT) FAMILY VISITING. ALSO, I AM REQUESTING THAT NO RETALIATORY ACTIONS ARE TAKEN AGAINST ME, FOR FILING THIS APPEAL.

Inmate/Parolee Signature: _Ronald E. Taylor_     Date Submitted: 3-27-06  MAR 3 0 REC'D

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Bypass

Staff Signature: _____     Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Bypass

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

**First Level**   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **MAR 30 2006**   Due Date **MAY 12 2006**

Interviewed by: ON April 17, 2006 You were INTERVIEWED Regarding the issues CONTAINED IN this INMATE Appeal. AFTER A thorough INVESTIGATION, Your Appeal is Being "Denied." THE DENIAL is based on, CCR 3177 (2), FAMILY VISITING (overnight). You are A prisoner serving A LIFE-TERM without A PAROLE DATE ESTABLISHED by the board of Prison TERMS ('See Attached CCR SECTION).

Staff Signature: _____   Title: CAPTAIN   Date Completed: 4/17/06

Division Head Approved:
Signature: _____   Title: AW   APR 28 RECD   Date Returned to Inmate: MAY 08 RECD  KNM

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE, AS IT IS BOILERPLATE LANGUAGE. THEREFORE, I AM REQUESTING REVIEW AT THE SECOND-LEVEL.

Signature: Ronald C. Taylor   5-9-06   MAY 08 RECD   5-4-06
MAY 11 RECD

**Second Level**   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **MAY 11 2006**   Due Date **JUN 09 2006**
☐ See Attached Letter

Signature: B Chandler   JUN 09 RECD   Date Completed: 6/5/6

Warden/Superintendent Signature: _____   Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I AM DISSATISFIED, DUE TO THE FACT THAT THE ABOVE RESPONSE IS LUDICROUS AND THEREFORE UNACCEPTABLE. I AM HEREBY REQUESTING REVIEW AT THE DIRECTOR'S LEVEL; WITH A REMINDER TO THE DIRECTOR THAT THE WORD R E H A B I L I T A T I O N IS NOW IN THE TITLE OF THE DEPARTMENT.

Signature: Ronald E. Taylor   Date Submitted: 6-14-06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

**DIRECTOR'S ACTION:** ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

## S U P P L E M E N T A L    P A G E

I SINCERELY REGRET HAVING CAUSED THE LOSS OF MY VICTIM'S LIFE. HOWEVER, THE FACT IS, BOTH MANSLAUGHTER AND MURDER MEAN THAT A LIFE WAS LOST. THE ONLY DIFFERENCE IS SEMANTICS. IN MY CASE, TWO (2) FACTS CAUSED ME TO BE CONVICTED OF 2ND DEGREE MURDER INSTEAD OF MANSLAUGHTER. FIRST OF ALL, I DID NOT TAKE THE "MANSLAUGHTER DEAL" OFFERED BY THE D.A..

SECONDLY, AND PERHAPS MOST KEY, IS THE FACT THAT JURORS ARE NOT PROFESSIONALS. THEY KNOW NOTHING ABOUT THE LAW. JURORS ARE LIKE AN AUDIENCE AT A STAGE PLAY. THEY SIMPLY APPLAUD THE BEST PERFORMANCE. THE O. J. SIMPSON CASE IS A PERFECT EXAMPLE. THE DREAM TEAM PUT ON THE BEST PERFORMANCE, SO THE JURORS [AUDIENCE] GAVE THEM THE APPLAUSE – THEREFORE, O.J. WON.

IN MY CASE, MY STATE APPOINTED PUBLIC DEFENDER [PRETENDER] PUT ON A LOUSY PERFORMANCE; WHILE THE D.A. IN MY CASE PUT ON A BETTER PERFORMANCE. SO I LOST. THAT IS THE ONLY DIFFERENCE BETWEEN MY CONVICTION FOR 2ND DEGREE, MURDER AND MY GETTING CONVICTED OF MANSLAUGHTER. MY TRIAL TRANSCRIPTS WILL CONFIRM THAT I KILLED A GUY IN A SPUR OF THE MOMENT FIGHT. (PLEASE DO NOT CONFUSE MY CANDOR WITH AN ATTEMPT TO MINIMIZE THE SANCTITY OF HUMAN LIFE. THAT IS N O T MY INTENTION.

TO MAKE A LONG STORY SHORT, HAD I HAD A COMPETENT ATTORNEY, I WOULD HAVE ONLY BEEN CONVICTED OF MANSLAUGHTER, BECAUSE I NEVER DENIED KILLING MY VICTIM. MY ONLY AND CONSTANT ARGUMENT, WAS THAT IT WAS NOT MURDER. EITHER WAY; LIKE I SAID PREVIOUSLY; HOWEVER GRUESOME IT MAY SOUND; "DEAD IS DEAD": [GOD KNOWS I'M SORRY] THEREFORE, "EQUAL PROTECTION" ATTACHES.

NOW, SINCE PEOPLE GUILTY OF MANSLAUGHTER, ROBBERY, BURGLARY, PURSE SNATCHING, DRUG DEALING, ETC., ARE ALLOWED TO PARTICIPATE IN THE OVERNIGHT FAMILY VISITING PROGRAM; I TOO, SHOULD BE ALLOWED TO PARTICIPATE AS WELL.

