08-0064 MMC

FILED

08 MAR 19 AM 10: 10

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

2

3 Name ___ TAILOR, RONALD L.

4     (Last)      (First)      (Initial)

5 Prisoner Number ___ H-14636

6 Institutional Address ___ 1 MAIN STREET, S.Q.S.P.

7     SAN QUENTIN, CALIFORNIA 94974

8 ===========================

9 **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

10 RONALD EVANS TAYLOR

11 (Enter the full name of plaintiff in this action.)

12         vs.        Case No. **08-0647 MMC**

13 ROBERT L. AYERS JR., et al.  (To be provided by the clerk of court)

14     )    **COMPLAINT UNDER THE**
**CIVIL RIGHTS ACT,**

15       **42 U.S.C §§ 1983**

16     **FIRST AMENDED**

17 (Enter the full name of the defendant(s) in this action))

18 *[All questions on this complaint form must be answered in order for your action to proceed..]*

19 I.  Exhaustion of Administrative Remedies

20 **[Note:** You must exhaust your administrative remedies before your claim can go

21 forward. The court will dismiss any unexhausted claims.]

22   A.  Place of present confinement ___ SAN QUENTIN STATE PRISON

23   B.  Is there a grievance procedure in this institution?

24       YES (X)    NO ( )

25   C.  Did you present the facts in your complaint for review through the grievance

26     procedure?

27       YES(X)    NO ( )

28   D.  If your answer is YES, list the appeal number and the date and result of the

1  appeal at each level of review. If you did not pursue a certain level of appeal,

2  explain why.

3  1. Informal appeal _____

4  _____

5  _____ 2. First

6  formal level_____

7  _____

8  _____

9  3. Second formal level_____

10 _____

11 _____ 4 Third

12 formal level _____

13 _____

14 _____

15  E.  Is the last level to which you appealed the highest level of appeal available to

16     you?

17          YES ( )    NO ( )

18  F.  If you did not present your claim for review through the grievance procedure,

19 explain why._____

20 _____

21 _____

22 II.  Parties

23  A.  Write your name and your present address. Do the same for additional plaintiffs,

24     if any.

25 RONALD E. TAYLOR #R 14836

26 2 N 20 L, S.Q.S.P.

27 SAN QUENTIN, CALIFORNIA    94974

28  B.  Write the full name of each defendant, his or her official position, and his or her

COMPLAINT                    - 2 -

1    place of employment.

2  B-1. DEFENDANT C.M. LOVE, IS A CORRECTIONAL OFFICER OF THE

3  CALIFORNIA DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTION-

4  ED IN THIS COMPLAINT WAS ASSIGNED TO SAN QUENTIN STATE PRISON.

5  DEFENDANT C.M. LOVE IS SUED INDIVIDUALLY AND IN HER OFFICIAL

6  CAPACITY. DEFENDANT LOVE ACTED UNDER COLOR OF STATE LAW.

(defendants continued on page 3-a)

7  Statement of Claim

8    State here as briefly as possible the facts of your case. Be sure to describe how each

9  defendant is involved and to include dates, when possible. Do not give any legal arguments or

10 cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

11 separate numbered paragraph.

12 CLAIM ONE. ON MAY 12, 2006, MY PERSONAL PROPERTY WAS CONFIS-

13 CATED IN VIOLATION OF DUE PROCESS.

14 DUE PROCESS VIOLATIONS INCLUDED, BUT WERE NOT LIMITED TO:

15 CONFISCATION OF PROPERTY WITHOUT ISSUANCE OF RECEIPT.

16 CONFISCATION OF PROPERTY WITHOUT LOGGING SAID CONFISCATION IN

17 UNIT CELL SEARCH LOG.

18 FAILURE TO RESPOND TO INMATE APPEAL WITHIN MANDATED TIME CON-

19 STRAINTS.

20    THE ABOVE DUE PROCESS VIOLATIONS WERE PERPETRATED UNDER

21 COLOR OF AUTHORITY AND IN VIOLATION OF THE CALIFORNIA CODE OF

22 REGULATIONS-TITLE 15.

23 (claims continued on page 3a 3

24

25 IV.   Relief

26    Your complaint cannot go forward unless you request specific relief. State briefly exactly

27 what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

28 (A) A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN

COMPLAINT                    - 3 -

B 2. **DEFENDANT ROBERT L. AYERS JR.**, IS THE WARDEN OF SAN QUENTIN STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION OF SAN QUENTIN STATE PRISON AND FOR THE WELFARE OF ALL THE INMATES/PRISONERS OF THAT PRISON.

DEFENDANT AYERS JR. IS SUED INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT. DEFENDANT AYERS JR. ACTED UNDER COLOR OF AUTHORITY.

B 3. **DEFENDANT M. CRAMER** IS A LIEUTENANT AT SAN QUENTIN STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION OF THE VISITING AND U.S. MAIL AREAS OF SAN QUENTIN STATE PRISON.

DEFENDANT CRAMER IS SUED INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT. DEFENDANT CRAMER ACTED UNDER COLOR OF AUTHORITY.

B 4. **DEFENDANT N. GRANNIS,** IS THE CHIEF OF INMATE APPEALS FOR THE DEPARTMENT OF CORRECTIONS AND REHABILITATION. DEFENDANT GRANNIS IS LEGALLY RESPONSIBLE FOR THE COORDINATING AND THE FINAL RESOLUTIONS OF ALL INMATE APPEALS/GRIEVANCES FILED AT SAN QUENTIN STATE PRISON.

DEFENDANT GRANNIS IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT. DEFENDANT GRANNIS ACTED UNDER COLOR OF AUTHORITY

B 5. **DEFENDANT A. SHELDON,** IS THE APPEALS COORDINATOR FOR SAN QUENTIN STATE PRISON. DEFENDANT SHELDON IS LEGALLY RESPONSIBLE FOR PROCESSING INMATE APPEALS IN ACCORDANCE WITH THE CALIF. CODE OF REGULATIONS AND THE DEPARTMENT OPERATIONS MANUAL (D.O.M.)

DEFENDANT SHELDON IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT. DEFENDANT SHELDON ACTED UNDER COLOR OF AUTHORITY.

3 a

B **6. DEFENDANT R.L. WINGO,** IS A CORRECTIONAL OFFICER OF THE DEPARTMENT OF CORRECTIONS AND REHABILITATION, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT HELD THE RANK OF SERGEANT AND WAS LEGALLY RESPONSIBLE FOR THE MAIL ROOM IN SAN QUENTIN STATE PRISON.

DEFENDANT WINGO IS SUED INDIVIDUALLY AND IN HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT WINGO ACTED UNDER COLOR OF AUTHORITY.

B **7. DEFENDANT G.L. BICKHAM,** IS A CORRECTIONAL OFFICER OF THE DEPARTMENT OF CORRECTIONS AND REHABILITATION, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT HELD THE RANK OF SERGEANT AND WAS LEGALLY RESPONSIBLE FOR SUPERVISION OF THE MAIN VISITING ROOM STAFF AT SAN QUENTIN STATE PRISON.

DEFENDANT BICKHAM IS SUED INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT BICKHAM ACTED UNDER COLOR OF AUTHORITY.

B **8. DEFENDANT J.M. MASSONE,** IS A CORRECTIONAL OFFICER OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT WAS ASSIGNED TO THE SAN QUENTIN MAIN VISITING ROOM.

DEFENDANT MASSONE IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT MASSONE ACTED UNDER COLOR OF AUTHORITY.

3 a 1

B   9.   **DEFENDANT G.M. THOMSON,** IS A CORRECTIONAL OFFICER OF THE DEPARTMENT OF CORRECTIONS AND REHABILITATION, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT WAS ASSIGNED TO THE SAN QUENTIN MAIN VISITING ROOM.

DEFENDANT THOMSON IS SUED IN HIS/HER INDIVIDUAL AND OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT THOMSON ACTED UNDER COLOR OF AUTHORITY.

B  **10.   DEFENDANT S.S. SALAIS,** IS A CORRECTIONAL OFFICER OF THE DEPARTMENT OF CORRECTIONS AND REHABILITATION, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT WAS ASSIGNED TO THE SAN QUENTIN MAIN VISITING ROOM.

DEFENDANT SALAIS IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT, DEFENDANT SALAIS ACTED UNDER COLOR OF AUTHORITY.

3 a 2

## CLAIMS, continued

EXHIBIT 'A', IS A COPY OF THE APPEAL PLAINTIFF FILED IN RESPONSE TO DEFENDANT LOVE CONFISCATING HIS PROPERTY (NOT POT) ON MAY 12, 2006.

THE CALIFORNIA CODE OF REGULATIONS TITLE 15, (HEREINAFTER REFERRED TO AS CCR) SECTION 3287, MAKES IT CLEAR THAT ANY CONFISCATION SHALL BE ACCOMPANIED BY A WRITTEN RECEIPT, JUSTIFICATION AND RECORDING OF SAID CONFISCATION, AS WELL OF THE DISPOSITION OF ANY CONFISCATED PROPERTY.

THE **CCR, SECTION 3084.6**, CLEARLY STATES THAT "INFORMAL LEVEL APPEALS **SHALL BE** ANSWERED WITHIN **10 WORKING DAYS**". DEFENDANT LOVE DID NOT SUPPLY PLAINTIFF WITH A RECEIPT UNTIL JUNE 27, 2006; THIRTY FIVE (35) WORKING DAYS AFTER RECEIVING PLAINTIFF'S APPEAL. (SEE EXHIBIT 'A') DEFENDANT LOVE'S RESPONSE WAS NOT ONLY OVER A MONTH LATE; THE RESPONSE STATES THAT MY PROPERTY WAS "DISPOSED OF PER INSTITUTIONAL PROCEDURE". THERE IS NO 'INSTITUTIONAL PROCEDURE' WRITTEN, FOR DISPOSAL OF INMATE PROPERTY.

AFTER SUBMITTING THIS APPEAL TO THE APPEALS COORDINATOR'S OFFICE, FOR FORMAL LEVEL PROCESSING. PLAINTIFF NEVER RECEIVED THE APPEAL BACK, NOR ANY FURTHER RESPONSE.

AS CAN BE SEEN FROM THE APPEAL (EXHIBIT 'A'). NEITHER OF THE ABOVE MANDATES WERE ADHERED TO BY DEFENDANT LOVE; WHICH CLEARLY AMOUNTS TO A VIOLATION OF STATE AND FEDERAL **DUE PROCESS.**

## C L A I M   T W O

IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, DEFENDANT AYERS REFUSES TO ALLOW PLAINTIFF TO CONSUMMATE HIS MARRIAGE.

ON MARCH 27, 2006, PLAINTIFF FILED AN APPEAL (**EXHIBIT 'B'**) REGARDING THE FACT THAT HE REQUESTED "TO BE ALLOWED OVERNIGHT FAMILY VISITING", JUST LIKE OTHER PRISONERS WHO ARE RESPONSIBLE FOR THE LOSS OF LIFE ARE.

3 a 3

PLAINTIFF WAS MARRIED HERE AT SAN QUENTIN STATE PRISON ON DECEMBER 2, 2005. IT IS A FACT THAT A MARRIAGE NOT CONSUMMATED IS NOT A VALID MARRIAGE. THEREFORE, IF PLAINTIFF IS NOT ALLOWED TO CONSUMMATE HIS MARRIAGE, THE MARRIAGE IS NOT VALID AND PLAINTIFF'S COSTS OF THE MARRIAGE; LICENSE, ETC., SHOULD BE REFUNDED.

PLAINTIFF WAS TOLD THAT HE WAS NOT ALLOWED TO PARTICIPATE IN THE OVERNIGHT FAMILY VISITING PROGRAM, DUE TO THE FACT THAT HE IS A LIFER. WELL, PLAINTIFF IS A LIFER DUE TO THE FACT THAT HE (REGRETFULLY) TOOK ANOTHER MAN'S LIFE. HOWEVER, THERE ARE OTHER, SIMILARLY SITUATED PRISONERS, WHO ARE ALLOWED TO HAVE OVERNIGHT FAMILY VISITS, EVEN THOUGH THOSE PRISONERS WERE ALSO CONVICTED OF TAKING HUMAN LIFE . (SEE EXHIBIT 'E')

IT IS THE PLAINTIFF'S CONTENTION THEREFORE, THAT HE SHOULD ALSO BE ALLOWED TO PARTICIPATE IN THE OVERNIGHT FAMILY VISITING PROGRAM AS WELL AS CONSUMMATION OF HIS MARRIAGE.

FOR DEFENDANT AYERS TO FORBID PLAINTIFF FROM PARTICIPATING IN THE FAMILY VISITING PROGRAM IS IN DIRECT VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION.

## C L A I M   T H R E E

IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DEFENDANT AYERS HAS REGULATORS INSTALLED ON THE TOILETS OF MAINLINE LIFER INMATES IN NORTH BLOCK, BUT NOT ON THE TOILETS OF SHORT TIME INMATES IN H UNIT, RECEPTION CENTER INMATES IN WEST BLOCK, NOR THE RECEPTION CENTER INMATES IN SOUTH BLOCK OR THE GYM.

SAID TOILET REGULATORS ARE A DANGER TO THE HEALTH OF INMATES HOUSED IN NORTH BLOCK DUE TO THE FACT THAT THEY DO NOT ALLOW A CLEAN FLUSH, BECAUSE THERE IS, AT THE MOST, A THREE (3) SECOND FLUSH, WHICH ALWAYS LEAVES DEFECATED FECAL MATTER IN THE PLAINTIFF'S TOILET.

3 a 4

ADDITIONALLY, IF A PRISONER FLUSHES HIS TOILET FOUR TIMES IN ONE SITTING, THE TOILET LOCKS UP AND WILL NOT FLUSH ANYMORE FOR AN HOUR, WHICH IS DETRIMENTAL TO THE HEALTH OF PLAINTIFF AS WELL AS ALL NORTH BLOCK PRISONERS.

IT IS NOTEWORTHY AT THIS JUNCTURE THAT PLAINTIFF IS DENIED AN ADEQUATE DIET TO SUPPORT A HEALTHY BODY AS IT IS. BUT NOW, THE FACT THAT THE DEFENDANTS INSIST THAT PLAINTIFF, HIS CELL MATE AND THE REST OF THE NORTH BLOCK POPULATION (WHO ARE ALL DOUBLE CELLED), TO ENDURE SAID TOILET REGULATING DEVICES, CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT; IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION. PLAINTIFF HERE MAKES THE POINT OF THE DOUBLE CELLING AN ISSUE BECAUSE THESE TOILET REGULATING DEVICES ARE TOLERABLE FOR A PRISONER WHO IS SINGLE CELLED.

E X H I B I T   ' C ' , IS A COPY OF THE DIRECTOR'S LEVEL DECISION REGARDING THE REGULATING DEVICE AT ISSUE.

P L E A S E   T A K E   J U D I C I A L   N O T I C E OF THE FACT THAT ON THE FACE SHEET OF THE "DIRECTOR'S DECISION", UNDER ' A .

F I N D I N G S :  ' DEFENDANT GRANNIS HAD THE AUDACITY TO STATE THAT, "OFTEN INMATE TOILETS ARE BEING FLUSHED REPEATEDLY FOR REASONS OTHER THAN FOR REMOVAL OF BODILY FLUIDS, SUCH AS TO FLOOD CELLS. THEREFORE, IN THE INTEREST TO WATER CONSERVATION AND TO LIMIT INMATE MISCONDUCT, INMATE TOILETS HAVE BEEN MODIFIED TO PREVENT MULTIPLE FLUSHES IN RAPID SUCCESSION".

IT SHOULD BE NOTED THAT NORTH BLOCK HOUSES 826 PRISONERS; APPROXIMATELY 600 OF WHICH ARE LIFERS. NO ONE IN NORTH BLOCK (WHERE PLAINTIFF RESIDES) FLOODS THEIR CELLS, PERIOD!

WEST BLOCK HOUSES 900 INMATES; APPROXIMATELY 200 OR MORE OF THEM MALICIOUSLY FLOOD THEIR CELLS ON A REGULAR, DAILY BASIS; WITH IMPUNITY. YET, THERE ARE NO TOILET REGULATING DEVICES AT ALL ON ANY OF THE TOILETS IN WEST BLOCK. CLEARLY, AN EQUAL PROTECTION CLAUSE VIOLATION. (14th AMENDMENT)

SOUTH BLOCK HOUSES APPROXIMATELY 1500 INMATES, IN FOUR DIFFERENT

SECTIONS: ALPINE SECTION; BADGER SECTION; CARSON SECTION; & DONNER SECTION.

A L P I N E    S E C T I O N  HOUSES 494 PROTECTIVE CUSTODY INMATES, IN TWO MAN CELLS (CHILD MOLESTERS AND INFORMANTS). ALPINE SECTION INMATES ARE FAMOUS FOR FLOODING THE UNIT ON A REGULAR BASIS, JUST FOR FUN, BY PLUGGING UP THEIR TOILETS AND CONTINUOUSLY FLUSHING THEM. YET, THERE ARE NO TOILET REGULATING DEVICES ATTACHED TO ANY OF THE TOILETS IN ALPINE SECTION.

B A D G E R    S E C T I O N  HOUSES 494 INMATES, IN TWO MAN CELLS. BADGER SECTION HAS ALWAYS HAD NUMEROUS INMATE INITIATED INCIDENTS OF INTENTIONAL FLOODING OF THE UNIT. YET, THERE ARE NO TOILET REGULATING DEVICES ATTACHED TO ANY OF THE TOILETS IN BADGER SECTION.

C A R S O N    S E C T I O N  HOUSES APPROXIMATELY 233 INMATES; ALL ON SINGLE CELL STATUS. CARSON SECTION HAS NUMEROUS, REGULAR INCIDENTS OF INTENTIONAL FLOODING, BY THE INMATES. YET, THERE ARE NO TOILET REGULATING DEVICES ON ANY OF THE TOILETS IN CARSON SECTION.

D O N N E R    S E C T I O N  HOUSES BETWEEN 214 AND 494 INMATES, IN CELLS. DONNER SECTION INMATES ARE WELL KNOWN FOR NUMEROUS INCIDENTS OF INMATES INTENTIONALLY FLOODING THE CELLS/UNIT. YET, THERE ARE NO TOILET REGULATING DEVICES ON ANY OF THE TOILETS IN DONNER SECTION.