(SEE CONTINUATION ON REVERSE SIDE)

## SIDE 2 - CONTINUATION

I AM A PROGRAMMING LEVEL II INMATE, WITH THE MINIMUM ALLOWABLE NUMBER OF POINTS; WHO HAS NUMEROUS LAUDATORY CHRONOS IN MY PRISON FILES; ALONG WITH NUMEROUS LETTERS OF SUPPORT FROM LOVED ONES AND FAMILY MEMBERS, INCLUDING GRAND-DAUGHTERS, DAUGHTERS, NIECES, FRIENDS, MINISTERS; MY MOTHER, ETC., ETC.. SINCE I AM A CERTIFIED PARALEGAL, I ALSO HAVE LETTERS OF JOB OFFERS FROM AN ATTORNEY IN SAN RAFAEL. AS SUCH, I WOULD LIKE FOR SOMEONE/ ANYONE, IN THIS DEPARTMENT TO TELL ME WHY I PERSONALLY, WOULD POSE A RISK TO THE SAFETY AND SECURITY OF THIS OR ANY INSTITUTION, IF I AM ALLOWED OVERNIGHT FAMILY VISITING.

FURTHERMORE, WHEN I ENTERED C.D.C., I AUTOMATICALLY ENTERED INTO A CONTRACT OF SORTS, WHEREBY IF I DO 'A', 'B' AND 'C', THAT I WILL RECEIVE 'D', 'E' AND 'F'. I DID MY PART. THE DEPARTMENT IS NOT FULFILLING IT'S PART OF THE CONTRACT.

LASTLY, BUT CERTAINLY NOT OF LEAST SIGNIFICANCE, IS THE FACT THAT CDC HAS RECENTLY ADOPTED A NEW TITLE AS WELL AS NEW GOALS AND A NEW MISSION PLAN. THE NEW TITLE IS: THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION.

TO DENY ME OVERNIGHT FAMILY VISITING IS EXERCISING THE EXACT OPPOSITE OF THIS DEPARTMENT'S NEW TITLE/GOAL. R E H A B I L I T A T I O N. IS SERIOUSLY STIFLED, WHEN I, AS A FIFTY-FOUR (54) YEAR OLD MARRIED MAN, WITH NO SEX CRIMES OR CRIMES AGAINST WOMEN OR FAMILY MEMBERS IN MY LIFE IS DENIED MY G O D - G I V E N R I G H T, TO SPEND A NIGHT WITH MY WIFE NOW AND THEN.

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



August 20, 2006

Taylor, CDC #H-14836
California State Prison, San Quentin
San Quentin, CA 94964

Re: Institution Appeal Log #SQ 06-724 Visiting

Dear Mr. Taylor:

The enclosed documents are being returned to you for the following reasons:

Your appeal is incomplete. You must include supporting documentation. Your appeal is missing the CDC 128-G, Institution Classification Committee Chrono (current copy).

Your assigned counselor, the Appeals Coordinator, or your Parole Agent can answer any questions you may have regarding the appeals process. Library staff can help you obtain any addresses you need.

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

State of California                                    Department of Corrections and Rehabilitation

# **Memorandum**

Date:    June 5, 2006

2  Ronald

To:    TAYLOR, H-14836
California State Prison, San Quentin

Subject:  SECOND LEVEL APPEAL RESPONSE
LOG NO.: SQ 06-724

### APPEAL ISSUE:  VISITING

### ISSUE:

Whether or not staff is appropriately denying the appellant the opportunity to participate in the Family Visiting Program.

### FINDINGS I

Appellant filing this appeal alleges that there is a fine line between the crime of Voluntary Manslaughter and appellant's Second Degree Murder charge. Appellant asserts his basis for the aforementioned is that dead is dead and both manslaughter and murder means a life was lost. Appellant's contentions are that his right to "Equal Protection" of the law was violated and inmates convicted of manslaughter, robbery, burglary, purse snatching and drug dealing are allowed to participate in overnight family visiting and he should be as well. Therefore, the appellant requests that he be allowed the privilege of participating in Overnight Family Visiting.

### FINDINGS II

INTERVIEWED BY:  K.J. Williams, Correctional Captain

First level reviewer denied the appellant's appeal on the basis of CCR 3177(2), Family Visiting (Overnight). Appellant is an inmate serving a Life-Term without a parole date established by the Board of Prison Terms (Board of Prison Terms). See attached CCR Section.