EVEN THOUGH THERE ARE TO THIS DAY, NUMEROUS, REGULAR INCIDENTS OF INMATES MALICIOUSLY FLOODING THE UNITS/CELLS/TIERS IN SOUTH BLOCK; THERE ARE NO TOILET REGULATING DEVICES IN SOUTH BLOCK (APPROX. 1500 INMATES)

THE GYM HOUSES APPROXIMATELY 360 INMATES, BUT THERE ARE NO TOILET REGULATING DEVICES ON ANY OF THE TOILETS IN THE GYM.

H UNIT HOUSES APPROXIMATELY 894 INMATES, BUT THERE ARE NO TOILET REGULATING DEVICES ON ANY OF THE TOILETS IN H UNIT.

3 a 6

ANOTHER **CRUEL AND UNUSUAL** ASPECT OF THE TOILET REGULATING DEVICES THAT HAVE BEEN FORCED ONTO THE PLAINTIFF AS WELL AS THE REST OF THE PROGRAMMING LIFER POPULATION OF SAN QUENTIN, IS THAT WHENEVER THE POWER IN THE INSTITUTION GOES OUT, THE PLAINTIFF CANNOT FLUSH HIS TOILET AT ALL.

ON NUMEROUS OCCASIONS, SAN QUENTIN HAS BEEN WITHOUT ELECTRICAL POWER; SOMETIMES ALL DAY LONG. DURING THOSE TIMES, THE TOILETS IN NORTH BLOCK CANNOT FLUSH AT ALL.

PLAINTIFF ASKS THE COURT TO PLEASE CONSIDER THE CRUEL INHUMANITY OF HAVING 826 PRISONERS LOCKED IN CELLS ALL DAY, TWO MEN TO A 4X7X10 FOOT CELL, IN A WINDOWLESS BUILDING; WITHOUT THE ABILITY TO FLUSH ANY TOILETS.

IT SHOULD ALSO BE NOTED THAT IN NORTH BLOCK, THERE ARE SIGNS WARNING THE **NON PRISONERS** THAT THEY MUST WEAR PROTECTIVE BREATHING APPARATUS WHEN ENTERING THE PIPE CHASE AREAS OF NORTH BLOCK. YET PLAINTIFF NOR ANY OF THE OTHER 825 PRISONERS HOUSED IN NORTH BLOCK (MANY OF US FOR LIFE) ARE ISSUED ANY TYPE OF PROTECTIVE GEAR, WHILE WE ARE BREATHING THE DUSTY FILTH ON A DAILY BASIS.

SUBSEQUENTLY, SHORTLY AFTER THE **CRUEL AND UNUSUAL** TOILET REGULATING DEVICES WERE INSTALLED THERE WAS A SERIOUS OUTBREAK OF THE **NOROVIRUS**. BECAUSE NORTH BLOCK PRISONERS COULD NOT FLUSH THEIR TOILETS PROPERLY, THE VIRUS SPREAD LIKE WILDFIRE, RESULTING IN A TWO WEEK LONG LOCK DOWN/QUARANTINE. IN FACT, SINCE THE INSTALLATION OF SAID "DEVICES", ALL VIRUSES HAVE INCREASED AND SPREAD THROUGHOUT THE NORTH BLOCK MUCH FASTER THAN THEY DID BEFORE INSTALLATION OF THE DEVICES, DUE TO THE VARIOUS BACTERIA, BLOOD AND FECAL MATTER THAT IS ALWAYS PRESENT IN THE 413 CELLS/TOILETS. THIS ADDITIONAL DEGRADATION AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S HEALTH NEEDS IS BASED ON THE INABILITY TO EVER GET A CLEAN FLUSH IN THE 2 TO 3 SECOND FLUSHES AND THE LIMITED NUMBER OF FLUSHES ALLOWED BY THE REGULATING DEVICE.

3 a 7

CLAIM FOUR

IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DEFENDANT M. CRAMER NOT ONLY WRONGFULLY TERMINATED PLAINTIFF'S APPROVED VISIT WITH PLAINTIFF'S NIECE, DEFENDANT CRAMER UNLAWFULLY BARRED PLAINTIFF'S BROTHER FROM VISITING PLAINTIFF, WITHOUT **DUE PROCESS** OF LAW, IN VIOLATION OF **CALIFORNIA CODE OF REGULATIONS TITLE 15, SECTIONS: 3004, 3084, 3170, 3176, 3176.1** AND **3391.** DEFENDANT M. CRAMER's ACTIONS IN THIS CASE, AS IN MANY OTHER INSTANCES WHICH WILL BE DEMONSTRATED TO THE COURT, ALSO CONSTITUTE UNLAWFUL **R E T A L I A T I O N,** FOR PLAINTIFF'S PETITIONS TO THE PRISON GOVERNMENT FOR REDRESS OF HIS GRIEVANCES.

P L E A S E   T A K E   J U D I C I A L   N O T I C E THAT PLAINTIFF CAN, WITHOUT A DOUBT, POSITIVELY PROVE THAT HE HAS BEEN PERSONALLY SINGLED OUT AND TARGETED FOR PETTY, ONGOING, REGULAR, CONSISTENT, UNLAWFUL ACTS OF RETALIATION BY LIEUTENANT M. CRAMER AND HIS COHORTS; MASSONE, SALAIS AND THOMSON; IF THIS HONORABLE COURT WILL ALLOW DISCOVERY, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS FROM DEFENDANT CRAMER AND SAID COHORTS.

**EXHIBIT 'D',** IS A COPY OF THE DIRECTOR'S LEVEL REVIEW/DECISION, IN REGARDS TO THIS CLAIM. ALL OF THE PERTINENT FACTS ARE STATED IN PLAINTIFF'S APPEAL.

DEFENDANT M. CRAMER HAS VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS AND HAS USED CRUEL AND UNUSUAL PUNISHMENT ON PLAINTIFF AND PLAINTIFF'S FAMILY, SIMPLY BECAUSE PLAINTIFF EXERCISES HIS RIGHTS TO FILE LAWFUL APPEALS REGARDING THE MANY, MANY INDISCRETIONS AND ILLEGALITIES OF DEFENDANT CRAMER AND HIS COHORTS ON THE VISITING AND MAIL ROOM STAFF.

AS ADDITIONAL EVIDENCE OF THE ABOVE, PLAINTIFF HEREBY SUBMITS AN APPEAL BY A PRISONER NAMED COLEMAN; REGARDING THE BLATANT DISRESPECT OF ONE OF DEFENDANT CRAMER'S COHORTS, DEFENDANT THOMSON. (ATTACHED AS **EXHIBIT 'F'**)

SAID APPEAL WAS SUBMITTED TO THE SAN QUENTIN APPEALS OFFICE; FIRST, ON JANUARY 28, 2007, PLAINTIFF PERSONALLY TYPED THE APPEAL FOR PRISONER COLEMAN; THEN PERSONALLY MAILED SAID APPEAL TO THE APPEALS OFFICE ON THAT DATE, BY MEANS OF THE SAN QUENTIN LEGAL MAIL SYSTEM.

THE FACT THAT SAID APPEAL NEVER REACHED IT'S DESTINATION IN SAN QUENTIN CAN ONLY BE ATTRIBUTED TO DEFENDANT CRAMER; WHO IS NOT ONLY IN CHARGE OF THE VISITING STAFF; HE IS ALSO IN CHARGE OF THE MAIL ROOM.

FOUR MONTHS LATER, ON APRIL 9, 2007, PLAINTIFF WROTE A LETTER TO THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S INTERNAL AFFAIRS. SINCE DEFENDANT CRAMER WAS OBVIOUSLY NOT MONITORING PLAINTIFF'S MAIL ON THAT PARTICULAR DATE, THE BRIEF MISSIVE REACHED IT'S DESTINATION. THIS IS EVIDENCED BY THE FACT THAT SAID MISSIVE IS STAMPED "RECEIVED", BY INTERNAL AFFAIRS ON "APR. 12 2007". **(SEE EXHIBIT F 1.)**

WHETHER OR NOT DEFENDANT CRAMER HAS PERSONAL FRIENDS AT INTERNAL AFFAIRS IS UNKNOWN TO PLAINTIFF. HOWEVER, OTHER THAN ACKNOWLEDGMENT OF RECEIPT, PLAINTIFF, NOR PRISONER COLEMAN EVER HEARD FROM INTERNAL AFFAIRS AFTER THAT. (EX. F 1)

3 a 9

P L E A S E    T A K E    J U D I C I A L    N O T I C E  THAT PLAINTIFF HEREBY REQUESTS THAT THE COURT ALLOW, AS ADDITIONAL SUPPORTING EVIDENCE, COPIES OF THE LATEST VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS; COMMITTED BY DEFENDANTS CRAMER, MASSONE, BICKHAM, THOMSON AND SALAIS.

PLAINTIFF ASKS PERMISSION FOR LEAVE TO SUBMIT THIS LATEST EVIDENCE, BECAUSE THESE LATEST ISSUES HAVE NOT YET BEEN EXHAUSTED ADMINISTRATIVELY. HOWEVER, PLAINTIFF CAN SAY FOR A CERTAINTY, THAT TO WAIT ON EXHAUSTION AT THIS JUNCTURE WOULD BE NOTHING LESS THAN A COMPLETE WASTE OF TIME; BECAUSE DEFENDANT GRANNIS (**CLAIM FIVE**) IS WITHOUT A DOUBT, GOING TO TAKE SIDES WITH DEFENDANT CRAMER. DUE TO THIS FACT, PLAINTIFF WOULD LIKE TO SUBMIT THESE FACTS NOW. AS OPPOSED TO HAVING TO SUBMIT ANOTHER AMENDED COMPLAINT.

ON SEPTEMBER 8, 2007, PLAINTIFF WAS SUBJECTED TO A NEW LIST OF MADE UP RULES BY DEFENDANT CRAMER AND HIS COHORTS, IN VIOLATION OF THE **ADMINISTRATIVE PROCEDURES ACT** AND WITHOUT PERMISSION OF THE **OFFICE OF ADMINISTRATIVE LAW**. AFTER HIS VISIT PLAINTIFF TYPED UP AN APPEAL, WHICH HE SUBMITTED TO DEFENDANTS THE FOLLOWING WEEK, AT HIS NEXT VISIT.

AS A DIRECT RESULT OF PLAINTIFF'S PETITION TO THE GOVERNMENT FOR REDRESS OF HIS GRIEVANCES; FORTY FIVE MINUTES AFTER PLAINTIFF HANDED DEFENDANT MASSONE SAID GRIEVANCE, DEFENDANTS THOMSON AND BICKHAM **ILLEGALLY** TERMINATED PLAINTIFF'S VISIT WITH HIS WIFE, A S    A N A C T    O F    R E T A L I A T I O N .   (SEE EXHIBIT "G")

IN ADDITION TO THE ILLEGAL RETALIATION OF TERMINATING PLAINTIFF'S VISIT, WITHOUT DUE PROCESS, DEFENDANTS THOMSON AND SALAIS SUBMITTED BOGUS CHRONOS INTO PLAINTIFF'S PRISON FILES; IN AN EFFORT TO MAGNIFY THE **ILLEGAL RETALIATION** AGAINST PLAINTIFF.

3 a 1 0

LASTLY, AS TO ADDITIONAL **R E T A L I A T I O N** FOR PLAINTIFF'S SEEKING REDRESS OF HIS GRIEVANCES; ON SEPTEMBER 14, 2007, DEFENDANT BICKHAM CALLED PLAINTIFF'S HOUSING UNIT ON THE TELEPHONE; SEVERAL TIMES; AND SPOKE TO CORRECTIONAL OFFICER R. GODINA JR., IN AN ATTEMPT TO LOCATE PLAINTIFF AND INTIMIDATE HIM INTO WITHDRAWING THE APPEAL AT ISSUE. (EX. "G")

PLAINTIFF WAS NOT IN THE HOUSING UNIT, DUE TO THE FACT THAT HE WAS AT HIS JOB ASSIGNMENT AND HAD BEEN SENT ON A MISSION TO GET SOME COPIES FOR THE DONNER SECTION SERGEANT. NEVERTHELESS, ONCE PLAINTIFF ARRIVED BACK TO HIS JOB ASSIGNMENT, SERGEANT D. MCGRAW AND CORRECTIONAL OFFICER M.G. BURKHART NOTIFIED PLAINTIFF THAT DEFENDANT BICKHAM HAD CALLED PLAINTIFF'S JOB ASSIGNMENT REPEATEDLY.

WITHIN FIVE (5) MINUTES AFTER PLAINTIFF'S RETURN TO HIS WORK STATION, DEFENDANT BICKHAM CALLED DONNER SECTION (PLAINTIFF'S JOB ASSIGNMENT) AND THE FOLLOWING EXCHANGE OCCURRED:

DEFENDANT BICKHAM: "HEY TAYLOR. I SAW YOUR 602". ("602" IS THE FORM USED TO FILE APPEALS) PLAINTIFF TAYLOR: "YES SIR. IS THERE A PROBLEM?" DEFENDANT BICKHAM: "YEAH, YOU GOT ME ON THERE. YOU KNOW, IF YOU DROP THAT 602, WE CAN LOOK THE OTHER WAY SOMETIMES, WHEN YOU'RE OUT THERE. OTHERWISE, YOU ARE GOING TO BE UNDER CONSTANT WATCH, EVERY MINUTE THAT YOU ARE IN THAT VISITING ROOM."

PLAINTIFF TAYLOR: "THAT'S COOL. I'M USED TO BEING UNDER CONSTANT SCRUTINY. I'M NOT DOING ANYTHING ILLEGAL, SO IT DOESN'T REALLY MATTER. I'M NOT DROPPING MY 602. I WENT FOR THAT OKEY DOKE BEFORE. IT WON'T MATTER. YOU GUYS WILL ALWAYS FIND A WAY TO RETALIATE."

DEFENDANT BICKHAM: "O K, IT'S YOUR CALL."

DEFENDANT BICKHAM THEN HUNG UP THE PHONE.

3 a l l

C L A I M   F I V E

DEFENDANT N. GRANNIS REGULARLY VIOLATES PLAINTIFF'S DUE PROCESS RIGHTS BY NOT ONLY BLATANTLY VIOLATING MANDATORY TIME CONSTRAINTS, BUT BY REFUSING TO GIVE PLAINTIFF FULL AND FAIR CONSIDERATION IN PLAINTIFF'S APPEALS FOR REDRESS OF GRIEVANCES.

ON JANUARY 30, 2007, PLAINTIFF FILED AN APPEAL FOR VIOLATION OF HIS DUE PROCESS AND EQUAL PROTECTION RIGHTS, PURSUANT TO THE U.S. CONSTITUTION. MORE SPECIFICALLY, PLAINTIFF'S COUNSELOR TOOK IT UPON HERSELF TO CHANGE PLAINTIFF'S DETERMINANT FROM 'OTHER LIFER' TO 'VIOLENT'.

PLAINTIFF MADE IT CLEAR TO STAFF THAT FOR HIM TO BE CLASSIFIED AS VIOLENT IN 2007, IT WOULD BE IMPOSSIBLE FOR HIM TO BE FOUND SUITABLE FOR PAROLE IN 2008. PLAINTIFF DEMONSTRATED THAT STAFF WAS IN ERROR, MAINLY BECAUSE PLAINTIFF HAD NOT COMMITTED ANY VIOLENT ACTS SINCE APRIL 26, 1990. THEREFORE, TO SUDDENLY LABEL PLAINTIFF AS "VIOLENT", WAS A CALCULATED ACT ON THE PART OF THE SAN QUENTIN STAFF, TO INSINUATE AND SUBLIMINALLY MAKE SURE THAT PLAINTIFF DOES NOT GET A PAROLE DATE. ENABLING THE BOARD OF PAROLE HEARINGS COMMISSIONERS TO DEPRIVE PLAINTIFF OF HIS LIBERTY, IN VIOLATION OF DUE PROCESS.

FOR SIXTEEN YEARS, PLAINTIFF HAS NOT BEEN LABELED AS VIOLENT. PLAINTIFF HAS ALWAYS BEEN LABELED AS A 'LIFER', WHICH SIMPLY SIGNIFIES A LIFE TERM PRISONER.

A 'VIO' DETERMINANT, CLEARLY SAYS THAT PLAINTIFF IS VIOLENT. SUCH A DETERMINANT IS PREJUDICE, EGREGIOUS AND WITHOUT FOUNDATION.

SAID DETERMINANT WAS CHANGED WITHOUT NOTICE AND WITHOUT **DUE PROCESS** AND IN VIOLATION OF THE **EQUAL PROTECTION CLAUSE** OF THE **14th AMENDMENT TO THE U.S. CONSTITUTION.**

3 a 1 2

DEFENDANT GRANNIS IS LEGALLY RESPONSIBLE FOR THE COORDINATING AND THE FINAL RESOLUTION TO PLAINTIFF'S APPEALS. THEREFORE, ANY DEPRIVATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS, WHICH IS PERPETRATED BY SAN QUENTIN STATE PRISON, SHOULD BE CORRECTED BY DEFENDANT N. GRANNIS.

HOWEVER, DEFENDANT GRANNIS SIMPLY ECHOES/PARROTS THE STAND OF THE WARDEN OF SAN QUENTIN, WITHOUT ANY INVESTIGATION OR OTHER CONSIDERATION AS TO WHETHER OR NOT PLAINTIFF'S CIVIL AND CONSTITUTIONAL RIGHTS HAVE BEEN VIOLATED.

A PRIME EXAMPLE OF PLAINTIFF'S ABOVE STATEMENT, AS TO DEFENDANT GRANNIS'S "ECHO/PARROT" STATUS IS DEMONSTRATED CLEARLY IN **EXHIBIT 'C'**, UNDER DEFENDANT GRANNIS'S **"FINDINGS"**. IT IS PAINFULLY OBVIOUS THAT DEFENDANT GRANNIS SIMPLY **ECHOED** THE **"SECOND LEVEL'S DECISION"**, RIGHT ABOVE THE FINDINGS OF DEFENDANT GRANNIS'S. **(EXHIBIT 'C')**

DEFENDANT GRANNIS HAS NOT INVESTIGATED THE SITUATION AT ISSUE **(SEE C L A I M  T H R E E )** OR EVEN BOTHERED TO COME TO SAN QUENTIN AND SEE HOW DEGRADING THE TOILET REGULATING DEVICES ARE. DEFENDANT GRANNIS SIMPLY AGREED TO CONTINUE TO ENDANGER PLAINTIFF'S HEALTH, AS WELL AS ALL OF THE OTHER 825 PRISONERS IN SAN QUENTIN STATE PRISON'S NORTH BLOCK.