REGULATIONS:  The rules governing this issue are:

**California Code of Regulations, Title 15, Section (CCR) 3177.  Family Visiting (Overnight)**

**CCR 3270.  General Policy.**

TAYLOR, H-14836
CASE NO. 06-724
PAGE 2

## DETERMINATION OF ISSUES:

After review of the available documents, arguments having been presented, as well as referenced regulations, appellant's appeal has been thoroughly considered. Appellant is advised that a thorough inquiry was conducted into his concerns. The inquiry encompassed a detailed examination of the appellant's central file. The following information and facts were determined during the inquiry. Review of the appellant's central file revealed the appellant has a commitment offense of Murder 2nd which resulted in a Life term. Pursuant to CCR 3177(b)(2) Family visiting shall not be permitted for inmates who are in any of the following categories: sentenced to life without the possibility of parole; sentenced to life, without a parole date established by the Board of Prison Terms; designated Close A or Close B custody; designated a Condemned inmate; assigned to a reception center; assigned to a administrative segregation unit; assigned to a security housing unit; designated "C" status; guilty of one or more Division A or Division B offense(s) within the last 12 months; or guilty of narcotics distribution while incarcerated in a state prison. Based on the aforementioned this reviewer finds that the appellant's claim does not coincide with the facts represented in the central file and or the CCR. The compelling evidence and convincing argument presented has established that the appellant is not eligible to participate in the Family Visiting Program.

According to the documentation in the appellant's central file committee has adequately accommodated him in the decision reached. The complication of circumstances combined with the verifying documentation indicates that all appropriate policies and procedures, with regards to the denial of appellant's participation in the Family Visiting Program were followed. Upon review of the documentation submitted, it is determined that the appellant's allegations have been thoroughly reviewed and evaluated at the First Level of Review. The documentation and arguments presented are persuasive that the appellant failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the First Level Response. The lack of sufficient facts, reference and evidence, demonstrates that the appellant has not supported his complaint that he is eligible for Family Visiting. Based on the submitted documentation, by both the appellant and first level reviewer, as well as discussions, this reviewer finds that the appellant's issues have been duly addressed The Second Level Response and the decision reached are based upon a reasonable penological interest. Therefore, based on the information received and reviewed the appellant's appeal is denied

## DECISION:

The appeal is denied. Based on the submitted documentation, as well as the interviews conducted with staff, this reviewer does not find that the appellant's allegations have any merit. The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

ROBERT L. AYERS, Jr., WARDEN (A)
California State Prison, San Quentin

E X H I B I T  ' C '

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region     Log No.     Category

1. _____  1. $06-1923$     $9$

2. _____  2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| TAYLOR, Ronald | H-14836 | WEST BLOCK CLERK | 3NSL |

**A. Describe Problem:** ON OR ABOUT JUNE 19, 2006, THE SAN QUENTIN ADMINISTRATION INSTALLED DEVICES THAT NOT ONLY EXTREMELY LIMIT THE AMOUNT OF FLUSHES THAT INMATES ARE ALLOWED ON OUR TOILETS; (4 FLUSHES PER HOUR) THIS DEVICE ALSO ONLY ALLOWS A THREE-SECOND FLUSH, WHICH IS NEVER A CLEAN FLUSH. IT IS MY CONTENTION THAT THE SAN QUENTIN ADMINISTRATION IS GUILTY OF CRUEL AND INHUMANE TREATMENT, BASED ON THE INSTALLATION OF THIS DEVICE; WHICH IS CLEARLY IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION. ADDITIONALLY, THE INSTALLATION OF THIS DEVICE IS A DANGER TO THE SAFETY AND SECURITY OF THE INSTITUTION, BECAUSE

If you need more space, attach one additional sheet.            (SEE ATTACHED SUPPLEMENTAL PAGE.)

**B. Action Requested:** I AM REQUESTING THAT THE AFOREMENTIONED 'DEVICE' BE REMOVED FROM MY TOILET, IMMEDIATELY; AS IT IS ADVERSELY AFFECTING MY WELFARE AND SERVES NO LEGITIMATE PENOLOGICAL INTEREST. I AM ALSO REQUESTING THAT I NOT BE SUBJECTED TO THE CUSTOMARY SAN QUENTIN RETALIATION THAT FOLLOWS THESE APPEALS.

Inmate/Parolee Signature: _Ronald E. Taylor_   JUL 05 RECD   Date Submitted: $6-27-06$

**C. INFORMAL LEVEL (Date Received:** _____ )

Staff Response: Denied: Dut to water conservation measures requested by Marin Municipal Water District these flush valves were installed to reduced water consumption. the valves will not be removed or altered.

Staff Signature: _L. Sentini_               Date Returned to Inmate: 7/18/06

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE BECAUSE IT IS RIDICULOUS. THE MARIN MUNICIPAL WATER DISTRICT IS NOT CONCERNED WITH PRISONER'S HEALTH. MOST LIKELY, THERE IS MONEY INVOLVED FOR THE INSTITUTION, BY SACRIFICING OUR HEALTH. I AM REQUESTING REVIEW AT THE FORMAL LEVEL.

Signature: _Ronald E. Taylor_                     Date Submitted: $7-18-06$

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

JUL 20 RECD

First Level    ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __JUL 2 0 2006__    Due Date: __AUG 3 1 2006__

Interviewed by: Denied: Due to water conservation measures requested by Marin Municipal Water District these flush valves were installed to reduce water consumption. The valves will not be removed or altered. Additionally it is the intention of the department to install these devices throughout all facilities in the state.    Inmate was interviewed on 8/01/2006.