SUBSEQUENTLY, DEFENDANT GRANNIS'S FAILURE TO DO THE JOB FOR WHICH THE DEFENDANT IS PAID EXTREMELY WELL; CONSTITUTES VIOLATIONS OF PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS, TO BE FREE FROM **CRUEL AND UNUSUAL PUNISHMENT** AND TO BE GIVEN **EQUAL PROTECTION OF THE LAW;** LIKE THE OTHER THOUSANDS OF PRISONERS IN SAN QUENTIN STATE PRISON, WHO ARE NOT SUBJECTED TO THE TOILET REGULATING DEVICES.

## C L A I M   S I X

DEFENDANT A. SHELDON VIOLATES PLAINTIFF'S **DUE PROCESS** AND **EQUAL PROTECTION RIGHTS** ON A REGULAR BASIS, BY **ALWAYS FAILING TO COMPLY** WITH THE TIME CONSTRAINTS SET FORTH IN THE **CALIFORNIA CODE OF REGULATIONS TITLE 15,** AS WELL AS THE **DEPARTMENT OPERATIONS MANUAL.** **(D.O.M.)**

3 a 1 3

THE CALIFORNIA CODE OF REGULATIONS-TITLE 15, (HEREINAFTER
REFERRED TO AS CCR) IS THE LAW, IN THE CALIFORNIA STATE PRISON SYSTEM.

THE RULES OF CONSTRUCTION, SET FORTH IN THE CCR, **SECTION 3000,**
**CLEARLY STATE THAT THE WORD "SHALL", MEANS MANDATORY.**

IN HARMONY WITH STATE AND FEDERAL **DUE PROCESS,** ALL PARTIES MUST
ADHERE TO THE RULES AND REGULATIONS SET FORTH IN THE CCR.

CCR **SECTION** 3084.6(b), STATES IN PERTINENT PART THAT "APPEALS
**SHALL BE** RESPONDED TO AND RETURNED TO THE APPELLANT BY STAFF WITHIN THE
FOLLOWING TIME LIMITS:

(1) INFORMAL LEVEL RESPONSES **SHALL BE COMPLETED WITHIN TEN WORKING DAYS.**
(2) FIRST LEVEL RESPONSES **SHALL BE COMPLETED** WITHIN 30 WORKING DAYS".

DEFENDANT SHELDON NOT ONLY DISREGARDS THIS **LAW,** DEFENDANT
SHELDON ALLOWS SAN QUENTIN STAFF TO DISREGARD TIME CONSTRAINT LAWS AS
WELL.

(IT IS NOTEWORTHY AT THIS JUNCTURE, TO MENTION THE FACT THAT
SAN QUENTIN STAFF ALWAYS MEETS TIME CONSTRAINTS WHEN IT COMES TO PUNISH-
MENT OF PRISONERS. IN FACT THEY ARE USUALLY EARLY AND/OR PREMATURE IN
SO PUNISHING)

ATTACHED AS **EXHIBIT "H",** ARE BUT A FEW OF THE RECENT EXAMPLES
OF DISREGARD FOR **DUE PROCESS,** BY DEFENDANT SHELDON.

H-1, IS A COPY OF AN APPEAL ASSIGNMENT NOTICE WITH A NOTE ATTA-
CHED FROM PLAINTIFF, REQUESTING THAT DEFENDANT SHELDON DO THE JOB THEY
ARE WELL PAID TO DO. HOWEVER, INSTEAD OF DOING THE JOB, DEFENDANT
SHELDON HAS AN UNDERLING WRITE A NOTE CLAIMING THAT "STAFF IS WORKING
TO CORRECT" A SUPPOSED "BACKLOG" PROBLEM. **PLAINTIFF HERE REPEATS THAT**
**THERE IS NEVER A "BACKLOG" WHEN IT COMES TO MEETING TIME CONSTRAINTS**
**TO PUNISH PRISONERS.**

H   2 ,   IS A COPY OF ANOTHER NOTE FROM PLAINTIFF TO DEFENDANT
SHELDON, REQUESTING THAT DEFENDANT SHELDON SIMPLY DO THE JOB FOR WHICH
THEY ARE PAID. HOWEVER, AS CAN BE SEEN FROM DEFENDANT'S UNDERLINGS
REPLY, DEFENDANT SHELDON DOESN'T EVEN BOTHER TO CLAIM THEY ARE "WORKING
TO CORRECT A BACKLOG"; THEY SIMPLY SAY THAT "STAFF HAS BEEN NOTIFIED".
WHAT STAFF???

H   3 , IS A COPY OF PLAINTIFF'S MOST RECENT REQUEST FOR COMPLIANCE
WITH **DUE PROCESS** BY THE DEFENDANT. (SHELDON) AS CAN BE SEEN THOUGH,
FROM THE DEFENDANT'S ATTACHED RESPONSE, THAT DEFENDANT HAS MADE UP
'BOILERPLATE' MEMOS; DESIGNED TO BLOW PRISONERS OFF; WITHOUT EVEN
A SIGNATURE.

ASIDE FORM THE MEMO GIMMICK, THIS BEHAVIOR IS COMMON BY THE
DEFENDANT AND THE SAN QUENTIN APPEALS OFFICE IN GENERAL. INSTEAD OF
DOING THEIR JOBS, THEY SIMPLY FIND WAYS TO STALL A PRISONER'S APPEAL,
IN HOPES THAT THE PRISONER WILL BECOME FRUSTRATED AND EITHER GET
VERBAL, OR FORGET ABOUT IT.

DEFENDANT SHELDON NOR ANYONE IN THE SAN QUENTIN APPEALS OFFICE
**E V E R** COMPLIES WITH 'TIME CONSTRAINTS' OR ANY **DUE PROCESS RIGHTS**
GUARANTEED TO PLAINTIFF BY THE **CCR** OR THE **U.S. CONSTITUTION**.

PLAINTIFF REQUESTS THAT THE COURT PLEASE TAKE NOTICE OF THE
FACT THAT PLAINTIFF'S **EXHIBIT "H 1"**, WHICH WAS SUPPOSED TO HAVE BEEN
RESPONDED TO BY DEFENDANT SHELDON, NO LATER THAN "DECEMBER 14, 2007",
IS STILL BEING DISREGARDED BY DEFENDANT SHELDON, AS WELL AS THE REST
OF THE SAN QUENTIN APPEALS OFFICE STAFF. TODAY'S DATE IS JANUARY 22,
2008.

3 a l 5

C L A I M   S E V E N

DEFENDANTS BICKHAM, MASSONE, THOMSON AND SALAIS, ALL CONSPIRED WITH AND ACTIVELY PARTICIPATED WITH DEFENDANT M. CRAMER, TO DEPRIVE PLAINTIFF OF HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW, PURSUANT TO THE CCR AND THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION, WHILE AT THE SAME TIME ALSO VIOLATING THE 1st AMENDMENT TO THE U.S. CONSTITUTION. (SEE CLAIM FOUR & EXHIBIT "G")

SPECIFICALLY, ON SEPTEMBER 15, 2007, PLAINTIFF ENTERED THE MAIN VISITING ROOM FOR HIS WEEKLY VISIT WITH HIS WIFE. UPON ENTERING THE VISITING ROOM, PLAINTIFF PROCEEDED TO THE OFFICER'S STATION AND SERVED DEFENDANTS THOMSON AND MASSONE AN APPEAL, (EX."G") REGARDING PRIOR ILLEGAL ACTS CONDUCTED IN THE VISITING ROOM BY DEFENDANT CRAMER AND HIS COHORTS.

WITHIN THIRTY MINUTES AFTER SERVING SAID APPEAL ON DEFENDANTS THOMSON AND MASSONE; DEFENDANTS SALAIS AND BICKHAM JOINED THE OTHER DEFENDANTS AT THE OFFICER'S STATION IN THE VISITING ROOM.

DEFENDANTS BICKHAM, MASSONE, THOMSON AND SALAIS HAD ALREADY BEEN INSTRUCTED BY DEFENDANT CRAMER, TO COME UP WITH WAYS TO OPPRESS THE PLAINTIFF IN ANY AND EVERY WAY POSSIBLE. DEFENDANT BICKHAM WAS USED AS THE 'TOKEN NEGRO', SO THAT PLAINTIFF WOULD HAVE DIFFICULTY PROVING THAT THE DEPRIVATIONS OF HIS RIGHTS WERE RACIALLY MOTIVATED.

DEFENDANT BICKHAM PRACTICALLY YELLED ACROSS THE ROOM AT PLAINTIFF: "COME ON! LET'S GO! SAY YOUR GOOD BYES AND TAKE IT TO THE BACK!"

DEFENDANT BICKHAM'S LOUD, BOISTEROUS, DISRESPECTFUL EXCLAMATIONS, EMBARRASSED AND CAUSED EXTREME EMOTIONAL DISTRESS TO PLAINTIFF'S WIFE; AND CLEARLY VIOLATED CCR SECTIONS: 3004 3170 & 3391; AS WELL AS CALIFORNIA PENAL CODE § 147.

ALL OF THE ABOVE ACTIONS OF THE DEFENDANTS, WERE CLEAR-CUT ACTS OF RETALIATION AGAINST PLAINTIFF, FOR EXERCISING HIS RIGHT TO PETITION THE ADMINISTRATION (GOVERNMENT) FOR REDRESS OF HIS GRIEV-ANCES; WHICH VIOLATED PLAINTIFF'S 1st & 14th AMENDMENT RIGHTS PUR-SUANT TO THE U.S. CONSTITUTION.

AS THE FINAL ACT OF RETALIATORY DEGRADATION HEAPED UPON THE PLAINTIFF AND HIS WIFE; DEFENDANT BICKHAM TERMINATED PLAINTIFF'S VISIT; 45 MINUTES AFTER THE ARRIVAL OF PLAINTIFF'S WIFE; WITHOUT DUE PROCESS.

CCR SECTION 3004(a) CLEARLY STATES THAT: "INMATES HAVE THE RIGHT TO BE TREATED RESPECTFULLY, IMPARTIALLY, AND FAIRLY BY ALL EMPLOYEES."

CCR SECTION 3170(a) CLEARLY STATES THAT: "THE VALUE OF IN-MATE VISITATION IS A MEANS OF INCREASING SAFETY IN PRISONS, MAIN-TAINING FAMILY AND COMMUNITY CONNECTIONS, AND PREPARING INMATES FOR SUCCESSFUL RELEASE AND REHABILITATION."

CCR SECTION 3391(a) CLEARLY STATES THAT: "EMPLOYEES SHALL BE (AGAIN, MANDATORY LANGUAGE) COURTEOUS, AND PROFESSIONAL IN THEIR DEALINGS WITH INMATES, VISITORS AND MEMBERS OF THE PUBLIC." (PLAINTIFF'S WIFE, IS A LAW-ABIDING, TAX-PAYING, "VISITOR & MEMBER OF THE PUBLIC", WHO WAS TOTALLY DISRESPECTED AND EMBARRASSED BY DEFENDANT BICKHAM)

CALIFORNIA PENAL CODE §147, STATES THAT: "IT IS A CRIME TO OPPRESS AN INMATE."

DEFENDANT BICKHAM WILLFULLY, MALICIOUSLY AND INTENTIONALLY VIOLATED ALL OF THE ABOVE LAWS/STATUTES.

3 a 17

(FROM PAGE 3.)

### IV. RELIEF, continued

1 | VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF
2 | THE UNITED STATES.
3 | II. A PRELIMINARY AND PERMANENT INJUNCTION WHICH (a) PROHIBITS
4 | THE DEFENDANTS, THEIR SUCCESSORS IN OFFICE, AGENTS AND EMPLOY-
5 | EES AND ALL OTHER PERSONS IN ACTIVE CONCERT AND PARTICIPATION
6 | WITH THEM FROM HARASSING, THREATENING, PUNISHING OR RETALIATING

(continued on page 4-a)

7 | I declare under penalty of perjury that the foregoing is true and correct.

8

9 | Signed this **16ᵀʰ** day of **MARCH** , 20 08

10

11

12 | (Plaintiff's signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                    - 4 -

IN ANY WAY AGAINST PLAINTIFF BECAUSE HE FILED THIS ACTION OR AGAINST
ANY OTHER PRISONER BECAUSE THAT PRISONER SUBMITTED AFFIDAVITS IN THIS
CASE ON BEHALF OF THE PLAINTIFF.

(b) PROHIBITS DEFENDANT AYERS JR., et al., FROM TRANSFERRING PLAINTIFF
TO ANY OTHER INSTITUTION WITHOUT PLAINTIFF'S EXPRESS CONSENT, WHILE
THIS ACTION IS PENDING.

(c) REQUIRES DEFENDANT AYERS JR. TO REMOVE FROM PLAINTIFF'S PRISON
FILES AND RECORDS ANY REFERENCES TO ANY EVENTS DESCRIBED HEREIN OR
TO THE FACT THAT PLAINTIFF FILED THIS SUIT; AND PROHIBITS BOARD OF
PAROLE HEARINGS MEMBERS FROM CONSIDERING ANY SUCH REFERENCES IN ANY
WAY WHEN THEY FIX PLAINTIFF'S TERMS OR DECIDE WHETHER PLAINTIFF SHOULD
BE RELEASED ON PAROLE.

(d) REQUIRES DEFENDANTS TO ALLOW PLAINTIFF AND OTHER PRISONERS TO:
1) ENGAGE IN ANY ORAL OR WRITTEN COMMUNICATION WHICH IS REASONABLY
RELATED TO THE CONDUCT OF THIS SUIT; INCLUDING THE PREPARATION OF
AFFIDAVITS ON BEHALF OF PLAINTIFF; AND 2) TO ALLOW PLAINTIFF TO
PREPARE LEGAL PAPERS AND DO ANYTHING ELSE, CONSISTENT WITH PRISON
SECURITY, WHICH IS REASONABLY CONNECTED WITH THE CONDUCT OF THIS SUIT.

I I I .

COMPENSATORY DAMAGES IN THE AMOUNT OF $300.00, FROM DEFENDANTS:
C.M. LOVE, M. CRAMER AND R.L. WINGO/VILLA AND EACH OF THEM, TO
PLAINTIFF.

I V .

PUNITIVE DAMAGES IN THE AMOUNT OF $200,000.00, FROM DEFENDANT
M. CRAMER, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT
R.L. WINGO, TO PLAINTIFF.

4 a

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT C.M. LOVE, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT N. GRANNIS, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT A. SHELDON, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $200,000.00, FROM DEFENDANT G.L. BICKHAM, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT J.M. MASSONE, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT G.M. THOMSON, TO PLAINTIFF.

PUNITIVE DAMAGES IN THE AMOUNT OF $100,000.00, FROM DEFENDANT S.S. SALAIS, TO PLAINTIFF.

V . A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.

V I . PLAINTIFF'S COSTS OF THIS SUIT.

V I I . SUCH OTHER AND FURTHER RELIEF AS THIS COURT DEEMS JUST. PROPER AND EQUITABLE.

4 a 1

## V E R I F I C A T I O N

I, RONALD EVANS TAYLOR, HEREBY DECLARE UNDER PENALTY OF PERJURY, THAT:

1. I AM THE PLAINTIFF HEREIN.

2. I HAVE WRITTEN AND READ THE FOREGOING COMPLAINT AND KNOW THE CONTENTS THEREOF AND THAT THE SAME ARE TRUE OF MY OWN KNOWLEDGE.

DATED: **MARCH 16, 2008**

RESPECTFULLY SUBMITTED,

_Ronald E. Taylor_
----------------------------
RONALD E. TAYLOR, #H 14836
2 N 28 L. S.Q.S.P.
SAN QUENTIN, CALIFORNIA
94974
**IN PROPRIA PERSONAM**

/
/
/
/
/
/
/
/
/
/
/

4 a 2

E X H I B I T   ' A '

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: Institution/Parole Region | Log No | Category |
|---|---|---|
| 1 _____ | 1 _____ | 5 |
| 2 _____ | 2 _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME TAYLOR | NUMBER H-14836 | ASSIGNMENT WEST BLOCK CLERK | UNIT/ROOM NUMBER 3-n-5-L |
|---|---|---|---|

A. Describe Problem: ON FRIDAY MAY 12, 2006, THE ENTIRE INMATE POPULATION WAS FORCED TO GO TO THE YARD, FOR APPROXIMATELY 6 HOURS, WHILE A SPURIOUS SEARCH WAS CON-DUCTED OF NORTH BLOCK. EVEN THOUGH THE STATED REASON FOR SAID SEARCH WAS THE LOSS OF SOME PLIERS OR WIRE CUTTERS BY STAFF; MY HOT POT; WHICH I PURCHASED AT THE CANTEEN AT SOLANO IN 1996; WAS TAKEN FROM MY CELL. I ASKED THE ENTIRE NORTH BLOCK STAFF, WHETHER OR NOT THEY KNEW WHO SEARCHED MY CELL, WITH NEGATIVE RE-SULTS. WHOEVER TOOK MY PROPERTY DID NOT LEAVE A RECEIPT, NOR WAS SAID SEARCH OR CONFISCATION NOTED IN THE CELL SEARCH LOGS OF NORTH BLOCK.

If you need more space, attach one additional sheet.                    (SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested: I AM SIMPLY REQUESTING THE IMMEDIATE RETURN OF MY HOT POT AND THAT THE CUSTOMARY SAN QUENTIN RETALIATORY ACTIONS ARE NOT INITIATED AGAINST ME, FOR FILING THIS APPEAL.

Inmate/Parolee Signature _Ronald C. Taylor_    **MAY 16 2006**    Date Submitted _5-12-06_

C. INFORMAL LEVEL (Date Received: 5/17/06 )
Staff Response: Hot pot that was confiscated was said to be altered and was disposed of per institutional procedure. Property card was checked and showed no proof of having hot pot in property; therefore the return of your hot pot is Denied. (property reciept included)

Staff Signature: _____    Date Returned to Inmate: 6/27/06

D. FORMAL LEVEL
If you are dissatisfied, explain below; attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE, BECAUSE (A) IT IS OVER THIRTY DAYS PAST DUE-CCR 3084.6(1); (B) ITEMS PURCHASED IN THE CANTEEN ARE NOT PLACED ON 'PROPERTY CARD'; (C) MY HOT POT WAS NOT ALTERED; (D) THE RECEIPT WAS WITHHELD FOR OVER A MONTH AND A HALF, IN VIOLATION OF CCR 3287.(4) AS WELL AS THE ATTACHED WARDEN'S MEMO. I AM HEREBY REQUESTING FORMAL REVIEW.