Staff Signature: _____    Title: __CPS__    Date Completed: __7/26/06__

Division Head Approved: _____

Signature: _____    Title: __AH__ AUG 11    Returned RCC'D to Inmate: __8/10/06__

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE BECAUSE IT IS BOGUS. I KNOW FROM EXPERIENCE THAT EVERY TIME A PRISON ADMINISTRATION THINKS OF A WAY TO TRAMPLE IT'S RESIDENT CONVICTS; THEY CLAIM IT IS BEING DONE STATEWIDE. I HEREBY RE-QUEST REVIEW AT THE SECOND LEVEL.

Signature: __Ronald E. Taylor__    AUG 1 7 REC'D    Date Submitted: __8-14-06__

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __AUG 1 7 2006__    Due Date: __SEP 1 5 2006__

☐ See Attached Letter

Signature: _____    Date Completed: __10/18/06__

Warden/Superintendent Signature: _____    Date Returned to Inmate: __OCT 1 9 RECD__

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

SAN QUENTIN STAFF'S LUDICROUS RESPONSE DOES NOT EXPLAIN WHY ONLY PROGRAMMING LIFERS ARE BEING PUUNISHED WITH THESE RESTRICTIONS, WHILE 3000RECEPTION CENTER INMATES AND 500 P.C. INMATES HAVE UNLIMITED WATER FLOW. THEREFORE, I AM DISSAT-ISFIED WITH THE BOGUS RESPONSE AND REQUESTING REVIEW AT THE DIRECTOR'S LEVEL.

EAST BLOCK AND THE A.C. ARE RESTRICTED, BUT THEY ARE SINGLE CELLED, SO IT DOES NOT MATTER TO THEM. MAINLINERS DO NOT FLOOD THE TIERS OR WASTE WATER.

Signature: __Ronald C. Taylor__    Date Submitted: __10-24-06__

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____
☑ See Attached Letter    Date: __JAN 1 2 2007__

CDC 602 (12/87)

## SUPPLEMENTAL PAGE

SAID DEVICE IS GUARANTEED TO CREATE NUMEROUS ALTERCATIONS WITHIN THE HOUSING
UNIT. FOR EXAMPLE; ALMOST HALF OF NORTH BLOCK ARE MENTAL PATIENTS, WHO WILL
TOTALLY DISREGARD THE FACT THAT IF THEY FLUSH THE TOILET FOUR TIMES, THAT THE
OTHER OCCUPANT OF THE CELL WILL HAVE TO WAIT AN HOUR, BEFORE BEING ABLE TO
FLUSH THE TOILET AGAIN; WHICH IN TURN WILL CREATE A HOSTILE LIVING SITUATION.

FIRST OF ALL; TWO ZOO ANIMALS THE SIZE OF TWO AVERAGE MEN, WOULD NOT BE
KEPT IN A CAGE AS SMALL AS THE CELLS IN NORTH BLOCK. NOW, IN ADDITION TO THAT
DEGRADATION, THE ADMINISTRATION; EVEN THOUGH ADDING THE WORD "REHABILITATION"
TO THE TITLE OF THEIR ORGANIZATION; HAS CHOSEN TO FURTHER PUNISH PROGRAMMING
PRISONERS BY LIMITING THE AMOUNT OF FLUSHES OF THE TOILETS TO FOUR PER HOUR
WITH A THREE-SECOND DURATION TO SAID FLUSH; WHICH IS NEVER A CLEAN FLUSH. THE
FACT THAT THE TOILET ONLY FLUSHES FOR THREE SECONDS NOW ALSO CREATES AND ADDS
TO THE ALREADY NUMEROUS HEALTH PROBLEMS WHICH PLAGUE SAN QUENTIN AND WILL BE
ANOTHER FACTOR IN RISING HEALTH COSTS, BECAUSE CONSTANT EXPOSURE TO DEFECATION
AS WELL AS URINE, SPIT, VOMIT, BLOOD, SPERM AND NUMEROUS OTHER WASTE PRODUCT
IS DEFINITELY DETRIMENTAL TO THE HEALTH OF ANY HUMAN. THE ADMINISTRATION HAS
OBVIOUSLY FORGOTTEN THAT PRISONERS AT SAN QUENTIN ARE STILL HUMAN.

IT IS ALSO A FACT THAT RECEPTION CENTER INMATES, WHO ARE TRANSIENT AND
SIMPLY (REGULARLY) PASSING THROUGH SAN QUENTIN, ARE N O T BEING SUBJECTED TO
THIS DEVICE, WHILE THE PROGRAMMING LIFERS AS WELL AS THE REST OF THE MAINLINE
PRISONERS OF NORTH BLOCK ARE BEING PUNISHED WITH THIS DEVICE.

THE FACT THAT THE TOILETS IN NORTH BLOCK NOW ONLY FLUSH FOR THREE SEC-
ONDS, MEANS THAT AFTER OUR ALLOTED FOUR FLUSHES WE HAVE TO INGEST/INHALE WHAT
EVER RESIDUE OF WASTE PRODUCT IS LEFT IN THE TOILET FOR AT LEAST AN HOUR. I
AM SURE THAT O.S.H.A. LAWS ARE BEING VIOLATED AND I AM IN THE PROCESS OF
ACQUIRING THAT INFORMATION, FOR JUDICIAL PURPOSES.