Signature _Ronald C. Taylor_    Date Submitted _6-27-06_

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number

SUPPLEMENTAL PAGE - 1

___ THE CALIFORNIA CODE OF REGULATIONS - TITLE 15, SECTION: 3287 (2),
CLEARLY STATES; IN PERTINENT PART: "CELL INSPECTIONS WILL NOT BE USED TO
HARASS AN INMATE..."

THE CALIFORNIA CODE OF REGULATIONS -TITLE 15, section: 3287 (4),
CLEARLY STATES: "THE INMATE WILL BE GIVEN A WRITTEN NOTICE FOR ANY ITEM(s)
OF PERSONAL AND AUTHORIZED STATE-ISSUED PROPERTY REMOVED FROM HIS OR HER
QUARTERS DURING AN INSPECTION AND THE DISPOSITION MADE OF SUCH PROPERTY.
THE NOTICE WILL ALSO LIST ANY CONTRABAND PICKED UP OR ANY BREACH OF SECURITY
NOTED DURING THE INSPECTION, AND THE FOLLOW-UP ACTION INTENDED BY THE INSPECT-
ING OFFICER".

THE CALIFORNIA CODE OF REGULATIONS - TITLE 15, SECTION 3287 (d), CLEARLY
STATES: A WRITTEN RECORD SHALL BE MAINTAINED OF THE DISPOSITION OF CONTRABAND
AND STOLEN OR MISSING PROPERTY CONFISCATED AS THE RESULT OF CELL, PROPERTY, OR
BODY INSPECTIONS".

MY HOT POT WAS NOT CONTRABAND AND IT WAS OBVIOUSLY NOT A SET OF PLIERS
OR WIRE CUTTERS. THEREFORE, THERE WAS ABSOLUTELY NO JUSTIFICATION FOR TAKING
IT OUT OF MY CELL. I PURCHASED MY HOT POT FROM THE SOLANO PRISON CANTEEN IN
NOVEMBER OF 1996. I BROUGHT IT WITH ME UPON MY ARRIVAL TO SAN QUENTIN PRISON
ON JANUARY 26, 2000 AND HAVE HAD IT THROUGH NUMEROUS CELL SEARCHES, WITH NO
PREVIOUS PROBLEMS.

THE OFFICER WHO TOOK MY HOT POT IS IN DIRECT VIOLATION OF SECTIONS:
3004(a), 3287, & 3391 OF THE CALIFORNIA CODE OF REGULATIONS - TITLE 15.

(END OF STATEMENTS , AS OF 5-15-06)

Ronald E. Taylor
# H-14836
3 N 5 -1

SQWB#120/2001
September 18, 2001

# SAN QUENTIN WARDEN'S BULLETIN

## TO: ALL SAN QUENTIN STAFF

## RE: ISSUANCE OF PROPERTY RECEIPTS TO INMATES DURING SEARCHES

It has been brought to my attention that while staff are conducting searches of inmates in their assigned work areas or cells, there have been issues concerning confiscated items. Staff should be aware they are to issue a receipt for all inmate items confiscated from inmates. This will be done regardless if it is personal or state property.

The property receipts serve many purposes to the institution, such as helping in the resolution of appeal issues.

Your cooperation in this matter is expected and appreciated.

J/S. WOODFORD
Warden

E X H I B I T    ' B '

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region   Log No.   Category

1. _____SQ_____   1. _06-724_   4

2. _____   2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| TAYLOR | H-14836 | WEST BLOCK CLERK | 3-N-5-L |

A. Describe Problem: THIS IS AN APPEAL OF THE CALIFORNIA CODE OF REGULATIONS-TITLE 15; SECTION: 3177. THE AFOREMENTIONED REGULATION VIOLATES THE 'EQUAL PROTECTION' CLAUSE OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION. IN EXAMPLE.. INMATES CONVICTED OF MANSLAUGHTER ARE ELIGIBLE FOR (OVERNIGHT) FAMILY VISITING, WHILE INMATES CONVICTED OF 2ND DEGREE MURDER ARE NOT. I SUBMIT THAT THERE IS SUCH A FINE LINE BETWEEN THE CRIME OF VOLUNTARY MANSLAUGHTER AND MY SECOND-DE-GREE MURDER; THAT MY RIGHT TO "EQUAL PROTECTION" OF THE LAW IS VIOLATED.

I BASE THE AFOREMENTIONED ON THE FACT THAT DEAD IS DEAD. TO CLARIFY;

If you need more space, attach one additional sheet.                    (SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested: I AM SIMPLY REQUESTING TO BE ALLOWED THE PRIVILEGE OF (OVERNIGHT) FAMILY VISITING. ALSO, I AM REQUESTING THAT NO RETALIATORY ACTIONS ARE TAKEN AGAINST ME, FOR FILING THIS APPEAL.

Inmate/Parolee Signature: *Ronald E. Taylor*          Date Submitted: 3-27-06
                                                                     MAR 3 0 REC'D

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

*Bypass*

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

*Bypass*

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __MAR 3 0 2006__    Due Date __MAY 1 2 2006__

Interviewed by: _ON April 19, 2006 You were INTERVIEWED Regarding the issues CONTAINED_ _IN this INMATE Appeal. AFTER A thorough INVESTIGATION, Your Appeal is Being_ _"DENIED." THE DENIAL is based ON, CCR 3177 (2), FAMILY VISITING (overnight). You_ _ARE A PRISONER SERVING A LIFE-TERM without A parole DATE ESTABLISHED_ _by the Board of Prison Terms ('See Attached CCR Section)._

Staff Signature: _____    Title: _CAPTAIN_    Date Completed: _4/19/06_

Division Head Approved: _____

Signature: _____    Title: _AW_    APR 28    Returned/Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE, AS IT IS BOILERPLATE LANGUAGE.
THEREFORE, I AM REQUESTING REVIEW AT THE SECOND-LEVEL.

Signature: _Donald E. Taylor_ 5-9-06    MAY 0 8 REC'D    Date Submitted: 5-4-06

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __MAY 1 1 2006__    Due Date: __JUN 0 9 2006__

☐ See Attached Letter

Signature: _____    Date Completed: _6/5/6_

Warden/Superintendent Signature: _____    JUN 09 REC'D    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I AM DISSATISFIED, DUE TO THE FACT THAT THE ABOVE RESPONSE IS LUDICROUS AND
THEREFORE UNACCEPTABLE. I AM HEREBY REQUESTING REVIEW AT THE DIRECTOR'S LEVEL;
WITH A REMINDER TO THE DIRECTOR THAT THE WORD R E H A B I L I T A T I O N
IS NOW IN THE TITLE OF THE DEPARTMENT.

Signature: _Donald E. Taylor_    Date Submitted: 6-14-06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

## S U P P L E M E N T A L   P A G E

I SINCERELY REGRET HAVING CAUSED THE LOSS OF MY VICTIM'S LIFE. HOWEVER, THE FACT IS, BOTH MANSLAUGHTER AND MURDER MEAN THAT A LIFE WAS LOST. THE ONLY DIFFERENCE IS SEMANTICS. IN MY CASE, TWO (2) FACTS CAUSED ME TO BE CONVICTED OF 2ND DEGREE MURDER INSTEAD OF MANSLAUGHTER. FIRST OF ALL, I DID NOT TAKE THE "MANSLAUGHTER DEAL" OFFERED BY THE D.A..

SECONDLY, AND PERHAPS MOST KEY, IS THE FACT THAT JURORS ARE NOT PROFESSIONALS. THEY KNOW NOTHING ABOUT THE LAW. JURORS ARE LIKE AN AUDIENCE AT A STAGE PLAY. THEY SIMPLY APPLAUD THE BEST PERFORMANCE. THE O. J. SIMPSON CASE IS A PERFECT EXAMPLE. THE DREAM TEAM PUT ON THE BEST PERFORMANCE, SO THE JURORS [AUDIENCE] GAVE THEM THE APPLAUSE - THEREFORE, O.J. WON.

IN MY CASE, MY STATE APPOINTED PUBLIC DEFENDER [PRETENDER] PUT ON A LOUSY PERFORMANCE; WHILE THE D.A. IN MY CASE PUT ON A BETTER PERFORMANCE. SO I LOST. THAT IS THE ONLY DIFFERENCE BETWEEN MY CONVICTION FOR 2ND DEGREE, MURDER AND MY GETTING CONVICTED OF MANSLAUGHTER. MY TRIAL TRANSCRIPTS WILL CONFIRM THAT I KILLED A GUY IN A SPUR OF THE MOMENT FIGHT. (PLEASE DO NOT CONFUSE MY CANDOR WITH AN ATTEMPT TO MINIMIZE THE SANCTITY OF HUMAN LIFE. THAT IS N O T MY INTENTION.

TO MAKE A LONG STORY SHORT, HAD I HAD A COMPETENT ATTORNEY, I WOULD HAVE ONLY BEEN CONVICTED OF MANSLAUGHTER, BECAUSE I NEVER DENIED KILLING MY VICTIM. MY ONLY AND CONSTANT ARGUMENT, WAS THAT IT WAS NOT MURDER. EITHER WAY; LIKE I SAID PREVIOUSLY; HOWEVER GRUESOME IT MAY SOUND; "DEAD IS DEAD": [GOD KNOWS I'M SORRY] THEREFORE, "EQUAL PROTECTION" ATTACHES.

NOW, SINCE PEOPLE GUILTY OF MANSLAUGHTER, ROBBERY, BURGLARY, PURSE SNATCHING, DRUG DEALING, ETC., ARE ALLOWED TO PARTICIPATE IN THE OVERNIGHT FAMILY VISITING PROGRAM; I TOO, SHOULD BE ALLOWED TO PARTICIPATE AS WELL.

(SEE CONTINUATION ON REVERSE SIDE)

SIDE 2 - CONTINUATION

I AM A PROGRAMMING LEVEL II, INMATE, WITH THE MINIMUM ALLOWABLE NUMBER OF POINTS; WHO HAS NUMEROUS LAUDATORY CHRONOS IN MY PRISON FILES; ALONG WITH NUMEROUS LETTERS OF SUPPORT FROM LOVED ONES AND FAMILY MEMBERS, INCLUDING GRAND-DAUGHTERS, DAUGHTERS, NIECES, FRIENDS, MINISTERS, MY MOTHER, ETC., ETC.. SINCE I AM A CERTIFIED PARALEGAL, I ALSO HAVE LETTERS OF JOB OFFERS FROM AN ATTORNEY IN SAN RAFAEL. AS SUCH, I WOULD LIKE FOR SOMEONE / ANYONE, IN THIS DEPARTMENT TO TELL ME WHY I PERSONALLY, WOULD POSE A RISK TO THE SAFETY AND SECURITY OF THIS OR ANY INSTITUTION, IF I AM ALLOWED OVERNIGHT FAMILY VISITING.

FURTHERMORE, WHEN I ENTERED C.D.C., I AUTOMATICALLY ENTERED INTO A CONTRACT OF SORTS, WHEREBY IF I DO 'A', 'B' AND 'C', THAT I WILL RECEIVE 'D', 'E' AND 'F', I DID MY PART. THE DEPARTMENT IS NOT FULFILLING IT'S PART OF THE CONTRACT.

LASTLY, BUT CERTAINLY NOT OF LEAST SIGNIFICANCE, IS THE FACT THAT CDC HAS RECENTLY ADOPTED A NEW TITLE AS WELL AS NEW GOALS AND A NEW MISSION PLAN. THE NEW TITLE IS: THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION.

TO DENY ME OVERNIGHT FAMILY VISITING IS EXERCISING THE EXACT OPPOSITE OF THIS DEPARTMENT'S NEW TITLE/GOAL. R E H A B I L I T A T I O N. IS SERIOUSLY STIFLED, WHEN I, AS A FIFTY-FOUR (54) YEAR OLD MARRIED MAN, WITH NO SEX CRIMES OR CRIMES AGAINST WOMEN OR FAMILY MEMBERS IN MY LIFE IS DENIED MY G O D - G I V E N   R I G H T , TO SPEND A NIGHT WITH MY WIFE NOW AND THEN.

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION         ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



August 20, 2006

Taylor, CDC #H-14836
California State Prison, San Quentin
San Quentin, CA  94964

Re: Institution Appeal Log #SQ 06-724 Visiting

Dear Mr. Taylor:

The enclosed documents are being returned to you for the following reasons:

Your appeal is incomplete.  You must include supporting documentation.  Your appeal is missing the CDC 128-G, Institution Classification Committee Chrono (current copy).

Your assigned counselor, the Appeals Coordinator, or your Parole Agent can answer any questions you may have regarding the appeals process.  Library staff can help you obtain any addresses you need.

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

State of California                                                          Department of Corrections and Rehabilitation

# Memorandum

Date:    June 5, 2006

2   Ronald

To:      TAYLOR, H-14836
         California State Prison, San Quentin

Subject: SECOND LEVEL APPEAL RESPONSE
         LOG NO.: SQ 06-724

### APPEAL ISSUE:  VISITING

### ISSUE:

Whether or not staff is appropriately denying the appellant the opportunity to participate
in the Family Visiting Program.

### FINDINGS I

Appellant filing this appeal alleges that there is a fine line between the crime of Voluntary
Manslaughter and appellant's Second Degree Murder charge. Appellant asserts his basis
for the aforementioned is that dead is dead and both manslaughter and murder means a
life was lost. Appellant's contentions are that his right to "Equal Protection" of the law
was violated and inmates convicted of manslaughter, robbery, burglary, purse snatching
and drug dealing are allowed to participate in overnight family visiting and he should be
as well. Therefore, the appellant requests that he be allowed the privilege of participating
in Overnight Family Visiting.

### FINDINGS II

INTERVIEWED BY: K.J. Williams, Correctional Captain

First level reviewer denied the appellant's appeal on the basis of CCR 3177(2), Family
Visiting (Overnight). Appellant is an inmate serving a Life-Term without a parole date
established by the Board of Prison Terms (Board of Prison Terms). See attached CCR
Section.

REGULATIONS: The rules governing this issue are:

**California Code of Regulations, Title 15, Section (CCR) 3177. Family
Visiting (Overnight)**

**CCR 3270. General Policy.**

TAYLOR, H-14836
CASE NO. 06-724
PAGE 2

## DETERMINATION OF ISSUES:

After review of the available documents, arguments having been presented, as well as referenced regulations, appellant's appeal has been thoroughly considered. Appellant is advised that a thorough inquiry was conducted into his concerns. The inquiry encompassed a detailed examination of the appellant's central file. The following information and facts were determined during the inquiry. Review of the appellant's central file revealed the appellant has a commitment offense of Murder 2nd which resulted in a Life term. Pursuant to CCR 3177(b)(2) Family visiting shall not be permitted for inmates who are in any of the following categories: sentenced to life without the possibility of parole; sentenced to life, without a parole date established by the Board of Prison Terms; designated Close A or Close B custody; designated a Condemned inmate; assigned to a reception center; assigned to a administrative segregation unit; assigned to a security housing unit; designated "C" status; guilty of one or more Division A or Division B offense(s) within the last 12 months; or guilty of narcotics distribution while incarcerated in a state prison. Based on the aforementioned this reviewer finds that the appellant's claim does not coincide with the facts represented in the central file and or the CCR. The compelling evidence and convincing argument presented has established that the appellant is not eligible to participate in the Family Visiting Program.

According to the documentation in the appellant's central file committee has adequately accommodated him in the decision reached. The complication of circumstances combined with the verifying documentation indicates that all appropriate policies and procedures, with regards to the denial of appellant's participation in the Family Visiting Program were followed. Upon review of the documentation submitted, it is determined that the appellant's allegations have been thoroughly reviewed and evaluated at the First Level of Review. The documentation and arguments presented are persuasive that the appellant failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the First Level Response. The lack of sufficient facts, reference and evidence, demonstrates that the appellant has not supported his complaint that he is eligible for Family Visiting. Based on the submitted documentation, by both the appellant and first level reviewer, as well as discussions, this reviewer finds that the appellant's issues have been duly addressed The Second Level Response and the decision reached are based upon a reasonable penological interest. Therefore, based on the information received and reviewed the appellant's appeal is denied

## DECISION:

The appeal is denied. Based on the submitted documentation, as well as the interviews conducted with staff, this reviewer does not find that the appellant's allegations have any merit. The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

ROBERT L. AYERS, Jr., WARDEN (A)
California State Prison, San Quentin

E X H I B I T   ' C '

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:   JAN 1 2 2007

In re:   Taylor, H-14836
California State Prison, San Quentin
San Quentin, CA 94964

IAB Case No.: 0605104          Local Log No.: SQ 06-1923

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Pearson, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I   **APPELLANT'S ARGUMENT:** It is the appellant's position that he objects to the toilets not being able to flush frequently. The appellant is requesting to have the toilet fixed so it will flush whenever needed.

II   **SECOND LEVEL'S DECISION:** The reviewer found that all toilets in cells are being put on timers to address inmate cell flooding and water conservation. Due to water conservation mandates from the water district, the flush valves were changed and will not be altered. The flush valve does not prohibit the appellant from flushing his toilet.

III   **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A.   **FINDINGS:** Water conservation efforts include the need to reduce the frequency of flushing toilets. Often inmate toilets are being flushed repeatedly for reasons other than for the removal of bodily fluids, such as to flood cells. Therefore, in the interest to water conservation and to limit inmate misconduct, inmate toilets have been modified to prevent multiple flushes in rapid succession. There is no evidence that the modification is having an adverse effect upon the appellant as his toilet is usable and will flush.

B.   **BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section 3380

C.   **ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, SQ
      Appeals Coordinator, SQ

STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region _____    Log No. _____    Category _____

1. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|

A. Describe Problem: ON OR ABOUT JUNE 19, 2006, THE SAN QUENTIN ADMINISTRATION INSTALLED DEVICES THAT NOT ONLY EXTREMELY LIMIT THE AMOUNT OF FLUSHES THAT INMATES ARE ALLOWED ON OUR TOILETS; (4 FLUSHES PER HOUR) THIS DEVICE ALSO ONLY ALLOWS A THREE-SECOND FLUSH, WHICH IS NEVER A CLEAN FLUSH. IT IS MY CONTENTION THAT THE SAN QUENTIN ADMINISTRATION IS GUILTY OF CRUEL AND INHUMANE TREATMENT, BASED ON THE INSTALLATION OF THIS DEVICE; WHICH IS CLEARLY IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION. ADDITIONALLY, THE INSTALLATION OF THIS DEVICE IS A DANGER TO THE SAFETY AND SECURITY OF THE INSTITUTION, BECAUSE

If you need more space, attach one additional sheet.

(SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested: I AM REQUESTING THAT THE AFOREMENTIONED 'DEVICE' BE REMOVED FROM MY TOILET, IMMEDIATELY; AS IT IS ADVERSELY AFFECTING MY WELFARE AND SERVES NO LEGITIMATE PENOLOGICAL INTEREST. I AM ALSO REQUESTING THAT I NOT BE SUBJECTED TO THE CUSTOMARY SAN QUENTIN RETALIATION THAT FOLLOWS THESE APPEALS.

Inmate/Parolee Signature: _____    Date Submitted: 6-27-06

JUL 05 REC'D

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: Denied: Due to water conservation measures requested by Marin Municipal Water District these flush valves were installed to reduced water consumption. the valves will not be removed or altered.

Staff Signature: _____    Date Returned to Inmate: 7/18/06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE BECAUSE IT IS RIDICULOUS. THE MARIN MUNICIPAL WATER DISTRICT IS NOT CONCERNED WITH PRISONER'S HEALTH. MOST LIKELY, THERE IS MONEY INVOLVED FOR THE INSTITUTION, BY SACRIFICING OUR HEALTH. I AM REQUESTING REVIEW AT THE FORMAL LEVEL.

Signature: _____    Date Submitted: 7-18-06

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

JUL 2 0 REC'D

SUPPLEMENTAL PAGE

SAID DEVICE IS GUARANTEED TO CREATE NUMEROUS ALTERCATIONS WITHIN THE HOUSING

UNIT. FOR EXAMPLE; ALMOST HALF OF NORTH BLOCK ARE MENTAL PATIENTS, WHO WILL

TOTALLY DISREGARD THE FACT THAT IF THEY FLUSH THE TOILET FOUR TIMES, THAT THE

OTHER OCCUPANT OF THE CELL WILL HAVE TO WAIT AN HOUR, BEFORE BEING ABLE TO

FLUSH THE TOILET AGAIN; WHICH IN TURN WILL CREATE A HOSTILE LIVING SITUATION.

FIRST OF ALL; TWO ZOO ANIMALS THE SIZE OF TWO AVERAGE MEN, WOULD NOT BE

KEPT IN A CAGE AS SMALL AS THE CELLS IN NORTH BLOCK. NOW, IN ADDITION TO THAT

DEGRADATION, THE ADMINISTRATION; EVEN THOUGH ADDING THE WORD "REHABILITATION"

TO THE TITLE OF THEIR ORGANIZATION; HAS CHOSEN TO FURTHER PUNISH PROGRAMMING

PRISONERS BY LIMITING THE AMOUNT OF FLUSHES OF THE TOILETS TO FOUR PER HOUR

WITH A THREE-SECOND DURATION TO SAID FLUSH; WHICH IS NEVER A CLEAN FLUSH," THE

FACT THAT THE TOILET ONLY FLUSHES FOR THREE SECONDS NOW ALSO CREATES AND ADDS

TO THE ALREADY NUMEROUS HEALTH PROBLEMS WHICH PLAGUE SAN QUENTIN AND WILL BE

ANOTHER FACTOR IN RISING HEALTH COSTS, BECAUSE CONSTANT EXPOSURE TO DEFECATION

AS WELL AS URINE, SPIT, VOMIT, BLOOD, SPERM AND NUMEROUS OTHER WASTE PRODUCT

IS DEFINITELY DETRIMENTAL TO THE HEALTH OF ANY HUMAN. THE ADMINISTRATION HAS

OBVIOUSLY FORGOTTEN THAT PRISONERS AT SAN QUENTIN ARE STILL HUMAN.

IT IS ALSO A FACT THAT RECEPTION CENTER INMATES, WHO ARE TRANSIENT AND

SIMPLY (REGULARLY) PASSING THROUGH SAN QUENTIN, ARE N.O.T. BEING SUBJECTED TO

THIS DEVICE, WHILE THE PROGRAMMING LIFERS AS WELL AS THE REST OF THE MAINLINE

PRISONERS OF NORTH BLOCK ARE BEING PUNISHED WITH THIS DEVICE.

THE FACT THAT THE TOILETS IN NORTH BLOCK NOW ONLY FLUSH FOR THREE SEC-

ONDS, MEANS THAT AFTER OUR ALLOTED FOUR FLUSHES, WE HAVE TO INGEST/INHALE WHAT

EVER RESIDUE OF WASTE PRODUCT IS LEFT IN THE TOILET FOR AT LEAST AN HOUR. I

AM SURE THAT O.S.H.A. LAWS ARE BEING VIOLATED AND I AM IN THE PROCESS OF

ACQUIRING THAT INFORMATION, FOR JUDICIAL PURPOSES.

(side 11)

see reverse side

EXHIBIT 'D'

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. SQ | 1. 07·00250 | 4 |
| 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| TAYLOR  RONALD | H-14836 | DONNER SECTION CLERK | 3-N-5-L |

A. Describe Problem: PLEASE LOG THIS APPEAL AS A CITIZEN'S COMPLAINT, PURSUANT TO THE
CALIFORNIA PENAL CODE, SECTIONS: 832.5 - 832.8, AGAINST THE SAN QUENTIN VISI-
TING PROCESSING STAFF WHO DISRESPECTED ME AND MY FAMILY ON DECEMBER 2, 2006;
IN AN ACT OF RETALIATION AGAINST ME, FOR MY PRIOR RESPONSIBLE USE OF THE AP-
PEALS PROCEDURE; IN DIRECT VIOLATION OF SECTIONS: 3004, 3170, 3084 & 3391 OF
THE CALIFORNIA CODE OF REGULATIONS - TITLE 15.

        SECTION 3170 OF THE DIRECTOR'S RULES MAKE IT CLEAR THAT VISITING IS TO
BE A MEANS OF "MAINTAINING FAMILY CONNECTIONS"...AND THAT THIS SHOULD BE ACCOM-
If you need more space, attach one additional sheet.              (SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested: I AM REQUESTING TO KNOW THE NAME OF THE INDIVIDUAL THAT TOLD MY
NIECE TO TAKE OFF HER BRA AND WHO SENT OFFICER TYNES INTO THE VISITING ROOM TO
INTERUPT OUR VISIT AND PUT MY NIECE OUT, FOR NOT HAVING ON A BRA; SO THAT WE
CAN PURSUE LEGAL ACTION AGAINST THIS INDIVIDUAL.

Inmate/Parolee Signature: Ronald E. Taylor                          Date Submitted: 12-6-06

C. INFORMAL LEVEL (Date Received: 12-20-06 )

DEC 1 1 REC'D

Staff Response: SEE ATTACHED by J.D Tynes
DATED 1/6/07

TYNES

Staff Signature: J.E. Tynes C/O                          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

THE INFORMAL RESPONSE IS INCOMPLETE AND INACCURATE. THEREFORE, FOR THOSE
REASONS, I AM DISSATISFIED AND AM HEREBY REQUESTING REVIEW AT THE FORMAL
LEVEL.

Signature: Ronald C. Taylor                          Date Submitted: 1-10-07

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim                          CDC Appeal Number:

JAN 1 7 REC'D

First Level    ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____

**JUL 20 2006**

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: **AUG 31 2006**

Interviewed by: Denied: Due to water conservation measures requested by Marin Municipal Water District these flush valves were installed to reduce water consumption. The valves will not be removed or altered. Additionally it is the intention of the department to install these devices throughout all facilities in the state.    Inmate was interviewed on 8/01/2006.

Staff Signature: _____    Title: CPS    Date Completed: 7/24/06

Division Head Approved: _____

Signature: _____    Title: AW **AUG 11**    Returned REC'D to Inmate: 8/10/06

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

I AM DISSATISFIED WITH THE ABOVE RESPONSE BECAUSE IT IS BOGUS. I KNOW FROM EXPERIENCE THAT EVERY TIME A PRISON ADMINISTRATION THINKS OF A WAY TO TRAMPLE IT'S RESIDENT CONVICTS; THEY CLAIM IT IS BEING DONE STATEWIDE. I HEREBY RE-QUEST REVIEW AT THE SECOND LEVEL.

Signature: Ronald E. Taylor    **AUG 17 REC'D**    Date Submitted: 8-14-06

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

**AUG 17 2006**

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: **SEP 15 2006**

☐ See Attached Letter

Signature: _____    Date Completed: 10/18/06

Warden/Superintendent Signature: _____    Date Returned to Inmate: **OCT 19 REC'D**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response:

SAN QUENTIN STAFF'S LUDICROUS RESPONSE DOES NOT EXPLAIN WHY ONLY PROGRAMMING LIFERS ARE BEING PUUNISHED WITH THESE RESTRICTIONS, WHILE 3000 RECEPTION CENTER INMATES AND 500 P.C. INMATES HAVE UNLIMITED WATER FLOW. THEREFORE, I AM DISSAT-ISFIED WITH THE BOGUS RESPONSE AND REQUESTING REVIEW AT THE DIRECTOR'S LEVEL.

EAST BLOCK AND THE A.C. ARE RESTRICTED, BUT THEY ARE SINGLE CELLED, SO IT DOES NOT MATTER TO THEM. MAINLINERS DO NOT FLOOD THE TIERS OR WASTE WATER.

Signature: Ronald C. Taylor    Date Submitted: 10-24-06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____
☐ See Attached Letter

Date: **JAN 12 2007**

CDC 602 (12/87)

## SUPPLEMENTAL PAGE #1

PLISHED "IN AS ACCOMMODATING A MANNER AS POSSIBLE". THIS REGULATION WAS
CALLOUSLY AND CAPRICIOUSLY VIOLATED, IN AN ACT OF UNLAWFUL RETALIATION.

AT APPROXIMATELY 11:00 A.M., MY NIECE ARRIVED TO VISIT ME, WITH HER
FATHER (MY BROTHER) AND A FRIEND OF THE FAMILY. (MY NIECE'S FIANCE)

UPON ARRIVAL TO THE VISITOR PROCESSING CENTER, MY NIECE WAS TOLD THAT
SINCE SHE WAS WEARING A BRA WITH AN UNDER-WIRE IN IT, THAT SHE WOULD HAVE TO
"TAKE THE BRA OFF". SHE IMMEDIATELY COMPLIED AND DISCREETLY REMOVED THE BRA.
SHE DID NOT THINK THAT IT WOULD BE A PROBLEM BECAUSE SHE WAS WEARING A THICK
BLACK WOOL TURTLENECK SWEATER AND A BLACK LEATHER COAT, WHICH WAS ZIPPED UP.

AFTER REMOVING HER BRA, SHE CARRIED IT IN HER HAND THROUGH THE CHECK
POINT. HOWEVER, WHEN SHE ARRIVED AT THE SECOND GATE, OFFICER S. MALONE HASAN
TOLD HER THAT SHE COULD NOT CARRY HER BRA IN HER HAND INTO THE VISITING ROOM,
SO MY NIECE GAVE IT TO OFFICER HASAN, WHO PUT IT IN A BAG TO HOLD FOR MY NIECE
UNTIL OUR VISIT WAS COMPLETE.

AFTER GREETING MY NIECE, MY BROTHER AND OUR FRIEND, THEY WERE ALL SEATED
FOR A FEW MINUTES, THEN WE WENT AND TOOK PHOTOGRAPHS TOGETHER. (MY WIFE, MY
NIECE AND MYSELF, ALL HAVE THE PHOTOS; PLUS THERE WERE AT LEAST FIFTY WITNESSES
OF THE FACT THAT WE TOOK PHOTOS AND THAT MY NIECE HAD ON A THICK BLACK TURTLE-
NECK SWEATER, UNDER A ZIPPED UP BLACK LEATHER COAT.)

AFTER WE TOOK THE PHOTOGRAPHS AND RETURNED TO OUR SEATS AND BEGAN DE-
CIDING WHAT WE WERE GOING TO PURCHASE FROM THE VENDING MACHINES, OFFICER TYNES
WALKED IN, APPROACHED MY NIECE AND TOLD HER THAT SHE HAD TO LEAVE, BECAUSE SHE
WAS NOT WEARING A BRA.

ALL OF THE ABOVE TOOK PLACE OVER A PERIOD OF APPROXIMATELY THIRTY (30)
MINUTES.

C.C.R. SECTION 3004 WAS CLEARLY VIOLATED IN THAT MY NIECE WAS HURT,
HUMILIATED AND BLATANTLY DISRESPECTED; WHICH IN TURN HURT ME AND THE REST OF
MY VISITORS. WHEN I SAY "HURT ME", I MEAN THAT I WAS ADVERSELY AFFECTED TO
THE POINT THAT IT WAS EXTREMELY DIFFICULT TO ENJOY THE REMAINDER OF MY ANNI-
VERSARY CELEBRATION; WHICH I HAVE NO DOUBT WAS THE PURPOSE OF THE DISRESPECT
AND TOTAL UNPROFESSIONALISM. (CCR§3391) MY WIFE AND MY MOTHER WERE ALSO COM-
PLETELY UPSET, DUE TO STAFF'S BLATANT VIOLATIONS OF THE TITLE 15.

(see reverse side)

CONTINUATION OF SUPPLEMENTAL PAGE

AN INMATE DOES NOT HAVE TO BE A MENTAL PATIENT TO FORGET THAT WE ARE
NOW BEING PUNISHED BY BEING ALLOWED ONLY FOUR FLUSHES PER HOUR ON OUR TOILETS.
LIFERS, WHO HAVE BEEN AN ASSET TO SAN QUENTIN FOR YEARS; WHO HAVE BEEN SERVING
THE SAN QUENTIN ADMINISTRATION AND PROGRAMMING POSITIVELY FOR YEARS; HAVE A
LOT ON THEIR MINDS ALREADY. NOW WE HAVE TO TRY TO REMEMBER HOW MANY TIMES WE
FLUSH THE TOILET, SO THAT THE OTHER OCCUPANT OF THE CELL CAN USE THE TOILET.
THAT IS EXTREMELY DIFFICULT AT 4:45 A.M., JUST WAKING UP, IF MY CELLEE AND I
BOTH HAVE TO GO TO JOB ASSIGNMENTS IN P.I.A., BETWEEN 5 AND 5:30 A.M. ALREADY
HALF ASLEEP.

IT IS EXTREMELY DISRESPECTFUL AND DISCOURTEOUS FOR THE SAN QUENTIN AD-
MINISTRATION TO SUBJECT PROGRAMMING PRISONERS TO SUCH DEGRADATION; IN DIRECT
VIOLATION OF THE CALIFORNIA CODE OF REGULATIONS-TITLE 15, SECTIONS: 3004 & 339
IT IS BAD ENOUGH THAT WE ARE HOUSED IN CELLS THAT WERE BUILT TO HOUSE ONE MAN;
WHILE WE ARE DOUBLE-CELLED. THEN THE ADMINISTRATION TOOK THE FOOTLOCKERS, THE
WEIGHTS, LIFERS OVERNIGHT FAMILY VISITS, OUR CARE PACKAGES FROM HOME, CIGAR-
ETTES WERE OUTLAWED ONLY AFTER THE ADMINISTRATION GOT MANY OF US HOOKED ON THE
THEN MADE MILLIONS OFF OF US, SELLING THEM TO US. WE CAN'T EVEN CALL HOME ANY
MORE, IF OUR FAMILY DOES NOT HAVE A CONNECTION WITH M.C.I., SO THE SAN QUENTIN
ADMINISTRATION CAN GET A KICKBACK ON THE EXORBITANT PRICES M.C.I. CHARGES OUR
LOVED ONES.

NOW, THE SAN QUENTIN ADMINISTRATION DOES NOT EVEN WANT TO ALLOW US TO
TAKE A DECENT DUMP. WHAT'S NEXT? ELIMINATING SHOWERS AND FOOD?

(END OF STATEMENTS AS OF 6-26-06)

First Level    [☑] Granted    [X] P. Granted    [ ] Denied    [ ] Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __JAN 1 7 2007__    Due Date: **MAR 0 2 2007**

Interviewed by: _See Attached by Lt Cramer_

_____

_____

_____

_____

_____

Staff Signature: _____    Title: _Lt_    Date Completed: _2/26/07_

Division Head Approved:

Signature: _____    Title: _NW-CS_ MAR 0 5 REC'D    Returned to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

CONTRARY TO CRAMER'S ERRONEOUS ASSERTION THAT NO OTHER APPEALS HAVE BEEN FILED, I HAVE ATT-
ACHED SUPPORTING DOCUMENTATION TO PROVE OTHERWISE. IT SHOULD ALSO BE NOTED THAT THE MAILROOM
IS ALSO UNDER CRAMER; THEREFORE, SOME DOCUMENTATION HAS SPURIOUSLY DISAPPEARED. BASED ON THE
FOREGOING, I AM DISSATISFIED WITH CRAMER'S BOGUS BOILER-PLATE RESPONSE AND I HEREBY REQUEST
2nd-LEVEL REVIEW.

Signature: _Ronald E. Taylor_    MAR 1 5 REC'D    Date Submitted: _3-9-07_

Second Level    [ ] Granted    [☑] P. Granted    [ ] Denied    [ ] Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **MAR 1 5 2007**    Due Date: **APR 1 2 2007**

[ ] See Attached Letter

Signature: _____    Date Completed: _4-24-07_

Warden/Superintendent Signature: _____    APR 2 6 REC'D    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I AM DISSATISFIED WITH THE FACT THAT THERE WAS NO 2nd-LEVEL REVIEW AND THE
FACT THAT INSTITUTION POLITICS PRECLUDE JUSTICE. THEREFORE, I AM REQUESTING A
DIRECTOR'S LEVEL REVIEW, SOLELY FOR THE PURPOSE OF EXHAUSTION, FOR JUDICIAL
PRE-REQUISITE.