(side '1')

see reverse side

CONTINUATION OF SUPPLEMENTAL PAGE

AN INMATE DOES NOT HAVE TO BE A MENTAL PATIENT TO FORGET THAT WE ARE NOW BEING PUNISHED BY BEING ALLOWED ONLY FOUR FLUSHES PER HOUR ON OUR TOILETS LIFERS, WHO HAVE BEEN AN ASSET TO SAN QUENTIN FOR YEARS; WHO HAVE BEEN SERVIN THE SAN QUENTIN ADMINISTRATION AND PROGRAMMING POSITIVELY FOR YEARS; HAVE A LOT ON THEIR MINDS ALREADY. NOW WE HAVE TO TRY TO REMEMBER HOW MANY TIMES WE FLUSH THE TOILET, SO THAT THE OTHER OCCUPANT OF THE CELL CAN USE THE TOILET. THAT IS EXTREMELY DIFFICULT AT 4:45 A.M., JUST WAKING UP, IF MY CELLEE AND I BOTH HAVE TO GO TO JOB ASSIGNMENTS IN P.I.A., BETWEEN 5 AND 5:30 A.M. ALREADY HALF ASLEEP.

IT IS EXTREMELY DISRESPECTFUL AND DISCOURTEOUS FOR THE SAN QUENTIN AD-MINISTRATION TO SUBJECT PROGRAMMING PRISONERS TO SUCH DEGRADATION; IN DIRECT VIOLATION OF THE CALIFORNIA CODE OF REGULATIONS-TITLE 15, SECTIONS: 3004 & 339 IT IS BAD ENOUGH THAT WE ARE HOUSED IN CELLS THAT WERE BUILT TO HOUSE ONE MAN; WHILE WE ARE DOUBLE-CELLED. THEN THE ADMINISTRATION TOOK THE FOOTLOCKERS, THE WEIGHTS, LIFERS OVERNIGHT FAMILY VISITS, OUR CARE PACKAGES FROM HOME, CIGAR-ETTES WERE OUTLAWED ONLY AFTER THE ADMINISTRATION GOT MANY OF US HOOKED ON THI THEN MADE MILLIONS OFF OF US, SELLING THEM TO US. WE CAN'T EVEN CALL HOME ANY MORE, IF OUR FAMILY DOES NOT HAVE A CONNECTION WITH M.C.I., SO THE SAN QUENTII ADMINISTRATION CAN GET A KICKBACK ON THE EXORBITANT PRICES M.C.I. CHARGES OUR LOVED ONES.

NOW, THE SAN QUENTIN ADMINISTRATION DOES NOT EVEN WANT TO ALLOW US TO TAKE A DECENT DUMP. WHAT'S NEXT? ELIMINATING SHOWERS AND FOOD?

(END OF STATEMENTS AS OF 6-26-06)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    **JAN 1 2** 2007

In re:    Taylor, H-14836
California State Prison, San Quentin
San Quentin, CA  94964

IAB Case No.:  0605104          Local Log No.:  SQ  06-1923

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Pearson, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he objects to the toilets not being able to flush frequently. The appellant is requesting to have the toilet fixed so it will flush whenever needed.

**II    SECOND LEVEL'S DECISION:** The reviewer found that all toilets in cells are being put on timers to address inmate cell flooding and water conservation. Due to water conservation mandates from the water district, the flush valves were changed and will not be altered. The flush valve does not prohibit the appellant from flushing his toilet.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** Water conservation efforts include the need to reduce the frequency of flushing toilets. Often inmate toilets are being flushed repeatedly for reasons other than for the removal of bodily fluids, such as to flood cells. Therefore, in the interest to water conservation and to limit inmate misconduct, inmate toilets have been modified to prevent multiple flushes in rapid succession. There is no evidence that the modification is having an adverse effect upon the appellant as his toilet is usable and will flush.

**B.    BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3380

**C.    ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, SQ
Appeals Coordinator, SQ

E X H I B I T   ' D '

STATE OF CALIFORNIA                                                                DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region   Log No.                    Category
1.    SQ                                 1.  07-00250              4
2.                                       2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME ② TAYLOR  RONALD ① | NUMBER H-14836 | ASSIGNMENT DONNER SECTION CLERK | UNIT/ROOM NUMBER 3-N-5-L |
|---|---|---|---|

A. Describe Problem: PLEASE LOG THIS APPEAL AS A CITIZEN'S COMPLAINT, PURSUANT TO THE
CALIFORNIA PENAL CODE, SECTIONS: 832.5 - 832.8, AGAINST THE SAN QUENTIN VISI-
TING PROCESSING STAFF WHO DISRESPECTED ME AND MY FAMILY ON DECEMBER 2, 2006;
IN AN ACT OF RETALIATION AGAINST ME, FOR MY PRIOR RESPONSIBLE USE OF THE AP-
PEALS PROCEDURE; IN DIRECT VIOLATION OF SECTIONS: 3004, 3170, 3084 & 3391 OF
THE CALIFORNIA CODE OF REGULATIONS - TITLE 15.