Signature: _Ronald E. Taylor_    Date Submitted: _4-28-07_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DIRECTOR'S ACTION: [ ] Granted    [ ] P. Granted    [☑] Denied    [ ] Other _____

[☑] See Attached Letter

Date: **SEP 0 6 2007**

CDC 602 (12/87)

(SUPPLEMENTAL PAGE, CONTINUED)

IF THE STAFF INVOLVED IN PROCESSING VISITORS INTO SAN QUENTIN WERE "ALERT, COURTEOUS AND PROFESSIONAL", AS IS MANDATED BY THE CALIFORNIA CODE OF REGULATIONS, SECTION 3391, THEY WOULD HAVE TOLD MY NIECE; BEFORE THEY LET HER BEGIN OUR VISIT; THAT SHE HAD AN OPTION OF REMOVING THE UNDER-WIRE FROM HER BRA, OR GOING TO THE FRIENDSHIP HOUSE AND WEARING A SUBSTITUTE, APPROVED BRA, FOR PURPOSES OF THE VISIT. MY NIECE HAD NO WAY OF KNOWING THE ABOVE, BECAUSE SHE HAS ONLY VISITED ME THREE TIMES IN SIX YEARS; AND PRIOR TO DECEMBER 2nd 2006, SHE HAD NO PROBLEMS WITH THE VISITING PROCEDURES.

THE SO-CALLED "PROFESSIONALS" CREATED THE PROBLEMS; EITHER THROUGH SERIOUS INCOMPETENCE OR IN RETALIATION FOR MY PRIOR USE OF THE APPEALS PRO-CEDURES. WHICH ONE WAS IT?

IF THE STAFF INVOLVED IN PROCESSING VISITORS INTO SAN QUENTIN ON DECEMBER 2nd 2006, WERE ATTEMPTING TO FACILITATE "MAINTAINING FAMILY CONNEC-TIONS" AND CONDUCTING THEMSELVES AND THE SITUATION "IN AS ACCOMMODATING A MANNER AS POSSIBLE", AS IS MANDATED BY SECTION 3170, OF THE CALIFORNIA CODE OF REGULATIONS; THEY WOULD HAVE TAKEN INTO CONSIDERATION THE FACT THAT, UNDER-WEAR MUST BE WORN BY FEMALE VISITORS IN ORDER TO DECREASE THE CHANCES OF IM-PROPRIETIES (SEXUAL) WITH INMATES; AND THE FACT THAT SHE WAS WITH HER FATHER AND HER FIANCE; COMING TO VISIT HER UNCLE; AND SINCE SHE HAD ON A THICK, BLACK WOOL SWEATER AS WELL AS A ZIPPED UP LEATHER COAT; THAT NO SUCH IMPROPRIETIES WOULD EVEN BE ENTERTAINED; AND SINCE SHE WAS ALREADY ALLOWED INTO THE VISITING ROOM AND HAD BEEN SEATED AND HAD PHOTOS TAKEN; COURTEOUS "PROFESSIONALISM" WOULD DICTATE THAT SHE BE ALLOWED TO STAY FOR THE REMAINDER OF THE VISIT; DE-SPITE THE FACT THAT SHE WAS NOT WEARING A BRA, DUE TO THE FACT THAT SHE FOLLOWED AN ORDER FROM STAFF, TO REMOVE IT IN THE FIRST PLACE!

FINALLY, AFTER ALL OF THE AFOREMENTIONED DISRESPECT AND UNPROFESSIONAL-ISM BY THE VISITOR PROCESSING STAFF, LT. CRAMER HAD THE AUDACITY TO TELL MY BROTHER THAT HE IS BARRED FROM VISITING ANYMORE. FIRST OF ALL, LT. CRAMER DOES NOT HAVE THE AUTHORITY TO SUPERCEDE THE D.O.M. AND/OR THE CALIFORNIA CODE OF REGULATIONS-TITLE 15.

MY BROTHER WAS RIGHTFULLY UPSET AND TOLD ONE OF THE OFFICERS INVOLVED THAT SHE WAS "STUPID". TO DO SO, DOES NOT FIT THE CRITERIA SET FORTH IN THE DIRECTOR'S RULES; CCR §3176. & 3176.1, FOR "DENIAL, RESTRICTION, SUSPENSION, TERMINATION, REVOCATIONS AND EXCLUSION OF A PERSON"; NOR THE "VISITOR VIOLA-TION PROCESS". THEREFORE, LT. CRAMER ACTED IN ERROR.

(END OF STATEMENTS, AS OF 12-6-06)    R. Taylor #H-14831

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:     SEP 0 6 2007

In re:    Taylor, H-14836
          California State Prison, San Quentin
          San Quentin, CA 94964

          IAB Case No.: 0614651          Local Log No.: SQ 07-00250

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner S. Hemenway, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that he and his family were humiliated when California State Prison, San Quentin (SQ) visiting staff terminated the appellant's niece's visit, as she was not wearing a bra, in the visiting room. The appellant is requesting to know the name of the individual who told his niece to take off her bra, and, who sent Officer Tynes into the visiting room to terminate her visit so that legal action can be taken against this individual.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant's niece, Ms Taylor, was informed that she could not clear the metal detector, because she was wearing a metal under wire bra. Staff suggested that she go to the visitor's center and change. Upon reaching the "Scope" Gate, Ms Taylor failed to clear the metal detector and handed Officer Hasan the under wire bra she was holding in her hand. Officer Hasan had possession of the bra and contacted visiting staff to inform them that Ms Taylor may not be not wearing a bra. Correctional Sergeant T. Amrhein-Conama instructed Officer Tynes to verify the information. Ms Taylor admitted to Officer Tynes that she was not wearing a bra, and due to non-compliance of the dress code, her visit was terminated.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

    **A.   FINDINGS:** Director's Level of Review (DLR) agrees with the Second Level of Review. Inmates are informed of the visiting rules and policies upon an inmate's reception into the institution. This information is given, to also share with potential visitors, to avoid embarrassment, problems and for adherence to all laws and procedures, in keeping with the safety and security of all institutions and facilities. All institutions and facilities have the visiting criteria posted in the visiting centers pursuant to California Code of Regulations, Title 15, Section (CCR) 3170, 3171, 3173.2, 3174, 3176 and 3179 in order to avoid problems and confusion. The appellant did file two visiting appeals in 2001 and one visiting appeal in March, 2006. DLR reviewed the 2006 appeal, only, as the 2001 appeals have been destroyed pursuant to applicable laws. Ms Taylor was given a choice to change her brazier at the visitor's center, in order to remain in compliance with CCR 3174. When asked, Ms Taylor admitted to Officer Tynes that she was not wearing a bra, therefore not in compliance with the visiting rules. It appears, because of her actions, she caused a disruption in the visiting area. The appellant's brother became upset, because of Ms Taylor's visiting termination, and subsequently had to be placed on visiting restriction. The SQ visiting staff acted appropriately, enforcing the visiting policies and procedures. DLR finds no malicious intent regarding neither visiting staff's actions nor retaliation for filing a previous visitation appeal.

    **B.   BASIS FOR THE DECISION:**
    CCR: 3170, 3170.1, 3171, 3172.1, 3173, 3174

    **C.   ORDER:** No changes or modifications are required by the institution.

TAYLOR, H-14836
CASE NO. 0614651
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, SQ
       Appeals Coordinator, SQ

E X H I B I T   ' E '

STATE OF CALIFORNIA                                                              DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region      Log No.        Category
1. _____30_____         1. 07-00713        2
2. _____         2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| TAYLOR | H-14836 | DONNER SECTION CLERK | 3-N-5-L |

A. Describe Problem:  ON JANUARY 30, 2007, AFTER ATTENDING MY ANNUAL REVIEW, I RE-
CEIVED MY "CDC RECLASSIFICATION SCORE SHEET". (ATTACHED) UNDER "G."PLACEMENT;
FOR THE FIRST TIME SINCE MY INCARCERATION, I GOT AN "F" NEXT TO MY "SCORE
FACTOR CODE". THIS IS A MISTAKE. IT SHOULD HAVE BEEN A "C", BECAUSE I AM A
LIFE INMATE. THE "F" MAKES IT APPEAR TO ANYONE WHO SEES IT; ESPECIALLY THE
BOARD OF PRISON TERMS; THAT I AM EXCLUDED FROM PLACEMENT IN A LOWER LEVEL
FACILITY BECAUSE I AM VIOLENT. THE FACT IS, I AM NOT VIOLENT, REGARDLESS OF
THE FACT THAT I WAS CONVICTED OF A VIOLENT CRIME. EXPERIENCE HAS SHOWN ME...
(SEE ATTACHED SUPPLEMENTAL PAGE & SUPPORTING DOCUMENTATION)
If you need more space, attach one additional sheet.

B. Action Requested:  I AM REQUESTING TO HAVE MY "SCORE FACTOR CODE CHANGED TO "C",
SO AS TO REMOVE THE EXTRA NEGATIVE IMPACT. OR; IN THE ALTERNATIVE, THAT I
RECEIVE THE "H" SCORE FACTOR CODE THAT I HAVE ALWAYS RECEIVED.

Inmate/Parolee Signature: _Ronald E. Taylor_        FEB 2 2 REC'D   Date Submitted: 2-14-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

## Bypass

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

## Bypass

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed        CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim



First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

# Bypass

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved: _____ Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

# Bypass

Signature: _____ Date Submitted: _____

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **FEB 2 2 2007** Due Date: **APR 0 5 2007**
☐ See Attached Letter

Signature: _Chandler Dacunay_ Date Completed: _4-23-7_
Warden/Superintendent Signature: _____ APR 2 5 REC'T Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I AM DISSATISFIED BECAUSE STAFF'S BOGUS RESPONSE IS LUDICROUS. I AM THEREFORE
REQUESTING REVIEW AT THE DIRECTOR'S LEVEL; AS EXHAUSTION OF ADMINISTRATIVE
REMEDIES IS REQUIRED BEFORE A JUDICIAL REVIEW.
IT IS BLATANTLY OBVIOUS THAT NO LEGITIMATE PENOLOGICAL INTEREST IS BEING
SERVED, BY SAN QUENTIN STAFF, WITH THIS SUDDEN CHANGE TO SUCH PREJUDICIALLY UN-
WARRANTED VERBIAGE/DESIGNATION.

Signature: _Ronald E. Taylor_ Date Submitted: _4-29-07_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____
☐ See Attached Letter
Date: **SEP 2 7 2007**

<u>SUPPLEMENTAL PAGE #1</u>

THAT THE BOARD OF PRISON TERMS NOT ONLY USES BUT MAGNIFIES AND EXPOUNDS UPON
ANY NEGATIVITY AS AN AGGRAVATING CIRCUMSTANCE TO JUSTIFY A FINDING OF UN-
SUITABILITY FOR PAROLE.

EVEN A "SCORE FACTOR CODE OF "H" IS LESS NEGATIVE THAN THE "F".
IN FACT, AN "H" IS WHAT HAS PREVIOUSLY BEEN USED AS MY "SCORE FACTOR CODE".

I HAVE <u>NEVER</u> RECEIVED AN "F" AS A "SCORE FACTOR CODE. THEREFORE I
CANNOT SEE ANY HARM TO <u>C.D.C.R.</u>, IF MY "SCORE FACTOR CODE" IS CHANGED TO
THE LESS NEGATIVE "C" OR "H".

I CAN DEFINITELY FORESEE THE BOARD OF PRISON TERMS SEIZING UPON THE
"F" "SCORE FACTOR CODE" AS <u>EXTRA</u> <u>NEGATIVITY</u>; AND THE FACT THAT I WAS CON-
VICTED OF 2nd DEGREE MURDER IS NEGATIVE ENOUGH.

I HAVE ATTACHED MY SCORE SHEET FROM 3-10-05, AS PROOF OF THE FACT
THAT I HAVE PREVIOUSLY RECEIVED AN "H". ALSO FROM 2-5-03. A_ L_ W_ A_ Y_ S_ !_

I SPOKE TO MY CURRENT COUNSELOR ABOUT THE <u>EXTRA</u> <u>NEGATIVE</u> CONNOTATION
THAT THE "F" WILL CONVEY. SHE TOLD ME THAT ALL SAN QUENTIN CC1's RECENTLY
HAD A CLASS ON THE SUBJECT AND THAT THEY WERE ADVISED TO PLACE AN "F" ON
ALL LIFERS SCORE SHEETS, FROM HERE ON AFTER. HOWEVER, THERE IS NO DOUBT
IN MY MIND THAT THE BOARD OF PRISON TERMS WILL USE IT AGAINST ME AND IF
I DO NOT ADDRESS IT NOW, I AM SURE THAT I WILL HAVE TO ADDRESS IT IN MY
FUTURE APPEAL OF THE BOARD'S DECISION TO FIND ME UNSUITABLE; IF IN FACT
THEY SO FIND.

I AM ALSO SURE THAT THE POWERS THAT BE, IN SAN QUENTIN ARE WELL
AWARE OF THE <u>EXTRA</u> <u>NEGATIVE</u> <u>IMPACT</u> THAT THE "F" WILL HAVE ON ME AT MY
NEXT AND/OR FUTURE BOARD APPEARANCE(S).

THE POWERS THAT BE, IN SAN QUENTIN, ARE VERY CRAFTY AND I KNOW THAT
EVERYTHING THEY DO IS FOR A REASON. USUALLY, THE REASON RESULTS IN AN
ADVERSE IMPACT FOR A CONVICT.

(END OF STATEMENTS, AS OF 2-14-07)

# CDC RECLASSIFICATION SCORE SHEET

**4. DATE OF LAST SCORE SHEET**

| MO | DAY | YR | |
|----|-----|----|----|
| 12 | 28 | 06 | 18 |

**5. FORM IDENTIFICATION (ENTER X in a, b or c)**

a) NEW   b) CORRECTION   DATE CORRECTED   c) DELETE

| | MO | DAY | YR | |
|---|----|-----|----|----|
| X 24 | 25 | | 26 | 32 |

## B. ANNUAL/6 MONTH REVIEW PERIOD DATES

**1. REVIEW PERIOD BEGINNING DATE**

| MO | DAY | YR | 3. (Enter X) Annual |
|----|-----|----|----|
| | 1 | 06 | 7 39 |

**2. REVIEW PERIOD ENDING DATE**

| MO | DAY | YR | |
|----|-----|----|----|
| 1 | 31 | 07 | 40 |

4. Number of Full Review Periods

## E. CORRECTION TO CDC 840 SCORE SHEET (Prior to Rev. 07/02)

1. Use this section to correct a CDC 840 score sheet with a form revision date prior to 07/02.   TOTAL CORRECTION = (+ OR -) | | 70

## F. COMPUTATION OF SCORE

1. PRIOR PRELIMINARY SCORE (Preliminary Score from 839/New Preliminary Score from 840 or 841) = | 0 | 73

2. Net Change in Score (D. 8 minus C. 4) = (+ or -) | − | 58 | 76

3. PRELIMINARY SCORE SUBTOTAL (Not less than 0) = | 0 |

## C. FAVORABLE BEHAVIOR SINCE LAST REVIEW

| 1. Continuous Minimum Custody | x 4 = | | 46 |
| 2. No Serious Disciplinary | 2 x 2 = | 4 | 48 |
| 3. Average or Above Performance in Work, School or Vocational Program | 2 x 2 = | 4 | 50 |
| 4. TOTAL FAVORABLE POINTS | | 8 | |

4. Change in Term Points (T/P) (x 2) - Old T/P ____ + New T/P ____ = (+ or -) | | 79

5. NEW PRELIMINARY SCORE (Not less than 0) = | 0 | 82

## G. PLACEMENT

**MANDATORY MINIMUM SCORE FACTOR CODES AND SCORES**

| CODE | SCORE | CODE | SCORE |
|------|-------|------|-------|
| [A] Condemned | 52 | [E] Warrants "R" Suffix | 19 |
| [B] Life Without Possibility of Parole | 52 | [F] Violence Exclusion | 19 |
| [C] CCR 3375.2(a)(7) Life Inmate | 28 | [G] Public Interest Case | 19 |
| [D] History of Escape | 19 | [H] Other Life Sentence | 19 |

1. SCORE FACTOR CODE (Assess Only Highest Factor) | F | 85

2. MANDATORY MINIMUM SCORE | 1 | 9 | 86

3. PLACEMENT SCORE ENTER NEW PRELIMINARY SCORE OR MANDATORY MINIMUM SCORE WHICHEVER IS GREATER | 1 | 9 | 88

## D. UNFAVORABLE BEHAVIOR SINCE LAST REVIEW

| SERIOUS DISCIPLINARIES | Number of | | |
|------------------------|-----------|---|----|
| 1. Div. A-1/A-2  Dates: | x 8 = | | 52 |
| Div. B, C & D  Dates: | x 6 = | | 54 |
| Div. E & F  Dates: | x 4 = | | 56 |
| 2. Battery or Attempted Battery on a Non-Prisoner  Dates: | x 8 = | | 58 |
| 3. Battery or Attempted Battery on an Inmate  Dates: | x 4 = | | 60 |
| 4. Distribution of Drugs  Dates: | x 4 = | | 62 |
| 5. Possession of a Deadly Weapon  Dates: | x 16 = | | 64 |
| 6. Inciting a Disturbance  Dates: | x 4 = | | 66 |
| 7. Battery Causing Serious Injury  Dates: | x 16 = | | 68 |
| 8. TOTAL UNFAVORABLE POINTS = | | | |

## H. SPECIAL CASE FACTORS

1. HOLDS, WANTS and DETAINERS (Enter A, P or *)

| Felony | 91 | USINS | 92 |

2. RESTRICTED CUSTODY SUFFIX (Enter R or *) | | 93

3. ELIGIBLE FOR RESTITUTION CENTER (Enter Y or N) | | 94

4. LEVEL IV DESIGN a) 180 Status (Y/N) | | b) Reason Code | | 95

5. US ARMED FORCES (Enter Y or N) | | 95

6. CURRENT INSTITUTION AND FACILITY | C | C | | | | | 96

7. COUNTY OF LAST LEGAL RESIDENCE | | 103

8. CASEWORKER'S NAME | Z | A | N | N | I | | F | V | | 106

## I. CLASSIFICATION STAFF REPRESENTATIVE

1. LAST NAME | | | | | | | 115

2. DATE OF ACTION | − | − | 123

| MO | DAY | YR |

3. LEVEL IV DESIGN a) 180 Status (Enter Y or *) | 129 | b) Reason Code | 130

4. MINIMUM CUSTODY a) Eligibility (Enter E, L or P) | 132 | b) Reason Code | 133

5. CCRC ELIGIBILITY (Enter REN, REX or *) | 136

6. DEVELOPMENTAL DISABILITY PROGRAM (DDP) CODE | 139

7. DISABILITY PLACEMENT PROGRAM (DPP) CODE(S) a) (*) Primary (affects placement) | 142 | b) (*) | 146 | c) (*) | 150 | d) (*) | 154