    SECTION 3170 OF THE DIRECTOR'S RULES MAKE IT CLEAR THAT VISITING IS TO
BE A MEANS OF "MAINTAINING FAMILY CONNECTIONS"...AND THAT THIS SHOULD BE ACCOM-

If you need more space, attach one additional sheet.                    (SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested: I AM REQUESTING TO KNOW THE NAME OF THE INDIVIDUAL THAT TOLD MY
NIECE TO TAKE OFF HER BRA AND WHO SENT OFFICER TYNES INTO THE VISITING ROOM TO
INTERUPT OUR VISIT AND PUT MY NIECE OUT, FOR NOT HAVING ON A BRA; SO THAT WE
CAN PURSUE LEGAL ACTION AGAINST THIS INDIVIDUAL.

Inmate/Parolee Signature: _Ronald E. Taylor_           Date Submitted: 12-6-06

C. INFORMAL LEVEL (Date Received: 12-20-06)                           DEC 11 RECT

Staff Response: _See attached by C/o Tynes_
_Dated 1/6/07_

BYPASS

Staff Signature: _K. E. Tynes C/o_           Date Returned to Inmate: ___

MAY 7 2007
INMATE APPEALS BRANCH
RECEIVED

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

THE INFORMAL RESPONSE IS INCOMPLETE AND INACCURATE. THEREFORE, FOR THOSE
REASONS, I AM DISSATISFIED AND AM HEREBY REQUESTING REVIEW AT THE FORMAL
LEVEL.

Signature: _Ronald E. Taylor_           Date Submitted: 1-10-07
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim                    CDC Appeal Number:

JAN 17 RECD

First Level    ☒ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **JAN 1 7 2007** ___ Due Date: **MAR 0 2 2007**

Interviewed by: _SEE Attached by Lt Cramer_

Staff Signature: _____    Title: _Lt_    Date Completed: _2/26/07_

Division Head Approved:
Signature: _____    Title: _NW-CS_    **MAR 0 5 REC'D** Returned to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

CONTRARY TO CRAMER'S ERRONEOUS ASSERTION THAT NO OTHER APPEALS HAVE BEEN FILED, I HAVE ATT-
ACHED SUPPORTING DOCUMENTATION TO PROVE OTHERWISE. IT SHOULD ALSO BE NOTED THAT THE MAILROOM
IS ALSO UNDER CRAMER; THEREFORE, SOME DOCUMENTATION HAS SPURIOUSLY DISAPPEARED. BASED ON THE
FOREGOING, I AM DISSATISFIED WITH CRAMER'S BOGUS BOILER-PLATE RESPONSE AND I HEREBY REQUEST
2nd-LEVEL REVIEW.

Signature: _Ronald C. Taylor_    **MAR 1 5 REC'D** Date Submitted: _3-9-07_

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **MAR 1 5 2007** ___ Due Date: **APR 1 2 2007**

☐ See Attached Letter

Signature: _____    Date Completed: _4-24-07_

Warden/Superintendent Signature: _____    **APR 2 6 REC'D**    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I AM DISSATISFIED WITH THE FACT THAT THERE WAS NO 2nd-LEVEL REVIEW AND THE
FACT THAT INSTITUTION POLITICS PRECLUDE JUSTICE. THEREFORE, I AM REQUESTING A
DIRECTOR'S LEVEL REVIEW, SOLELY FOR THE PURPOSE OF EXHAUSTION, FOR JUDICIAL
PRE-REQUISITE.

Signature: _Ronald C. Taylor_    Date Submitted: _4-28-07_

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☐ See Attached Letter

Date: **SEP 0 6 2007**

CDC 602 (12/87)

## SUPPLEMENTAL PAGE #1

PLISHED "IN AS ACCOMMODATING A MANNER AS POSSIBLE". THIS REGULATION WAS
CALLOUSLY AND CAPRICIOUSLY VIOLATED, IN AN ACT OF UNLAWFUL RETALIATION.

AT APPROXIMATELY 11:00 A.M., MY NIECE ARRIVED TO VISIT ME, WITH HER
FATHER (MY BROTHER) AND A FRIEND OF THE FAMILY. (MY NIECE'S FIANCE)

UPON ARRIVAL TO THE VISITOR PROCESSING CENTER, MY NIECE WAS TOLD THAT
SINCE SHE WAS WEARING A BRA WITH AN UNDER-WIRE IN IT, THAT SHE WOULD HAVE TO
"TAKE THE BRA OFF". SHE IMMEDIATELY COMPLIED AND DISCREETLY REMOVED THE BRA.
SHE DID NOT THINK THAT IT WOULD BE A PROBLEM BECAUSE SHE WAS WEARING A THICK
BLACK WOOL TURTLENECK SWEATER AND A BLACK LEATHER COAT, WHICH WAS ZIPPED UP.

AFTER REMOVING HER BRA, SHE CARRIED IT IN HER HAND THROUGH THE CHECK
POINT. HOWEVER, WHEN SHE ARRIVED AT THE SECOND GATE, OFFICER S. MALONE HASAN
TOLD HER THAT SHE COULD NOT CARRY HER BRA IN HER HAND INTO THE VISITING ROOM,
SO MY NIECE GAVE IT TO OFFICER HASAN, WHO PUT IT IN A BAG TO HOLD FOR MY NIECE
UNTIL OUR VISIT WAS COMPLETE.