8. ADMINISTRATIVE DETERMINANT CODE(S) a) (*) | 158 | b) (*) | 162 | c) (*) | 166 | d) (*) | 170 | e) (*) | 174

9. MENTAL HEALTH LEVEL OF CARE (Enter C or E) CCCMS  EOP | 178

10. INSTITUTION APPROVED | − | 179

11. REASON FOR ADMINISTRATIVE OR IRREGULAR PLACEMENT | 180

## A. IDENTIFYING INFORMATION

1. CDC NUMBER | H | 1 | 4 | 8 | 3 | 6 | 1

2. INMATE'S LAST NAME | T | A | Y | L | O | R | 7

DSP 03 80179

3. DATE COMPLETED | 1 | 20 | 0 | 12

| MO | DAY | YR |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

Original - Central File
Canary - OIS
Green - Inmate

## CDC RECLASSIFICATION SCORE SHEET

**4. DATE OF LAST SCORE SHEET**

MO `0 3` DAY `1 1` YR `0 4` 18

**5. FORM IDENTIFICATION (ENTER X in a, b or c)**

a) NEW `X` 24  b) CORRECTION `` 25

DATE CORRECTED  MO `` DAY `` YR `` d) DELETE `` 32

### B. ANNUAL/6 MONTH REVIEW PERIOD DATES

1. REVIEW PERIOD BEGINNING DATE  MO `2` DAY `1` YR `0 4` 33  3. (Enter X) Annual `X` 39

2. REVIEW PERIOD ENDING DATE  MO `0 1` DAY `2 9` YR `0 5` 40  4. Number of Full Review Periods `2`

### C. FAVORABLE BEHAVIOR SINCE LAST REVIEW

1. Continuous Minimum Custody  `` x 4 = `` 46

2. No Serious Disciplinary  `2` x 2 = `4` 48

3. Average or Above Performance in Work, School or Vocational Program  `2` x 2 = `4` 50

4. TOTAL FAVORABLE POINTS  `8`

### D. UNFAVORABLE BEHAVIOR SINCE LAST REVIEW

| SERIOUS DISCIPLINARIES | Number of | | |
|---|---|---|---|
| 1. Div. A-1/A-2  Dates: | | x 8 = | 52 |
| Div. B, C & D  Dates: | | x 6 = | 54 |
| Div. E & F  Dates: | | x 4 = | 56 |
| 2. Battery or Attempted Battery on a Non-Prisoner  Dates: | | x 8 = | 58 |
| 3. Battery or Attempted Battery on an Inmate  Dates: | | x 4 = | 60 |
| 4. Distribution of Drugs  Dates: | | x 4 = | 62 |
| 5. Possession of a Deadly Weapon  Dates: | | x 16 = | 64 |
| 6. Inciting a Disturbance  Dates: | | x 4 = | 66 |
| 7. Battery Causing Serious Injury  Dates: | | x 16 = | 68 |

8. TOTAL UNFAVORABLE POINTS = `0`

### E. SCORE ADJUSTMENT

1. TOTAL CORRECTION/ADJUSTMENT  (+ OR -) `` 70

### F. COMPUTATION OF SCORE

1. PRIOR PRELIMINARY SCORE (Preliminary Score from B30 new Preliminary Score from B40 or B41) = `1 7` 73

2. Net Change in Score (D. 8 minus C. 4)  (+ or -) `- 8` 76

3. PRELIMINARY SCORE SUBTOTAL (Not less than 0) `9`

4. Change in Term Points (T/P) (x 2)  - Old T/P ___ + New T/P ___  (+ or -) `` 79

5. NEW PRELIMINARY SCORE (Not less than 0) = `9` 82

### G. PLACEMENT

MANDATORY MINIMUM SCORE FACTOR CODES AND SCORES

| CODE | SCORE | CODE | SCORE |
|---|---|---|---|
| [A] Condemned | 52 | [E] Warrants "R" Suffix | 19 |
| [B] Life Without Possibility of Parole | 52 | [F] Violence Exclusion | 19 |
| [C] CCR 3375.1(e)(7) Life Inmate | 28 | [G] Public Interest Case | 19 |
| [D] History of Escape | 19 | [H] Other Life Sentence | 19 |

1. SCORE FACTOR CODE (Assess Only Highest Factor)  `H` 85

2. MANDATORY MINIMUM SCORE  `1 9` 86

3. PLACEMENT SCORE  ENTER NEW PRELIMINARY SCORE OR MANDATORY MINIMUM SCORE WHICHEVER IS GREATER  `1 9` 88

### H. SPECIAL CASE FACTORS

1. HOLDS, WANTS and DETAINERS (Enter A, P or *)  Felony `` 91  USINS `` 92

2. RESTRICTED CUSTODY SUFFIX (Enter R or *) `` 93

3. ELIGIBLE FOR RESTITUTION CENTER (Enter Y or N) `N` 94

4. LEVEL IV DESIGN  a) 180 Status (Y/N) `` b) Reason Code ``

5. US ARMED FORCES (Enter Y or N) `Y` 95

6. CURRENT INSTITUTION AND FACILITY  `S Q` – `I I` 96

7. COUNTY OF LAST LEGAL RESIDENCE  `L A` 100

8. CASEWORKER'S NAME  `G A R C I A` FI. `M` 106

### I. CLASSIFICATION STAFF REPRESENTATIVE

1. LAST NAME  `` 115

2. DATE OF ACTION  MO `` DAY `` YR `` 123

3. LEVEL IV DESIGN  a) 180 Status (Enter Y or *) `` 129  b) Reason Code `` 130

4. MINIMUM CUSTODY  a) Eligibility (Enter E, L or P) `` b) Reason Code `` 132  `` 133

5. CCRC ELIGIBILITY (Enter REN, REX or *) `` 136

6. DEVELOPMENTAL DISABILITY PROGRAM (DDP) CODE `` 139

7. DISABILITY PLACEMENT PROGRAM (DPP) CODE(S)  a) (*) Primary (affects placement) `` 142  b) (*) `` 146  c) (*) `` 150  d) (*) `` 154

8. ADMINISTRATIVE DETERMINANT CODE(S)  a) (*) `` 158  b) (*) `` 162  c) (*) `` 166  d) (*) `` 170  e) (*) `` 174

9. MENTAL HEALTH LEVEL OF CARE (Enter C or E)  CCCMS  EOP `` 175

10. INSTITUTION APPROVED `` 178

11. REASON FOR ADMINISTRATIVE OR IRREGULAR PLACEMENT `` 186

### A. IDENTIFYING INFORMATION

1. CDC NUMBER  `H 1 4 8 3 6`

2. INMATE'S LAST NAME  `T A Y L O R`

3. DATE COMPLETED  MO `0 3` DAY `1 0` YR `0 5` 12

CDC OSP 02 71597

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

## CDC RECLASSIFICATION SCORE SHEET

Canary — DIS  Green — Inmate

**4. DATE OF LAST SCORE SHEET**

| MO | DAY | YR |
|---|---|---|
| 2 | 1 | 02 | 18

**5. FORM IDENTIFICATION (ENTER X in a, b or c)**

a) NEW  [X] 24   b) CORRECTION 25   DATE CORRECTED

| MO | DAY | YR |
|---|---|---|
| | | | 26   c) DELETE 32

### B. ANNUAL / 6 MONTH REVIEW PERIOD DATES

**1. REVIEW PERIOD BEGINNING DATE**

| MO | DAY | YR |
|---|---|---|
| 2 | 1 | 02 | 33

3. (Enter X) Annual [X] 39

**2. REVIEW PERIOD ENDING DATE**

| MO | DAY | YR |
|---|---|---|
| 11 | 31 | 03 | 40

4. Number of Full Review Periods: 2

### C. FAVORABLE BEHAVIOR SINCE LAST REVIEW

| | | |
|---|---|---|
| 1. Continuous Minimum Custody | x 4 = | | 46 |
| 2. No Serious Disciplinary | 2 x 2 = | 4 | 48 |
| 3. Average or Above Performance in Work, School or Vocational Program | 2 x 2 = | 4 | 50 |
| 4. TOTAL FAVORABLE POINTS | | 8 | |

### D. UNFAVORABLE BEHAVIOR SINCE LAST REVIEW

**SERIOUS DISCIPLINARIES** — Number of

| | | |
|---|---|---|
| 1. Div. A-1/A-2 Dates: | x 8 = | | 52 |
| Div. B, C & D Dates: | x 6 = | | 54 |
| Div. E & F Dates: | x 4 = | | 56 |
| 2. Battery or Attempted Battery on a Non-Prisoner Dates: | x 4 = | | 58 |
| 3. Battery or Attempted Battery on an Inmate Dates: | x 4 = | | 60 |
| 4. Distribution of Drugs Dates: | x 4 = | | 62 |
| 5. Possession of a Deadly Weapon Dates: | x 16 = | | 64 |
| 6. Inciting a Disturbance Dates: | x 4 = | | 66 |
| 7. Battery Causing Serious Injury Dates: | x 16 = | | 68 |
| 8. TOTAL UNFAVORABLE POINTS | | 0 | |

### E. SCORE ADJUSTMENT

1. TOTAL CORRECTION/ADJUSTMENT   (+ OR -) | | 70

### F. COMPUTATION OF SCORE

1. PRIOR PRELIMINARY SCORE (Preliminary Score from #36/New Preliminary Score from 40 or 41) = | 11 | 73

2. Net Change in Score (D, 8 minus C, 4)   (+ or -) | - | 8 | 76

3. PRELIMINARY SCORE SUBTOTAL (Not less than 0) | 3 |

4. Change in Term Points (T/P)(x 2) - Old T/P    + New T/P   (+ or -) | | 79

5. NEW PRELIMINARY SCORE (Not less than 0) = | 3 | 82

### G. PLACEMENT

**MANDATORY MINIMUM SCORE FACTOR CODES AND SCORES**

| CODE | SCORE | CODE | SCORE |
|---|---|---|---|
| [A] Condemned | 52 | [E] Warrants "R" Suffix | 19 |
| [B] Life Without Possibility of Parole | 52 | [F] Violence Exclusion | 19 |
| [C] CCR 3375.2(a)(2) Life Inmate | 28 | [G] Public Interest Case | 19 |
| [D] History of Escape | 19 | [H] Other Life Sentence | 19 |

1. SCORE FACTOR CODE (Assess Only Highest Factor) | H | 85

2. MANDATORY MINIMUM SCORE | 19 | 86

3. PLACEMENT SCORE ENTER NEW PRELIMINARY SCORE OR MANDATORY MINIMUM SCORE, WHICHEVER IS GREATER | 19 | 88

### H. SPECIAL CASE FACTORS

1. HOLDS, WANTS AND DETAINERS (Enter A, F or *)

Felony | | 91   USINS | | 92

2. RESTRICTED CUSTODY SUFFIX (Enter R or *) | | 93

3. ELIGIBLE FOR RESTITUTION CENTER (Enter Y or N) | N | 94

4. LEVEL IV DESIGN a) 180 Status (Y/N) | | b) Reason Code

5. US ARMED FORCES (Enter Y or N) | | 95

6. CURRENT INSTITUTION AND FACILITY | SQ | II | 96

7. COUNTY OF LAST LEGAL RESIDENCE | LA | 100

8. CASEWORKER'S NAME | SHAW | R | 106

### I. CLASSIFICATION STAFF REPRESENTATIVE

1. LAST NAME | SCOTT | 115

2. DATE OF ACTION

| MO | DAY | YR |
|---|---|---|
| 2 | 19 | 03 | 23

3. LEVEL IV DESIGN a) 180 Status (Enter Y or #) | | 128   b) Reason Code | | 130

4. MINIMUM CUSTODY a) Eligibility (Enter E, I or P) | | b) Reason Code | 117 | 132

5. CCRC ELIGIBILITY (Enter REN, REX or #) | | 133 | | 136

6. DEVELOPMENTAL DISABILITY PROGRAM (DDP) CODE | NCF | 139

7. DISABILITY PLACEMENT PROGRAM (DPP) CODE(S) a) (*) Primary (affects placement) | | 142   b) (*) | | 146   c) (*) | | 150   d) (*) | | 154

8. ADMINISTRATIVE DETERMINANT CODE(S) a) (*) | LRF | 158   b) (*) | LAO | 162   c) (*) | | 166   d) (*) | | 170   e) (*) | | 174

9. MENTAL HEALTH LEVEL OF CARE (Enter C or E) CCCMS  EOP | | 78

10. INSTITUTION APPROVED | SQ | II | 178

11. REASON FOR ADMINISTRATIVE OR IRREGULAR PLACEMENT | | 186

### A. IDENTIFYING INFORMATION

1. CDC NUMBER | H14836

2. INMATE'S LAST NAME | TAYLOR

3. DATE COMPLETED

| MO | DAY | YR |
|---|---|---|
| 2 | 5 | 03 | 12

CDC OSP 02 71597

TAYLOR, H-14836
CASE NO. 0618107
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, SQ
       Appeals Coordinator, SQ

E X H I B I T   ' F '

## Supplemental Page

We, the undersigned prisoners, are all in agreement with the statements contained in this Appeal/Citizen's COMPLAINT concerning the actions of Officer Thomson; as well as the action requested.

| Last Name | Signature | CDC Number | Cell number |
|---|---|---|---|
| ~~(illegible)~~ | FLIMAN | C-49301 | 3N35L |
| TAYLOR | R.E. Taylor | H-14836 | 3N5L |
| BJORLIN | Ma.W. Bjorlin | E-67370 | 5N101C |
| VANDERHORST | Vanderhorst | B-61862 | 5-N-065-U |
| GLASPER | Glasper | E-04111 | 3N94L |
| Jeff Bigg | Jeffrey Bigg | D05786 | 2N39U |
| Rodriguez | Rodriguez | V18750 | 3N73U |
| DiRAMOS | DiRamos | H-2187 | 2N40L |
| Green | Willie Green | C-7725o | 3N66L |
| Posey | Posey | K-06725 | 2N12C |
| BERRY | | D-24528 | 1-N64 |
| Solas | Lee | T21372 | 2-N13 |
| Tyler | Mike Tyler | K-66655 | 4-N-70u |
| Senegal | Philip Senegal | E-82655 | 3-N-01L |
| ELIAS | Elias | K-50464 | 3-N-21 |
| MONROE | David Alone | K96649 | 4N96UP |
| ~~(blacked out)~~ | ~~(blacked out)~~ | ~~(blacked out)~~ | ~~(blacked out)~~ |
| TURNER I | Daniel Turner | H49812 | 1-N-100c |
| Mack D | David Mack | B-13553 | 2-N-63u |
| DOMINOS | | T-9740 | 1-N-90L |
| PACKER, WM | William Packer | H-45835 | 4N39L |
| Horny | | T-68082 | 5-N-72u |

over ⟶

E X H I B I T   " F   1 "

APRIL 9, 2007    APR 1 9 2007

DEAR SIR;

I AM AWARE OF THE FACT THAT THIS MIGHT SEEM LIKE A SMALL ISSUE TO YOU AND YOU ARE VERY BUSY, BUT PLEASE LOOK INTO THIS MATTER.

ON THE 28TH OF JANUARY, WE SENT THE ORIGINAL OF THIS APPEAL TO SACRAMENTO. IT WAS SENT OUT AS LEGAL/CONFIDENTIAL MAIL SO THAT IT WOULD BE LOGGED. AS OF THE ABOVE DATE, WE HAVE NOT RECEIVED ANY RESPONSE OR ACKNOWLEDGMENT OF RECEIPT.

WE BELIEVE THAT IT IS POSSIBLE THAT LT. M. CRAMER, WHO IS IN CHARGE OF THE MAIL ROOM AS WELL AS THE VISITING ROOM, INTERCEPTED OUR APPEAL, DUE TO HIS HISTORY AND HIS RETALIATORY NATURE.

PLEASE SEE IF YOU CAN FIND OUT WHAT HAPPENED TO OUR APPEAL. I HAVE ENCLOSED A SELF-ADDRESSED STAMPED ENVELOPE, FOR YOUR CONVENIENCE.

YOUR CONSIDERATION IS HIGHLY APPRECIATED.

RESPECTFULLY,

*Ronald E. Taylor*

RONALD E. TAYLOR, #H-14836
3-N-5-L, S.Q.S.P.
SAN QUENTIN, CALIFORNIA
94974

APR 2 7

E X H I B I T   "G"

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|
| | 1. _____ | 1. _____ | | _____ |
| | 2. _____ | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect on you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| TAYLOR | H-14836 | DONNER SECTION CLERK | 2-N-20 |

A. Describe Problem: ON 9-9-07, AT APPROX. 8:45a.m., I ARRIVED AT THE VISITING ROOM. UPON ARRIVAL, AFTER INITIAL SEARCH, I PROCEEDED TO THE PODIUM AND TURNED IN MY IDENTIFICATION, THEN HANDED C/O J. MASSONE AN APPEAL (COPY ATTACHED).LESS THAN AN HOUR LATER; AS A DIRECT RESULT OF MY SERVING SAID APPEAL; MY VISIT WAS SPURIOUSLY TERMINATED. THERE IS NO VALID EXPLANATION FOR THE TERMINATION OF MY VISIT, OTHER THAN ILLEGAL RETALIATION. THE REFERENCED APPEAL IS ATTACHED AS "SUPPORTING DOCUMENTATION #1!" FURTHER, ATTACHED AS #SUPPORTING DOCUMENTA- TION #2", IS THE ORIGINAL, YET HIGHLY SPURIOUS, "NOTICE OF....

If you need more space, attach one additional sheet.     (SEE ATTACHED SUPPLEMENTAL PAGE & SUPPORTING DOCUMENTATION

B. Action Requested: I AM FIRST OF ALL REQUESTING THAT LT. CRAMER AND HIS CREW OBSERVE THE LAW AND THAT THEY NOT INITIATE ANY MORE ILLEGAL RETALIATION AGAINST MY WIFE AND I. SECONDLY, I AM REQUESTING THAT THIS APPEAL BE LOGGED AS A "CITIZEN'S COMPLAINT", PURSUANT TO CALIFORNIA PENAL CODE SECTIONS: 832.5 thru 832.8.

Inmate/Parolee Signature: _Ronald E. Taylor_     Date Submitted: 9-15-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim     CDC Appeal Number:

SUPPLEMENTAL PAGE #1

...VISITOR TERMINATION.

THERE ARE SEVERAL REASONS THAT MAKE IT BLATANTLY OBVIOUS, THAT TERMINATING MY VISIT WAS NOTHING LESS THAN AN ACT OF ILLEGAL R E T A L I A T I O N .