AFTER GREETING MY NIECE, MY BROTHER AND OUR FRIEND, THEY WERE ALL SEATED
FOR A FEW MINUTES, THEN WE WENT AND TOOK PHOTOGRAPHS TOGETHER. (MY WIFE, MY
NIECE AND MYSELF, ALL HAVE THE PHOTOS; PLUS THERE WERE AT LEAST FIFTY WITNESSES
OF THE FACT THAT WE TOOK PHOTOS AND THAT MY NIECE HAD ON A THICK BLACK TURTLE-
NECK SWEATER, UNDER A ZIPPED UP BLACK LEATHER COAT.)

AFTER WE TOOK THE PHOTOGRAPHS AND RETURNED TO OUR SEATS AND BEGAN DE-
CIDING WHAT WE WERE GOING TO PURCHASE FROM THE VENDING MACHINES, OFFICER TYNES
WALKED IN, APPROACHED MY NIECE AND TOLD HER THAT SHE HAD TO LEAVE, BECAUSE SHE
WAS NOT WEARING A BRA.

ALL OF THE ABOVE TOOK PLACE OVER A PERIOD OF APPROXIMATELY THIRTY (30)
MINUTES.

C.C.R. SECTION 3004 WAS CLEARLY VIOLATED IN THAT MY NIECE WAS HURT,
HUMILIATED AND BLATANTLY DISRESPECTED; WHICH IN TURN HURT ME AND THE REST OF
MY VISITORS. WHEN I SAY "HURT ME", I MEAN THAT I WAS ADVERSELY AFFECTED TO
THE POINT THAT IT WAS EXTREMELY DIFFICULT TO ENJOY THE REMAINDER OF MY ANNI-
VERSARY CELEBRATION; WHICH I HAVE NO DOUBT WAS THE PURPOSE OF THE DISRESPECT
AND TOTAL UNPROFESSIONALISM. (CCR§3391) MY WIFE AND MY MOTHER WERE ALSO COM-
PLETELY UPSET, DUE TO STAFF'S BLATANT VIOLATIONS OF THE TITLE 15.

(see reverse side)

## (SUPPLEMENTAL PAGE, CONTINUED)

IF THE STAFF INVOLVED IN PROCESSING VISITORS INTO SAN QUENTIN WERE "ALERT, COURTEOUS AND PROFESSIONAL", AS IS MANDATED BY THE CALIFORNIA CODE OF REGULATIONS, SECTION 3391, THEY WOULD HAVE TOLD MY NIECE; BEFORE THEY LET HER BEGIN OUR VISIT; THAT SHE HAD AN OPTION OF REMOVING THE UNDER-WIRE FROM HER BRA, OR GOING TO THE FRIENDSHIP HOUSE AND WEARING A SUBSTITUTE, APPROVED BRA, FOR PURPOSES OF THE VISIT. MY NIECE HAD NO WAY OF KNOWING THE ABOVE, BECAUSE SHE HAS ONLY VISITED ME THREE TIMES IN SIX YEARS; AND PRIOR TO DECEMBER 2nd 2006, SHE HAD NO PROBLEMS WITH THE VISITING PROCEDURES.

THE SO-CALLED "PROFESSIONALS" CREATED THE PROBLEMS; EITHER THROUGH SERIOUS INCOMPETENCE OR IN RETALIATION FOR MY PRIOR USE OF THE APPEALS PRO-CEDURES. WHICH ONE WAS IT?

IF THE STAFF INVOLVED IN PROCESSING VISITORS INTO SAN QUENTIN ON DECEMBER 2nd 2006, WERE ATTEMPTING TO FACILITATE "MAINTAINING FAMILY CONNEC-TIONS" AND CONDUCTING THEMSELVES AND THE SITUATION "IN AS ACCOMMODATING A MANNER AS POSSIBLE", AS IS MANDATED BY SECTION 3170, OF THE CALIFORNIA CODE OF REGULATIONS; THEY WOULD HAVE TAKEN INTO CONSIDERATION THE FACT THAT, UNDER-WEAR MUST BE WORN BY FEMALE VISITORS IN ORDER TO DECREASE THE CHANCES OF IM-PROPRIETIES (SEXUAL) WITH INMATES; AND THE FACT THAT SHE WAS WITH HER FATHER AND HER FIANCE; COMING TO VISIT HER UNCLE; AND SINCE SHE HAD ON A THICK, BLACK WOOL SWEATER AS WELL AS A ZIPPED UP LEATHER COAT; THAT NO SUCH IMPROPRIETIES WOULD EVEN BE ENTERTAINED; AND SINCE SHE WAS ALREADY ALLOWED INTO THE VISITING ROOM AND HAD BEEN SEATED AND HAD PHOTOS TAKEN; COURTEOUS "PROFESSIONALISM" WOULD DICTATE THAT SHE BE ALLOWED TO STAY FOR THE REMAINDER OF THE VISIT; DE-SPITE THE FACT THAT SHE WAS NOT WEARING A BRA, DUE TO THE FACT THAT SHE FOLLOWED AN ORDER FROM STAFF, TO REMOVE IT IN THE FIRST PLACE!