(1) LESS THAN AN HOUR AFTER I SERVED MASSONE WITH THE 602, MY VISIT WAS TERMINATED.

(2) THE REASON FOR THE TERMINATION IS BOGUS. IT STATES: "I/M's WIFE WAS OBSERVED RUBBING HER BACK AGAINST I/M's BACK IN FRONT OF MICROWAVE/WOMEN'S RESTROOM ON MAIN VISITING FLOOR". FIRST OF ALL; EVEN IF THAT STAFF'S STATEMENT WERE TRUE; AT MOST, MY WIFE AND I WOULD HAVE SIMPLY RECEIVED A WARNING, IF I HAD NOT SERVED THEM WITH THE APPEAL. ADDITIONALLY; IF STAFF'S STATEMENT WAS TRUE, IT WOULD STILL NOT QUALIFY AS "EXCESSIVE TOUCHING"-(AS STATED ON THE SPUR-IOUS TERMINATION SLIP)

(3) AS CAN BE SEEN ON THE "TERMINATION SLIP" AT ISSUE, IT IS WRITTEN: "TERMINATION OF VISIT WAS MADE BY G. BICKHAM SGT.." WELL, I HAVE SEVERAL WITNESSES WHO SHALL REMAIN NAMELESS UNTIL THIS MATTER GETS TO COURT, THAT WILL TESTIFY TO THE FACT THAT INMATES ARE GEN-ERALLY CALLED INTO THE BACK ROOM AND DISCREETLY SPOKEN TO ABOUT ANY PERCEIVED IMPROPRIETIES. HOWEVER, SGT. BICKHAM PRACTICALLY YELLED ACROSS THE ROOM: "COME ON! LET'S GO! SAY YOUR GOOD BYES AND TAKE IT TO THE BACK! IT IS NOTEWORTHY, AT THIS JUNCTURE THAT SGT. BICKHAM'S INDISCRETIONS RESULTED IN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND EXTREME EMBARASSMENT TO MY WIFE; WHO IS AND ALWAYS HAS BEEN, A TAX-PAYING, LAW-ABIDING CITIZEN.

S E E    R E V E R S E    S I D E

S U P P O R T I N G   D O C U M E N T A T I O N   # 1

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location    Institution/Parole Region        Log No.        Category

1 _____    1 **D1-4246**    _____

2 _____    2 _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| TAYLOR | B-14836 | DONNER SECTION CLERK | B-E-50IL |

A. Describe Problem ___IN A CLEAR CUT VIOLATION OF C.C.R. SECTION: 3170 AND CALIFORNIA
PENAL CODE § 147 (OPPRESSION OF AN INMATE) THE MAINLINE VISITING STAFF IS
AGAIN DOING EVERYTHING AND ANYTHING THEY CAN TO MAKE PRISONERS AND OUR VISITORS
UNCOMFORTABLE, IN AN ATTEMPT TO CREATE A HOSTILE ENVIRONMENT IN THE VISITING
ROOM. ON THIS DATE, 9-8-07, AS I ENTERED THE VISITING ROOM, OFFICER MASSONE
APPROACHED ME AND SAID: "TAYLOR, I'M TELLING EVERYONE THIS. MAKE SURE THAT YOU
DO NOT SIT FACING YOUR VISITOR. MAKE SURE THAT YOU ARE FACING STRAIGHT AHEAD
THROUGHOUT YOUR VISIT". FIRST OF ALL; THIS IS RIDICULOUS. WE ARE NOT ROBOTS..
If you need more space, attach one additional sheet.                (SEE ATTACHED SUPPLEMENTAL PAGE)

B. Action Requested ___PLEASE LOG THIS APPEAL AS A CITIZEN'S COMPLAINT, PURSUANT TO
CALIF. PENAL CODES 832.5 - 832.8. ALSO, PLEASE INFORM THE VISITING ROOM STAFF
THAT THEY ARE NOT AUTHORIZED TO MAKE UP THEIR OWN RULES, BASED ON WHIM AND
CAPRICE; JUST BECAUSE THEY HAVE GOTTEN TOO COMFORTABLE AND ARE BORED; ETC., ETC.

Inmate/Parolee Signature: _Ronald C. Taylor_        Date Submitted: _9-8-07_

C. INFORMAL LEVEL (Date Received _____)

Staff Response _____

_____

_____

_____

Staff Signature. _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature _____        Date Submitted _____

Note: Property/Funds appeals must be accompanied by a completed        CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim.

## SUPPLEMENTAL PAGE #1

...THEREFORE, IT IS IMPOSSIBLE AS WELL AS IMPLAUSIBLE FOR THE VISITING ROOM STAFF TO EXPECT MY WIFE AND I TO SIT FACING FORWARD; LIKE ROBOTS; AND TALK OUT OF THE SIDES OF OUR MOUTHS, LIKE RETARDS.

SECONDLY; AS MY WIFE WAS LEAVING THE VISITING ROOM, I, AS I ALWAYS HAVE, WALKED HER TO WITHIN THE OUT OF BOUNDS LINE NEAR THE VENDING MACHINES; THEN GAVE HER A BRIEF KISS AND HUG, AS AUTHORIZED BY C.C.R. § 3175.(e) IT SHOULD BE NOTED AT THIS JUNCTURE THAT AT THE TIME OF MY WIFE'S DEPARTURE THERE WERE NO OTHER INMATES IN THE VENDING AREA, BUT THERE WAS THREE CORRECT-IONS OFFICERS STANDING LESS THAN TEN FEET AWAY FROM US, WHO COULD PLAINLY SEE THAT MY WIFE AND I WERE NOT IN VIOLATION OF ANY RULES OR REGULATIONS. YET, AFTER MY WIFE AND I PARTED, MASSONE STOPPED ME AND SAID: "TAYLOR, YOU HAVE TO SAY YOUR GOODBYES RIGHT HERE; HE WAS POINTING TO A LINE WHICH SIGNIFIES THE BEGINNING OF THE VENDING MACHINE AREA.

FIRST OF ALL, THERE IS NO SUCH RULE. SECONDLY, THE ABSOLUTE ONLY REA-SON FOR MASSONE SAYING WHAT HE SAID, HAD TO BE THAT HE HAS NOTHING BETTER TO DO THAN TO SIT AROUND AND DREAM UP WAYS TO HARASS ME, BECAUSE I AM A PRISONER.

THE BOTTOM LINE, IS THAT IN THE SEVEN AND A HALF YEARS THAT I HAVE BEEN GETTING REGULAR VISITS, I HAVE NOT EVER BROKEN ANY VISITING ROOM RULES.

IT IS PAINFULLY OBVIOUS THAT THE CURRENT VISITING ROOM REGIME HAS GOTTEN MUCH TO COMFORTABLE AND BORED WITH THEIR SOFT JOBS. IF THEY WANT TO BE TOUGH FOR NO REASON, IN THIS SOFT LEVEL II PRISON, THEY SHOULD PROBABLY GIVE UP THE VISITING ROOM SLOT TO HUMANE OFFICERS, WHO WILL APPRECIATE THE JOB , AND REQUEST RE-ASSIGNMENT TO THE ADJUSTMENT CENTER; WHERE THEY CAN PLAY TOUGH ALL THEY C.T. WANT.

"OPPRESION OF AN INMATE IS AGAINST STATE LAW. (P.C. §147) "HARASSMENT" OF PRISONERS AND THEIR VISITORS, IS NOT ONLY IN VIOLATION OF STATE LAW; IT IS CLEARLY IN VIOLATION OF SECTIONS: 3004, 3170 AND 3391 OF

S U P P O R T I N G   D O C U M E N T A T I O N   #2

STATE OF CALIFORNIA
CDC 887 (10/85)

DEPARTMENT OF CORRECTIONS

## NOTICE OF VISITOR
## APPROVAL/DENIAL/TERMINATION/SUSPENSION

ORIGINAL: Visiting File
COPY: Inmate
COPY: Visitor

| TO: (Inmate's Name) Taylor | CDC NUMBER H-14800 | INSTITUTION SG | UNIT Max Fac |
|---|---|---|---|

REGARDING: (Name of Prospective Visitor) Charlotte Taylor

THE PERSON IDENTIFIED ABOVE HAS REQUESTED APPROVAL TO VISIT WITH YOU. HIS/HER REQUEST HAS BEEN:

☐ APPROVED. It is your responsibility to inform your visitor.

☐ DISAPPROVED. Visiting has been disapproved for the following reason(s):

 ☐ INCOMPLETE OR FALSIFIED VISITING QUESTIONNAIRE.

 ☐ SECURITY RISK

 ☐ EX-FELON WITHOUT APPROVAL OF WARDEN AND CASE SUPERVISOR

 ☐ OTHER _____

Your prospective visitor was notified on _____ DATE _____ of the reason for denial.

VISITING WAS DENIED ON _____ DATE _____ FOR THE FOLLOWING REASON(S):

☐ IDENTIFICATION NOT ACCEPTABLE
☐ UNDER AGE 18 AND NOT ACCOMPANIED BY AN APPROVED ADULT VISITOR
☐ BRINGING CONTRABAND ON INSTITUTION GROUNDS

☐ INAPPROPRIATE CLOTHING
☐ REFUSED TO SUBMIT TO REQUEST FOR SEARCH OF PERSON OR POSSESSIONS
☐ OTHER _____

VISITING WAS TERMINATED ON __9/9/07__ DATE __SUNDAY__ FOR THE FOLLOWING REASON(S):

☐ VISITING AREA AT MAXIMUM CAPACITY

☒ UNACCEPTABLE BEHAVIOR

☐ UNSUPERVISED CHILDREN

☒ VISITOR

☐ OTHER _____

☒ INMATE

Excessive Touch
3175(a)

I/m's wife was observed Rubbing her butt against I/m's body in front of midnight watch staff 9/9/07 1st W/m on the visiting floor

Termination of visit was made by _____ NAME OF OFFICIAL _____ on _____ DATE

PERMISSION TO VISIT WAS SUSPENDED ON _____ FOR:

☐ BRINGING CONTRABAND ONTO INSTITUTION GROUNDS.

☐ OTHER (Specify): _____

The suspension will expire on (Date) _____ after which time the visitor may reapply by writing the Warden. Visitors may appeal any action taken above by writing a letter to the Warden of this institution.

E X H I B I T   ' B '

APRIL 10, 2007

APPEALS COORDINATOR;

    ATTACHED IS A COPY OF AN APPEAL ASSIGNMENT NOTICE THAT IS, AS YOU CAN SEE, OVERDUE. (CCR § 3084.6)

    PLEASE **INTERVENE**, AT YOUR EARLIEST CONVENIENCE. THANK YOU, IN ADVANCE, FOR YOUR CONSIDERATION.

                  RESPECTFULLY,

                  RONALD E. TAYLOR, #H-14836
                  3-N-5-L

APR 1 2 REC'D

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE TAYLOR, H14836                        Date: February 23, 2007
Current Housing: N 3 00000000005L

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-3-07-00713

ASSIGNED STAFF REVIEWER: SQA
APPEAL ISSUE: CUSTODY/CLASS.
DUE DATE: 04/05/2007

Inmate TAYLOR, this acts as a notice to you that your appeal has been sent to the above
staff for SECOND level response. If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for THIRD level review. Third level appeals are to be mailed directly to:

> Chief of Inmate Appeals
> Department of Corrections
> P. O. Box 942883
> Sacramento, CA  94283-0001

R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison

4/12/07

Staff has been notified about your overdue
appeal. There is currently a backlog for
processing appeals, and Staff is working to
correct it.

H-1

K Marshall

APRIL 19, 2007

APPEALS COORDINATOR;

    ATTACHED IS A COPY OF AN APPEAL ASSIGNMENT NOTICE THAT IS, AS YOU CAN SEE, OVERDUE. (CCR § 3084.6)

    PLEASE INTERVENE, AT YOUR EARLIEST CONVENIENCE. THANK YOU IN ADVANCE, FOR YOUR CONSIDERATION.

                  RESPECTFULLY,

                        RONALD E. TAYLOR, #H-14836
                        3-N-5-L

                              APR 2 3 REC'D

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE TAYLOR, H14836                          Date: March 15, 2007
Current Housing: N 3 00000000005L

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-3-07-00250

ASSIGNED STAFF REVIEWER: SQA
APPEAL ISSUE: VISITING
DUE DATE: 04/12/2007

Inmate TAYLOR, this acts as a notice to you that your appeal has been sent to the above
staff for SECOND level response. If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for THIRD level review. Third level appeals are to be mailed directly to:

> Chief of Inmate Appeals
> Department of Corrections
> P. O. Box 942883
> Sacramento, CA 94283-0001

R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator              APR 2 3 REC'D
San Quentin State Prison

4/23/07
Staff has been notified about your
Overdue appeal.
               K. Marshall

H-2

STATE OF CALIFORNIA
GA-22 (9/92)

# INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE | TO | FROM (LAST NAME) | | CDC NUMBER |
|------|-----|------------------|---|------------|
| 12/19/07 | APPEALS COORDINATOR | TAYLOR | | P13133 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | | JOB NUMBER | |
|---------|-----------|-----------------|---|-----------|---|
| 2 B 2C L | | UPON FLOOR INTERDISCTIS CLERK | | FROM 0600 | TO 1700 |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | ASSIGNMENT HOURS | |
|------------------------------------------|------------------|---|
| | FROM | TO |

### Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

ATTACHED IS AN SHATO APPEAL ASSIGNMENT NOTICE (COPY) THIS IS AN FOLLOW.

OVERDUE. PLEASE INTERVIEW

---

Do NOT write below this line. If more space is required, write on back.     DEC 2 1 2007

INTERVIEWED BY _____ DATE

DISPOSITION — Please See attached Delay Letter -

K Marshall

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE TAYLOR, H14836                    Date: November 14, 2007
Current Housing: 2N20

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-3-07-04246

ASSIGNED STAFF REVIEWER: SQA
APPEAL ISSUE: VISITING
DUE DATE: 12/14/2007

Inmate TAYLOR, this acts as a notice to you that your appeal has been sent to the above
staff for SECOND level response. If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for THIRD level review. Third level appeals are to be mailed directly to:

> Chief of Inmate Appeals
> Department of Corrections
> P. O. Box 942883
> Sacramento, CA  94283-0001

R.Chandler-Dacanay or R. Brau
Appeals Coordinator
San Quentin State Prison

H-3

State of California

# Memorandum

Date  :  December 28, 2007

To  :  TAYLOR, H14836
2N20

Log Number: CSQ-3-07-04246

Subject:  **EXCEPTIONAL DELAY IN REVIEW OF APPEAL**

This is to notify you that the due date on the above referenced appeal has been extended for the following reason: Backlog for processing appeals.

☐ Unavailability of the appellant, or staff or inmate witness.

☐ Complexity of the decision, action, or policy.

☐ Necessary involvement of other agencies or jurisdictions.

This notification is required per California Code of Regulations, Section 3084.6(b)(6). The new estimated completion date is _____ **JAN 2 8 2008** _____.

Appeals Coordinator
San Quentin State Prison

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD E. TAYLOR,

    PLAINTIFF,

  VS.                       CASE NO.

ROBERT L. AYERS JR.  /     SUMMONS
C.M. LOVE            /
M. CRAMER           /
N. GRANNIS         /
A. SHELDON         /
R.L. WINGO-VILLA   /
G.L. BICKHAM       /
J.M. MASSONE       /
G.M. THOMSON      /
S.S. SALAIS,       /
INDIVIDUALLY AND  /
IN THEIR OFFICIAL /
CAPACITIES.    /
_____DEFENDANTS./

TO THE ABOVE-NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON PLAINTIFF,
WHOSE ADDRESS IS: SAN QUENTIN STATE PRISON, 2-N-20-L; AN ANSWER TO THE
COMPLAINT WHICH IS HEREWITH SERVED UPON YOU, WITHIN 20 DAYS AFTER SER-
VICE OF THIS SUMMONS UPON YOU, EXCLUSIVE OF THE DAY OF SERVICE. IF YOU
FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE
RELIEF DEMANDED IN THE COMPLAINT.

DATE_____

**ORIGINAL**

FILED

00 JAN 28 AM 10: 49

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

3  Name ___ TAYLOR,   RONALD   E. _____

(Last)            (First)           (Initial)

5  Prisoner Number ___ H-14836 ___

6  Institutional Address __ 1 MAIN STREET, S.Q.S.P. __

7  ___ SAN QUENTIN, CALIFORNIA   94974 ___

9  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

10  RONALD EVANS TAYLOR

11  (Enter the full name of plaintiff in this action.)

12  vs.

13  ROBERT L. AYERS JR., et al.

16  (Enter the full name of the defendant(s) in this action))

**CV  08   00647**

Case No. _____
(To be provided by the clerk of court)

**MMC**

**COMPLAINT UNDER THE CIVIL RIGHTS ACT,**
42 U.S.C §§ 1983

18  *[All questions on this complaint form must be answered in order for your action to proceed..]*

19  I.    Exhaustion of Administrative Remedies

20  [**Note:** You must exhaust your administrative remedies before your claim can go

21  forward. The court will dismiss any unexhausted claims.]

22  A.    Place of present confinement __ SAN QUENTIN STATE PRISON __

23  B.    Is there a grievance procedure in this institution?

24  YES (XX)    NO ( )

25  C.    Did you present the facts in your complaint for review through the grievance

26  procedure?

27  YES(XX)    NO ( )

28  D.    If your answer is YES, list the appeal number and the date and result of the

COMPLAINT                    - 1 -

DEAR COURT CLERK;

I HAVE ENCLOSED A SELF ADDRESSED STAMPED ENVELOPE FOR YOUR CONVENIENCE. PLEASE RETURN TO ME A CONFORMED (STAMPED "FILED") COPY OF MY COMPLAINT.

THANK YOU IN ADVANCE FOR YOUR TIME AND CONSIDERATION.

*the face sheet Please*

RESPECTFULLY SUBMITTED,

*Ronald E. Taylor*

RONALD E. TAYLOR, #B 14836
2 N 20 L, S.Q.S.P.
SAN QUENTIN, CALIFORNIA
94974
IN PROPRIA PERSONAM

2-N-20-L, S.Q.S.P.
SAN QUENTIN, CALIFORNIA
94974



PRIORITY MAIL
UNITED STATES POSTAL SERVICE®
www.usps.com

Label 107, February 2006

RECEIVED

MAR 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES
POSTAL SERVICE

0000

94102

U.S. DISTRICT COURT - N.D.
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CALIFORNIA
94102-3483
ATTN: CLERK'S OFI