FINALLY, AFTER ALL OF THE AFOREMENTIONED DISRESPECT AND UNPROFESSIONAL-ISM BY THE VISITOR PROCESSING STAFF, LT. CRAMER HAD THE AUDACITY TO TELL MY BROTHER THAT HE IS BARRED FROM VISITING ANYMORE. FIRST OF ALL, LT. CRAMER DOES NOT HAVE THE AUTHORITY TO SUPERCEDE THE D.O.M. AND/OR THE CALIFORNIA CODE OF REGULATIONS-TITLE 15.

MY BROTHER WAS RIGHTFULLY UPSET AND TOLD ONE OF THE OFFICERS INVOLVED THAT SHE WAS "STUPID". TO DO SO, DOES NOT FIT THE CRITERIA SET FORTH IN THE DIRECTOR'S RULES; CCR §3176. & 3176.1, FOR "DENIAL, RESTRICTION, SUSPENSION, TERMINATION, REVOCATIONS AND EXCLUSION OF A PERSON"; NOR THE "VISITOR VIOLA-TION PROCESS". THEREFORE, LT. CRAMER ACTED IN ERROR.

(END OF STATEMENTS, AS OF 12-6-06)          R. Taylor #H-14836

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:    SEP 0 6 2007

In re:    Taylor, H-14836
California State Prison, San Quentin
San Quentin, CA  94964

IAB Case No.: 0614651          Local Log No.: SQ 07-00250

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner S. Hemenway, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he and his family were humiliated when California State Prison, San Quentin (SQ) visiting staff terminated the appellant's niece's visit, as she was not wearing a bra, in the visiting room. The appellant is requesting to know the name of the individual who told his niece to take off her bra, and, who sent Officer Tynes into the visiting room to terminate her visit so that legal action can be taken against this individual.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the appellant's niece, Ms Taylor, was informed that she could not clear the metal detector, because she was wearing a metal under wire bra. Staff suggested that she go to the visitor's center and change. Upon reaching the "Scope" Gate, Ms Taylor failed to clear the metal detector and handed Officer Hasan the under wire bra she was holding in her hand. Officer Hasan had possession of the bra and contacted visiting staff to inform them that Ms Taylor may not be not wearing a bra. Correctional Sergeant T. Amrhein-Conama instructed Officer Tynes to verify the information. Ms Taylor admitted to Officer Tynes that she was not wearing a bra, and due to non-compliance of the dress code, her visit was terminated.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A. **FINDINGS:** Director's Level of Review (DLR) agrees with the Second Level of Review. Inmates are informed of the visiting rules and policies upon an inmate's reception into the institution. This information is given, to also share with potential visitors, to avoid embarrassment, problems and for adherence to all laws and procedures, in keeping with the safety and security of all institutions and facilities. All institutions and facilities have the visiting criteria posted in the visiting centers pursuant to California Code of Regulations, Title 15, Section (CCR) 3170, 3171, 3173.2, 3174, 3176 and 3179 in order to avoid problems and confusion. The appellant did file two visiting appeals in 2001 and one visiting appeal in March, 2006. DLR reviewed the 2006 appeal, only, as the 2001 appeals have been destroyed pursuant to applicable laws. Ms Taylor was given a choice to change her brazier at the visitor's center, in order to remain in compliance with CCR 3174. When asked, Ms Taylor admitted to Officer Tynes that she was not wearing a bra, therefore not in compliance with the visiting rules. It appears, because of her actions, she caused a disruption in the visiting area. The appellant's brother became upset, because of Ms Taylor's visiting termination, and subsequently had to be placed on visiting restriction. The SQ visiting staff acted appropriately, enforcing the visiting policies and procedures. DLR finds no malicious intent regarding neither visiting staff's actions nor retaliation for filing a previous visitation appeal.

B. **BASIS FOR THE DECISION:**
CCR: 3170, 3170.1, 3171, 3172.1, 3173, 3174

C. **ORDER:** No changes or modifications are required by the institution.

TAYLOR, H-14836
CASE NO. 0614651
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, SQ
        Appeals Coordinator, SQ

MMC

CV 08    00647

DEAR COURT CLERK;

    I HAVE ENCLOSED A SELF ADDRESSED STAMPED ENVELOPE FOR YOUR CONVENIENCE.

PLEASE RETURN TO ME A CONFORMED (STAMPED "**FILED**") COPY OF MY COMPLAINT.

THANK YOU IN ADVANCE FOR YOUR TIME AND CONSIDERATION.


                    RESPECTFULLY SUBMITTED,

ORIGINAL

_Ronald E. Taylor_

————————————————————

RONALD E. TAYLOR, #H 14836

2 N 20 L, S.Q.S.P.

SAN QUENTIN, CALIFORNIA

94974

**IN PROPRIA PERSONAM**

USA FIRST-CLASS FOREVER

NORTH BAY C

2008

RONALD TAYLOR #H-4836
2-N-20-L, S.Q.S.P.
SAN QUENTIN CALIFORNIA
94974

NORTH BAY CA 949   JAN 16 2008

UNITED STATES POSTAGE
$ 02.38°
JAN 16 2008
0004248283
MAILED FROM ZIP CODE 94964

U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CALIFORNIA
94102-3483

RECEIVED

JAN 17 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

